184 P.3d 133

**STATE of Hawai'i, Plaintiff–Appellant,**

v.

**Brian JESS, Defendant–Appellee.**

No. 28483.

Supreme Court of Hawai'i.

March 31, 2008.

As Corrected April 4, 2008.

Reconsideration Denied April 18, 2008.

382

Mark J. Bennett, Attorney General, (Dorothy Sellers, Solicitor General, Girard D. Lau, First Deputy Solicitor, General, and Kimberly, Tsumoto Guidry, Deputy, Solicitor General, on the briefs), for amicus curiae State of Hawai'i.

David Glenn Bettencourt, Honolulu, for the defendant-appellee, Brian Jess.

Daniel H. Shimizu, Deputy Prosecuting Attorney, on the briefs, for the plaintiff-appellant State of Hawai'i.

Tracy Murakami, Deputy Prosecuting Attorney, on the briefs, for amicus curiae Prosecuting Attorney, County of Kaua'i.

Richard K. Minatoya, Deputy Prosecuting Attorney, for amicus curiae Benjamin Acob, Attorney, County of Maui.

MOON, C.J., LEVINSON, and DUFFY, JJ., NAKAYAMA, J., Concurring and Dissenting Separately, and ACOBA, J., Dissenting Separately.

## Opinion of the Court by LEVINSON, J.

On October 6, 2004, the defendant-appellee Brian Jess filed a 28 U.S.C. § 2254 (1996) [1] petition for a writ of habeas corpus in the United States District Court for the District of Hawai'i. In his petition, Jess alleged that the extended term sentence that the circuit court of the first circuit, the Honorable Victoria S. Marks presiding, imposed upon him on May 7, 2001,[2] pursuant to Hawai'i Revised Statutes (HRS) §§ 706–661 (Supp.1999),[3]

1. 28 U.S.C. § 2254 provides in relevant part that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

2. The sentence was imposed in Criminal No. 00–01–0422.

3. In 2000, HRS § 706–661 provided:

 In the cases designated in [HRS § ]706–662 [*see infra* note 4], a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:
 (1) For murder in the second degree—life without the possibility of parole;
 (2) For a class A felony—indeterminate life term of imprisonment;
 (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
 (4) For a class C felony—indeterminate ten-year term of imprisonment.
 The minimum length of imprisonment for sections 2, 3, and 4 shall be determined by the Hawai['Ji paroling authority in accordance with [HRS § ]706–669.

 Effective June 22, 2006, the legislature amended HRS §§ 706–661 and –662, *see* 2006 Haw. Sess. L. Act 230, §§ 23, 24, and 54 at 1012–13, 1025, to address concerns raised by the Hawai'i Judicial Council that Hawaii's extended term sentencing scheme faced challenges in federal court that it violated a defendant's right to a jury trial, protected under the sixth amendment to the United States Constitution, as articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny. *See Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code* at 27l–27q (2005); Sen. Stand. Comm. Rep. No. 3215, in 2006 Senate Journal, at 1557; Hse. Stand. Comm. Rep. No. 665–06, in 2006 House Journal, at 1359. The amended version of HRS § 706–661 provided in relevant part:

 The court may sentence a person who satisfies the criteria for any of the categories set forth in [HRS § ]706–662 to an extended term of imprisonment, which shall have a maximum length as follows:
 (1) For murder in the second degree—life without the possibility of parole;
 (2) For a class A felony—indeterminate life term of imprisonment;
 (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
 (4) For a class C felony—indeterminate ten-year term of imprisonment.
 *In exercising its discretion on whether to impose the extended term of imprisonment or to use other available sentencing options, the court shall consider whether the extended term is necessary for the protection of the public and whether the extended term is necessary in light of the other factors set forth in [HRS § ]706–606.*
 When ordering an extended term sentence, the court shall impose the maximum length of imprisonment.... (Emphasis added.) Effective June 30, 2007, the amended version of HRS § 706–661 expired and the Supp.2003 version, *supra* this note, was reenacted. *See* 2006 Haw. Sess. L. Act 230, § 54 at 1025. Finally, effective October 31, 2007, the legislature amended HRS § 706–661 as part of its reform of the state's extended term sentencing laws to bring them into compliance with the requirements of *Apprendi* and its progeny. HRS § 706–661 was amended to read:

 **Extended terms of imprisonment.** The court may sentence a person who satisfies the criteria for any of the categories set forth in [HRS § ]706–662[, *infra* note 4,] to an extended term of imprisonment, which shall have the maximum length as follows:
 (1) For murder in the second degree—life without the possibility of parole;
 (2) For a class A felony—indeterminate life term of imprisonment;
 (3) For a class B felony—indeterminate twenty-year term of imprisonment; and
 (4) For a class C felony—indeterminate ten-year term of imprisonment.
 When ordering an extended term sentence, the court shall impose the maximum length of imprisonment. The minimum length of imprisonment for an extended term sentence under paragraphs (2), (3), and (4) shall be determined by the Hawai['Ji paroling authority in accordance with [HRS § ]706–669.

 H.B. 2, 24th Leg., Second Spec. Sess. (2007), *available at* http://capitol.hawaii.gov/splsession2007b/bills/HB2_.htm (enacted as Act 1 on October 31, 2007), *see* http://capitol.hawaii.gov/site1/archives/2007b/getstatus2.asp?billno=HB2.

706–662(1), 706–662(4)(a) (Supp.1996),[4] and 706–664 (1993)[5] was, in light of *Apprendi v.*

4. In 2000, HRS § 706–662 provided in relevant part:

A convicted defendant may be subject to an extended term of imprisonment under [HRS § ]706–661[, *see supra* note 3], if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender *whose imprisonment for an extended term is necessary for protection of the public. The court shall not make this finding unless* the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older.

. . . .

(4) The defendant is a multiple offender *whose criminal actions were so extensive that a sentence of imprisonment for an extended term is necessary for the protection of the public. The court shall not make this finding unless:* (a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony[.]

. . . .

(Emphases added.) Effective June 13, 2001 and April 23, 2003, the legislature amended HRS § 706–662 in ways immaterial to the present matter. *See* 2003 Haw. Sess. L. Act 33, §§ 2 and 6 at 44–46; 2001 Haw. Sess. L. Act 240, §§ 3 and 6 at 630–31.

In section 24 of Act 230, effective June 22, 2006, the legislature amended HRS § 706–662 to address the same alleged constitutional infirmities discussed *supra* in note 1. Act 230 amended HRS § 706–662 to provide in relevant part:

A defendant who has been convicted of a felony qualifies for an extended term of imprisonment under [HRS § ]706–661 if the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender in that the defendant has previously been convicted of two felonies committed at different times when the defendant was eighteen years of age or older;

. . . .

(4) The defendant is a multiple offender in that:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony[.]

. . . .

Effective June 30, 2007, the amended version of HRS § 706–662 expired and the Supp.2003 version, *supra* this note, was reenacted. *See* 2006 Haw. Sess. L. Act 230, § 54 at 1025.

Effective October 31, 2007, the legislature again amended HRS § 706–662 as part of its reform of the state's extended sentencing scheme to bring it into compliance with *Apprendi* and *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). The amended version of HRS § 706–662 provides in relevant part:

**Criteria for extended terms of imprisonment:** A defendant who has been convicted of a felony may be subject to an extended term of imprisonment under [HRS § ]706–661[, *see supra* note 3,] if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public and that the convicted defendant satisfies one or more of the following criteria:

(1) The defendant is a persistent offender in that the defendant has previously been convicted of two or more felonies committed at different times when the defendant was eighteen years of age or older;

. . . .

(4) The defendant is a multiple offender in that:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for *any* felony; or

(b) The maximum term of imprisonment authorized for each of the defendant's crimes, if made to run consecutively, would equal or exceed in length the maximum of the extended term imposed or would equal or exceed forty years if the extended term imposed is for a class A felony[.]

H.B. 2, 24th Leg., Second Spec. Sess. (2007), *available at* http://capitol.hawaii.gov/splsession 2007b/bills/HB2_.htm (enacted as Act 1 on October 31, 2007), *see* http://capitol.hawaii.gov/site1/archives/2007b/getstatus2.asp?billno=HB2.

5. In 2000, HRS § 706–664, entitled "Procedure for imposing extended terms of imprisonment" provided:

Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and on written notice to the defendant of the ground proposed. Subject to the provisions of [HRS § ]706–604, the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue.

Effective October 31, 2007, the legislature amended HRS § 706–664 as part of the overhaul of the extended sentencing scheme, in order to bring it into compliance with *Apprendi* and *Cunningham*. The amended version of HRS § 706–664 provides:

(1) Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose

*New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and its progeny, in violation of his right to a jury trial as provided by the sixth amendment to the United States Constitution. *See Jess v. Peyton*, No. Civ. 04–00601JMS/BMK, 2006 WL 1041737, at *1–*2 (D. Haw. April 18, 2006) (*Jess II*). On April 18, 2006, the United States District Court granted Jess's petition, concluding that the finding made by the circuit court, *i.e.*, that an extended term was necessary for the protection of the public [hereinafter, "the necessity finding"], violated his sixth amendment right to a trial by jury as articulated in *Apprendi. Id.* at *4. The district court ordered the circuit court to resentence Jess in a manner consistent with that conclusion. *Id.* at *6. The reserved question before this court stems, ultimately, from that order, and reads as follows:

> May the trial court, as part of a sentencing proceeding brought pursuant to Section 706–662(1) & (4), *H.R.S.*, empanel a jury to make a factual finding to determine whether the prosecution has proven beyond a reasonable doubt that the defendant's commitment for an extended term of incarceration is necessary for the protection of the public?

The issue raised by the reserved question was addressed in part in our recent decision in *State v. Maugaotega*, 115 Hawai'i 432, 168 P.3d 562 (2007), [hereinafter, "*Maugaotega II* "]. Based upon *Maugaotega II* and the analysis *infra*, we answer the reserved question as follows:

Although the two-count complaint filed by the prosecution on March 2, 2000 against the defendant-appellee Brian Jess did not charge the "aggravated crimes" described in HRS § 706–662, *see Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 864[, 166 L.Ed.2d 856] (2007), the circuit court nevertheless has authority to impose extended terms of imprisonment upon Jess pursuant to the provisions of HRS § 706–662, because our decision to require the allegation of aggravating extrinsic facts in a charging instrument applies prospectively only. Furthermore, insofar as the circuit court possesses the inherent judicial authority "to provide process where none exists," *State v. Moriwake*, 65 Haw. 47, 55, 647 P.2d 705, 711–12 (1982), and the legislature, by amending Hawaii's extended term sentencing laws to include jury fact-finding, has clearly expressed its approval of a jury system for making the required findings in order to bring the extended sentencing procedures into compliance with *Cunningham*,[6] the circuit court would

---

an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and written notice of the ground proposed was given to the defendant pursuant to subsection (2). Subject to the provisions of [HRS § ]706–604, the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue before a jury; provided that the defendant may waive the right to a jury determination under this subsection, in which case the determination shall be made by the court.

(2) Notice of intention to seek an extended term of imprisonment under [HRS § ]706–662[, *see supra* note 4,] shall be given to the defendant within thirty days of the defendant's arraignment. However, the thirty-day period may be waived by the defendant, modified by stipulation of the parties, or extended upon a showing of good cause by the prosecutor. A defendant previously sentenced to an extended term under a prior version of this chapter shall be deemed to have received notice of an intention to seek an extended term of imprisonment.

(3) If the jury, or the court if the defendant has waived the right to a jury determination, finds that the facts necessary for the imposition

of an extended term of imprisonment under [HRS § ]706–662 have been proven beyond a reasonable doubt, the court may impose an indeterminate term of imprisonment as provided in [HRS § ]706–661[, *see supra* note 3]. H.B. 2, 24th Leg., Second Spec. Sess. (2007), *available at* http://capitol.hawaii.gov/splsession 2007b/bills/HB2_.htm (enacted as Act 1 on October 31, 2007), *see* http://capitol.hawaii.gov/site1/archives/2007b/getstatus2.asp?billno=HB2.

**6.** As noted *supra* in notes 3–5, effective October 31, 2007, Act 1 of the 2007 Second Special Session amended Hawaii's extended term sentencing laws to provide for jury fact-finding in the imposition of extended term sentences. The measure, moreover, provided important statements of legislative intent and provisions for the retroactive application of the new sentencing laws:

> SECTION 1. The purpose of this Act is to amend Hawaii's extended term sentencing law to address issues raised in recent federal court opinions and rulings on the right to a jury trial. These opinions, *Apprendi v. New Jersey*, 530 U.S. 466[, 120 S.Ct. 2348, 147 L.Ed.2d 435] (2000), *Blakely v. Washington*, 542 U.S. 296[,

act within its discretion if, pursuant to HRS §§ 706–662(1) and 706–662(4) (Supp. 1996), it empaneled a jury to make a factual finding as to whether the prosecution has proved beyond a reasonable doubt that a defendant's commitment for an extended term or terms of imprisonment is necessary for the protection of the public. Finally, in light of the plain language of Act 1, *see supra* notes 3–6, and the remedial nature of its amendments, the circuit court can also empanel a jury to make the same factual finding with respect to a defendant pursuant to HRS §§ 706–662, as amended by Act 1.

## I. BACKGROUND

### A. Initial Proceedings In The Circuit Court And This Court

On March 2, 2000, the plaintiff-appellant State of Hawai'i [hereinafter, "the prosecution"] charged Jess by complaint with robbery in the first degree, in violation of HRS § 708–840(1)(b)(ii) (Supp.1998) (Count I), and unauthorized control of a propelled vehicle, in violation of HRS § 708–836 (Supp.1999) [hereinafter, "UCPV"] (Count II), both charges arising out of an incident wherein Jess robbed a taxi driver at knifepoint and took the vehicle. The complaint specifically alleged:

*COUNT I:* On or about the 23rd day of February, 2000, in the City and County of Honolulu, State of Hawai[']i, BRIAN JESS, while in the course of committing a theft and while armed with a dangerous instrument, to wit, a knife, did threaten the imminent use of force against Canh Tran, a person who was present with intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of Section 708–840(1)(b)(ii) of the Hawai['li Revised Statutes.

*COUNT II:* On or about the 24th day of February, 2000, in the City and County of Honolulu, State of Hawai['li, BRIAN JESS, did intentionally or knowingly exert unauthorized control over a propelled vehicle, by operating the vehicle without the consent of Canh Tran, owner of said vehicle, thereby committing the offense of Unauthorized Control of Propelled Vehicle, in violation of Section 708–836 of the Hawai['li Revised Statutes.

On December 4, 2000, a jury found Jess guilty of both counts. On January 10, 2001, the prosecution filed motions (1) to sentence Jess as a repeat offender, pursuant to HRS § 706–606.5 (Supp.1999), to a mandatory minimum sentence of six years and eight months imprisonment, (2) for an extended term of imprisonment of life with the possibility of parole as to Count I, pursuant to HRS §§ 706–661, 706–662(1), and 706–662(4)(a) (Supp.1996), and (3) for the sentences on the two counts to be served consec-

124 S.Ct. 2531, 159 L.Ed.2d 403] (2004), *United States v. Booker*, 543 U.S. 220[, 125 S.Ct. 738, 160 L.Ed.2d 621] (2005), and *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856[, 166 L.Ed.2d 856] (2007), have held that any fact, other than prior or concurrent convictions, that increases the penalty for a crime beyond the ordinary statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.

. . . .

The purpose of this Act is to amend Hawaii's extended term sentencing statutes to ensure that the procedures used to impose extended terms of imprisonment comply with the requirements set forth by the United States Supreme Court and Hawai['li supreme court. The legislature intends that these amendments apply to any case that requires resentencing because of the decisions in the *Apprendi, Blakely, Booker, Cunningham,* and *Maugaotega* cases. . . . To the extent that this Act applies retroactively, the legislature finds that it does not subject any offender to additional punishments or other disadvantage.

. . . .

SECTION 5. This Act shall apply to all sentencing or resentencing proceedings pending on or commenced after the effective date of this Act, whether the offense was committed prior to, on, or after the effective date of this Act. A defendant whose extended term of imprisonment is set aside or invalidated shall be resentenced pursuant to this Act upon request of the prosecutor. . . .

. . . .

SECTION 8. This Act shall take effect upon its approval.

H.B.2, 24th Leg., Second Spec. Sess. (2007), *available at* http://capitol.hawaii.gov/splsession 2007b/bills/HB2_.htm (enacted as Act 1 on October 31, 2007), *see* http://capitol.hawaii.gov/site1/archives/2007b/getstatus2.asp?billno=HB2. (Some internal citations omitted.)

utively, pursuant to HRS § 706–668.5 (1993). On May 7, 2001, the circuit court, the Honorable Victoria S. Marks presiding, entered a judgment of conviction and sentenced Jess to an extended term of life imprisonment with a mandatory minimum term of one year and eight months as to Count I and an extended term of ten years with a mandatory minimum term of one year and eight months as to Count II, the two sentences to run concurrently.[7]

On July 9, 2001, Jess filed a motion for reconsideration of sentence, which the circuit court denied on July 31, 2001. Jess had previously filed a notice of appeal to this court on June 6, 2001, and, on September 26, 2003, this court filed a summary disposition order affirming the circuit court's judgment and sentence, concluding, *inter alia*, that Jess's extended term sentences were not unconstitutional under *Apprendi* (citing *State v. Kaua*, 102 Hawai'i 1, 12–13, 72 P.3d 473, 484–85 (2003)). *See State v. Jess*, No. 24339, 102 Hawai'i 527, 78 P.3d 340, 2003 WL 22221386 (Haw. Sept.26, 2003) (*Jess I* ).

### B. *Habeas Corpus Proceedings In Federal Court*

On October 6, 2004, Jess filed the petition for a writ of habeas corpus in the United States District Court, seeking to vacate the extended term sentences. *Jess II*, 2006 WL 1041737, at *2. In granting the petition, the United States District Court concluded that it was bound by the holding of the United States Court of Appeals for the Ninth Circuit in *Kaua v. Frank*, 436 F.3d 1057 (9th Cir. 2006), that Hawaii's extended term sentencing scheme violated *Apprendi* and that, in the instant matter, the violation did not constitute harmless error. *Jess II*, 2006 WL 1041737, at *1.

### C. *Proceedings On Remand From Federal Court*

On July 31, 2006, the prosecution filed its second motion in the first circuit court to resentence Jess to an extended term of imprisonment on Count I in a manner consistent with the order of the United States District Court by empaneling a jury to make the necessity findings required by HRS §§ 706–662(1) and 706–662(4)(a). In the declaration of counsel submitted in support of the motion for an extended term of imprisonment, after reciting Jess's prior convictions, counsel averred:

30. [Jess] is a "persistent offender" and a "multiple offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:

a. [Jess] was on probation in [another criminal matter] when he committed the instant offenses.

b. [Jess] has an extensive criminal history.

c. [Jess]'s criminality has continued despite his prior contacts with the criminal justice system.

d. [Jess] has failed to benefit from the criminal justice system.

e. [Jess] has demonstrated a total disregard for the rights of others and a poor attitude toward the law.

f. [Jess] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of the law.

g. Due to the quantity and seriousness of [Jess]'s past convictions and the seriousness of the instant offenses, [Jess] poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.

On October 5, 2006, Jess filed an amended motion to preclude empaneling a jury, arguing, *inter alia*, that extended term sentencing was "wholly a statutory creature in Hawai'i" and that HRS § 706–662 "ex-

---

7. In its June 5, 2001 findings of fact, conclusions of law, and order granting the prosecution's motion for extended term sentencing, the circuit court found that Jess had four previous felony convictions, qualifying him for an extended term pursuant to HRS § 706–662(1), and was being presently sentenced for two felony counts, qualifying him for an extended term pursuant to HRS § 706–662(4)(a), and further found that Jess's extended incarceration was necessary for the protection of the public.

pressly entrusts the requisite fact-finding to 'the court,' not a jury." A hearing on the motion was scheduled for November 10, 2006, but, on November 6, 2006, the prosecution filed an alternative motion to reserve consideration of the jury-empanelment question to this court. Jess filed a memorandum in opposition on December 26, 2006. On February 21, 2007, the circuit court, the Honorable Virginia Lea Crandall presiding, determined that empaneling a jury for the purpose of making the necessity finding raised a novel question of law and, therefore, reserved the question, *see supra*, to this court, pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 15.[8] The prosecuting attorney for the County of Kaua'i filed an amicus brief on July 11, 2007, and the attorney general filed an amicus brief on September 18, 2007.

On April 26, 2007, this court entered an order accepting the reserved question, and, on November 26, 2007, this court requested supplemental briefing addressing the following question:

> In light of *Cunningham v. California*, [549 U.S. 270,] 127 S.Ct. 856, 864[, 166 L.Ed.2d 856] (2007), and *State v. Merino*, 81 Hawai'i 198, 212, 915 P.2d 672, 686 (1996), what is the significance, if any, of the fact that the March 2, 2000 complaint fails to allege that Jess, in committing the offenses of robbery in the first degree and unauthorized control of a propelled vehicle, was a persistent and/or multiple offender such that imposing upon him an extended term of imprisonment, pursuant to HRS

§§ 706–661 and 706–662, was necessary for the protection of the public?

Jess filed his supplement brief on December 26, 2007, the prosecution filed its supplemental brief on December 31, 2007, and the attorney general filed an amicus brief December 31, 2007.

## II. STANDARDS OF REVIEW

### A. Empaneling A Jury

■ The issue presented by the reserved question—whether a circuit court may empanel a jury for the purpose of considering the requisite necessity finding—is a question of law. " 'Questions of law are reviewable *de novo* under the right/wrong standard of review.' " *Roes v. FHP, Inc.*, 91 Hawai'i 470, 473, 985 P.2d 661, 664 (1999) (quoting *Francis v. Lee Enters., Inc.*, 89 Hawai'i 234, 236, 971 P.2d 707, 709 (1999)).

### B. Sufficiency Of A Charge

■ " 'Whether an indictment [or complaint] sets forth all the essential elements of [a charged] offense ... is a question of law,' which we review under the de novo, or 'right/wrong,' standard." ... *Merino*, 81 Hawai'i [at] 212, 915 P.2d [at] 686 ... (quoting *State v. Wells*, 78 Hawai'i 373, 379, 894 P.2d 70, 76 (1995) (citations omitted)).

*State v. Cordeiro*, 99 Hawai'i 390, 403, 56 P.3d 692, 705 (2002) (brackets and ellipsis points in original).

---

8. The dissent asserts that this opinion is "advisory" to the extent that we construe Act 1, *see supra* notes 4–5, as it pertains to Jess. Dissenting opinion at 28–29. HRAP Rule 15 provides in relevant part that "[a] circuit court ... may reserve for the consideration of the supreme court a question of law arising in any proceedings before it." The plain language of this rule authorized the circuit court to seek advice from us as to a question of law. In order adequately to give the circuit court that advice, we must address all relevant issues. In the present matter, the prosecution has moved for extended term sentencing and has represented that it intends to pursue that course of action on remand. Act 1 speaks directly to extended term sentencing procedures. Accordingly, an assessment of whether

Act 1 can be applied to Jess's resentencing does not constitute an advisory opinion on an abstract proposition that cannot affect the matter at issue in the present case. *See State v. Matavale*, 115 Hawai'i 149, 169 n. 15, 166 P.3d 322, 342 n. 14; *State v. Cutsinger*, No. 28203, 118 Hawai'i 68, 185 P.3d 816, 2008 WL 257175, at *6 (Haw.Ct. App. Jan. 30, 2008) (holding that the ICA's decision to address whether Act 1 could be applied retroactively to the defendant was not an advisory opinion on an abstract issue, because the case had to be remanded for resentencing and the prosecution had stated with certainty that it would seek an extended term of imprisonment pursuant to the procedures set forth in Act 1 on remand).

## III. *DISCUSSION*

A. *Although The Prosecution Did Not Allege In The Complaint That Jess Was A Persistent And/Or Multiple Offender Whose Imprisonment For An Extended Term Was Necessary For The Protection Of The Public, Jess Is Nevertheless Subject To Extended Term Sentencing Pursuant To HRS §§ 706–661 and 706–662.*

### 1. *Introduction*

■ The prosecution and the attorney general concede that, under the fifth amendment's grand jury clause [9] and the sixth amendment's notice clause,[10] except for a past conviction, any fact that increases the maximum penalty for an offense must be alleged in a federal indictment, because such facts are elemental to the offense for constitutional purposes. *See Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime *must be charged in an indictment,* submitted to a jury, and proven beyond a reasonable doubt." (Emphasis added.)); *id.* at 232, 119 S.Ct. 1215 ("[A] fact is an element of an offense rather than a sentencing consideration, given that *elements must be charged in the indictment,* submitted to a jury, and proven by the Government beyond a reasonable doubt." (Emphasis added.)). They correctly observe, however, that the indictment rule has not been held to apply beyond federal prosecutions, because it is grounded in the fifth amendment's grand jury clause, which has not been applied to the states through the fourteenth amendment. *See United States v. Cotton,* 535 U.S. 625, 627, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002) (explaining that, "[i]n federal prosecutions," other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum "must be charged in the indictment" (citing *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (quoting *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215))); *Williams v. Haviland,* 467 F.3d 527, 533 (6th Cir.2006) ("By explicitly referring to *federal* prosecutions and distinguishing state prosecutions, *Cotton* makes clear that *Apprendi* did not revisit the well-established rule that the states are not bound by the Fifth Amendment grand jury right." (Emphasis in original.)); *Harris v. United States,* 536 U.S. 545, 549, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) ("In federal prosecutions, 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury' alleging all the elements of the crime." (Quoting U.S. Const. amend. V.)); *Apprendi,* 530 U.S. at 477 n. 3, 120 S.Ct. 2348 (declining to address the question whether a defendant in a state prosecution could challenge, under the federal constitution, the absence of aggravating factors in his indictment and noting that "the 'due process of law' that the Fourteenth Amendment requires the States to provide to persons accused of crime ... has not ... been construed to include" the fifth amendment's grand jury clause); *Ring v. Arizona,* 536 U.S. 584, 597 n. 4, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) (citing *Apprendi,* 530 U.S. at 477 n. 3, 120 S.Ct. 2348); *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) ("Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or indictment by a grand jury."). Accordingly, in this case, the federal indictment rule does not govern the sufficiency of the allegations in the complaint against Jess. We therefore turn our attention to Hawai'i law.

■ Pursuant to the due process and "grand jury" clauses of the Hawai'i Constitution, which reside respectively in article I,

---

9. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury....").

10. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation....").

sections 5 [11] and 10,[12] the prosecution must allege all essential elements of an offense in the charging instrument. *See State v. Israel,* 78 Hawai'i 66, 73, 890 P.2d 303, 310 (1995) (explaining that "the requirement that an accusation must sufficiently allege all of the essential elements of the offense charged derived" from the grand jury clause and the due process clause).[13] In contrast to the federal indictment rule, *see Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215, this court has held that not all facts that increase the maximum penalty for a crime must be pled in the charging instrument. *See State v. Tafoya,* 91 Hawai'i 261, 270, 982 P.2d 890, 899 (1999). We have adhered to the view that sentencing factors involving facts that are extrinsic to the offense need not be alleged in the charging instrument, but that sentencing factors concerning facts that are intrinsic to the offense must be alleged. *Id.* Thus, our cases suggest that the procedural safeguards guaranteed by sections 5 and 10 of article I attach to intrinsic, but not extrinsic, facts relating to enhanced sentencing considerations. *See id.* The issue is whether this intrinsic/extrinsic distinction, a distinction that we were compelled to abandon in *Maugaotega II* insofar as it applied to *sentencing* procedure, *see* 115 Hawai'i at 442–43, 445, 168 P.3d at 572–73, 575, remains viable insofar as it governs *charging* procedure, *cf. id.* at 449 n. 19, 168 P.3d at 579 n. 19.

### 2. *Apao, Estrada, and the intrinsic/extrinsic distinction*

In *State v. Apao,* 59 Haw. 625, 634, 586 P.2d 250, 257 (1978), this court observed that "due process requires that an indictment contain all of the essential elements of the offense charged." [14] Consistent with this requirement, we held that the "better rule is to include in the indictment the allegations, which if proved, would result in application of a statute enhancing the penalty for the crime committed." *Id.* at 636, 586 P.2d at 258 (footnote and emphasis omitted); *see also id.* ("The common law required that 'every wrongful act which [was] to be taken into account in determining the punishment be alleged in the indictment.'" (Quoting *State v. Blacker,* 234 Or. 131, 380 P.2d 789, 791 (1963).)); *Apprendi,* 530 U.S. at 510, 120 S.Ct. 2348 (Thomas, J., concurring) ("'The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted.'" (Quoting 1 J. Bishop, *Law of Criminal Procedure* § 81, at 51 (2d ed. 1872).)). It follows that, because such allegations must be alleged in the indictment, they comprise "essential elements" of the offense. *See Apao,* 59 Haw. at 634, 586 P.2d at 257. In *State v. Estrada,* 69 Haw. 204, 230, 738 P.2d 812, 829 (1987), we "transformed 'the better rule' as articulated in

**11.** *See* Haw. Const. art. I, § 5 ("No person shall be deprived of life, liberty or property without due process of law....").

**12.** *See* Haw. Const. art. I, § 10 ("No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury or upon a finding of probable cause after a preliminary hearing held as provided by law or upon information in writing signed by a legal prosecuting officer under conditions and in accordance with procedures that the legislature may provide....").

**13.** The attorney general argues that extended term sentencing facts need not be alleged in the charging instrument under the notice clause of article I, section 14. *See* Haw. Const. art. I, § 14 ("In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation...."). Under our precedents, however, the right to notice of all of the essential elements of the offense in the charging instrument is not grounded in the notice clause but, rather, the due process and grand jury clauses. *See Israel,* 78 Hawai'i at 73, 890

P.2d at 310; *State v. Elliott,* 77 Hawai'i 309, 311, 884 P.2d 372, 374 (1994) ("'[The] requirement obtains whether an accusation is in the nature of an oral charge, information, indictment, or complaint, and the omission of an essential element of the crime charged is a defect in substance rather than of form. A charge defective in this regard amounts to a failure to state an offense, and a conviction based upon it cannot be sustained, for that would constitute *a denial of due process.*'" (Quoting *State v. Jendrusch,* 58 Haw. 279, 281, 567 P.2d 1242, 1244 (1977).) (Emphasis added.)).

**14.** The *Apao* proposition was implicitly grounded in article I, section 10 of the Hawai'i Constitution, insofar as we relied on a federal decision interpreting the fifth amendment's grand jury clause. *Apao,* 59 Haw. at 635 & n. 5, 586 P.2d 250, 257 & n. 5 (quoting .*United States v. Radetsky,* 535 F.2d 556, 562 (10th Cir.1976), *overruled on other grounds by United States v. Daily,* 921 F.2d 994, 1004 & n. 11 (10th Cir.1990)).

*Apao* into ... [an] 'unequivocal' rule," *State v. Schroeder,* 76 Hawai'i 517, 527, 880 P.2d 192, 202 (1994) (citation omitted), that "[t]he aggravating circumstances must be alleged in the indictment and found by the jury," *Estrada,* 69 Haw. at 230, 738 P.2d at 829 (emphasis omitted) (citing *Apao,* 59 Haw. at 635–36, 586 P.2d at 258).

We have, however, qualified the rule of *Apao* and *Estrada,* holding that " 'historical facts,' the proof of which exposes the defendant to punishment by extended term sentence," *State v. Huelsman,* 60 Haw. 71, 79, 588 P.2d 394, 400 (1978), need not be alleged in the indictment or submitted to the jury, *see Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203, because such facts "are wholly *extrinsic* to the specific circumstances of the defendant's offenses and therefore have no bearing on the issue of guilt *per se," id.* at 528, 880 P.2d at 203 (emphasis in original). For example, the former version of HRS § 706–662 provided, *inter alia,* that the court was to determine whether the defendant was a dangerous person whose imprisonment for an extended term was necessary for the protection of the public. *See supra* note 4. We have interpreted this determination to implicate an extrinsic fact, because it does not directly relate to the specific elements of the underlying offense giving rise to extended term sentencing under the statute. *See Tafoya,* 91 Hawai'i at 270–71, 982 P.2d at 899–900. We have also explained that extrinsic facts should not be submitted to the jury, because having the jury find such facts "would require the admission of potentially irrelevant and prejudicial evidence and contaminate the jury's required focus of the elements of the offense charged." *See id.* Beyond extrinsic facts, however, we have held that the *Estrada* rule remained applicable to " 'aggravating circumstances' justifying the imposition of an enhanced sentence" if they involved factual questions that were " 'enmeshed in' " or "*intrinsic* to 'the commission of the crime charged,' " *Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203 (quoting *Apao,* 59 Haw. at 634, 586 P.2d at 257) (emphasis in original), such as whether the defendant possessed a shotgun or used a semiautomatic weapon during the commission of the offense, *see Tafoya,* 91 Hawai'i at

270, 982 P.2d at 899, or whether the defendant was convicted of attempted murder of a police officer who was "acting in the line of duty," *see Estrada,* 69 Haw. at 212–13, 738 P.2d at 819. The intrinsic/extrinsic distinction has been part of our case law since 1978, *see Huelsman,* 60 Haw. 71, 588 P.2d 394, and, as the attorney general observes, we indeed reiterated its principles as recently as July 2007, *see State v. Kekuewa,* 114 Hawai'i 411, 421–22, 163 P.3d 1148, 1158–59 (2007).

### 3. *In the wake of Cunningham, the intrinsic/extrinsic distinction is no longer viable.*

#### a. *Sentencing procedure*

Everything changed three months later. As Jess observes, in *Maugaotega II,* pursuant to the United States Supreme Court's mandate and judgment vacating our prior decision in *State v. Maugaotega,* 107 Hawai'i 399, 114 P.3d 905 (2005) (*Maugaotega I* ), we reconsidered the defendant's appeal in light of *Cunningham. Maugaotega II,* 115 Hawai'i at 433, 168 P.3d at 563. We explained that, because the *Cunningham* majority flatly rejected the bifurcated approach proposed by Justice Kennedy in his dissenting opinion for sixth amendment purposes, *Cunningham,* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14; *id.* at 872–73 (Kennedy, J., dissenting), it would likewise reject the intrinsic/extrinsic distinction that we have long followed. *See Maugaotega II,* 115 Hawai'i at 442–43, 445, 168 P.3d at 572–73, 575; *see also id.* at 453, 168 P.3d at 583 (Acoba, J., dissenting). We thus acknowledged that, in light of *Cunningham,* except for prior convictions, multiple convictions, and admissions, "any fact, *however labeled,* that serves as a basis for an extended term sentence must be proved beyond a reasonable doubt to the trier of fact." *Maugaotega II,* 115 Hawai'i at 447 & n. 15, 168 P.3d at 577 & n. 15 (majority opinion) (emphasis added).

Before *Maugaotega II,* we viewed aggravating intrinsic, but not extrinsic, facts as "elemental" to the offense for constitutional purposes. *See State v. Kaua,* 102 Hawai'i 1, 11–12, 72 P.3d 473, 483–84 (2003); *see also Tafoya,* 91 Hawai'i at 271–72, 982 P.2d at

900–01; *cf. Apao*, 59 Haw. at 634, 586 P.2d at 257. The elimination of the intrinsic/extrinsic distinction dictates that aggravating extrinsic facts are now likewise elemental. To illustrate this paradigm, extrinsic facts that give rise to enhanced sentencing comprise an element of what amounts to the "enhanced" version of the offense. Indeed, in explicating the *Apprendi* rule, the six-member *Cunningham* majority quoted with approval the observation, expressed in *Harris*, 536 U.S. at 557, 122 S.Ct. 2406 (plurality opinion), that "'*Apprendi* said that *any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime*—and thus the domain of the jury—*by those who framed the Bill of Rights*.'"[15] 549 U.S. at ——, 127 S.Ct. at 864 (emphases added); *see also Harris*, 536 U.S. at 557–58, 122 S.Ct. 2406 (plurality opinion) ("Congress may not manipulate the definition of a crime in a way that relieves the Government of its constitutional obligations to charge each element in the indictment, submit each element to the jury, and prove each element beyond a reasonable doubt. *McMillan [v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986),] and *Apprendi* asked whether certain types of facts, though labeled sentencing factors by the legislature, were nevertheless 'traditional elements' to which these constitutional safeguards were intended to apply." (Quoting *Patterson v. New York*, 432 U.S. 197, 211 n. 12, 97 S.Ct. 2319, 53 L.Ed.2d 281. (1977).) (Citations omitted.)); *Harris*, 536 U.S. at 567, 122 S.Ct. 2406 ("Read together, *McMillan* and *Apprendi* mean that those *facts setting the outer limits of a sentence*, and of the judicial power to impose it, *are the elements of the crime for the purposes of the constitutional analysis*." (Emphases added.)); *Apprendi*, 530 U.S. at 478, 120 S.Ct. 2348 ("Any possible distinction between an 'element' of a felony offense and a 'sentencing factor' was unknown to the practice of criminal indictment, trial by jury, and judgment by court as it existed during the years surrounding our Nation's founding." (Footnote omitted.)).

Correlatively, and by virtue of *Cunningham*, the offenses of first degree robbery and unauthorized control of a propelled vehicle, with which the complaint charged Jess in the present matter, are transformed into lesser included offenses of "aggravated crimes" because, in the words of the Hawai'i Penal Code, the "simple" offense will always be "established by proof of the same or less than all the facts required to establish the commission of the [enhanced or 'aggravated'] offense." *See* HRS § 701–109(4)(a) (1993) ("A defendant may be convicted of an offense included in an offense charged in the indictment or the information. An offense is so included when ... [i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged."); *State v. Jumila*, 87 Hawai'i 1, 3, 950 P.2d 1201, 1203 (1998) (holding that second degree murder was, as a matter of law, an included offense of carrying or use of a firearm in the commission of a separate felony, because the felony underlying the firearm statute "will always be 'established by proof of the same or less than all the facts required to establish the commission of the' [firearm] offense" (quoting HRS § 701–109(4)(a))), *overruled on other grounds by State v. Brantley*, 99 Hawai'i 463, 469, 56 P.3d 1252, 1258 (2002); *State v. Van den Berg*, 101 Hawai'i 187, 191, 65 P.3d 134, 138 (2003) ("[T]he core legal analysis in ... *Jumila* is still good law...."); *Apprendi*, 530 U.S. at 506, 120 S.Ct. 2348 (Thomas, J., concurring) (observing that, "if a statute increased the punishment of a common-law crime, whether felony or misdemeanor, based on some fact," then that "fact was an element of a new, aggravated grade of the common-law crime simply because it increased the punishment

---

**15.** Given the *Cunningham* analysis, extrinsic enhancers effectively become, for constitutional purposes, attendant circumstances of the "aggravated" offense. *Cf.* HRS § 702–205 (1993) ("The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as ... [a]re specified by the definition of the offense...."); *State v. Aiwohi*, 109 Hawai'i 115, 127, 123 P.3d 1210, 1222 (2005) ("'[A]ny circumstances defined in an offense that are neither conduct nor the results of conduct would, by default, constitute attendant circumstances elements of the offense.'" (Quoting *State v. Moser*, 107 Hawai'i 159, 172, 111 P.3d 54, 67 (App. 2005).)).

of the common-law crime" and that "the common-law crime was, in relation to the statutory one, essentially just like any other lesser included offense"). The "aggravated crimes" at issue in this case, to wit, robbery in the first degree and UCPV committed by a persistent and/or multiple offender as to whom "an extended term of imprisonment is necessary for the protection of the public," Act 1, section 3, are "aggravated" versions of "simple" first degree robbery and "simple" UCPV, because the necessity finding is the additional "element of [the] aggravated crime." *See Cunningham*, 549 U.S. at ——, 127 S.Ct. at 864. Conversely, "simple" robbery and "simple" UCPV are lesser included offenses of their "aggravated" versions. *See id.*; HRS § 701–109(4)(a); *Apprendi*, 530 U.S. at 506, 120 S.Ct. 2348 (Thomas, J., concurring).

### b. *Charging procedure*

■ The prosecution and the attorney general argue that, although this court has abandoned the intrinsic/extrinsic distinction with respect to sentencing procedure, we should retain the distinction with respect to charging procedure. They urge, in substance, that extrinsic enhancers need not, for purposes of article I, sections 5 and 10 of the Hawai'i Constitution, be viewed as elements of an aggravated crime. The attorney general contends that this court need not fully abandon its intrinsic/extrinsic distinction, especially because the distinction does not require extrinsic facts to be alleged in the charging instrument, precisely because those facts "are wholly extrinsic to the specific circumstances of the defendant's offenses and therefore have no bearing on the issue of guilt *per se.*" *Schroeder*, 76 Hawai'i at 528, 880 P.2d at 203 (emphasis omitted). It is clear, however, that *Cunningham* is unwavering in its insistence that the determinative issue in deciding whether a given fact is elemental is not whether the fact is enmeshed in, or intrinsic to, the elements of the underlying offense, *see* 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14, but, rather, whether it simply increases the standard maximum punishment for the offense, *see id.* at ——, 127 S.Ct. at 860.

The intrinsic/extrinsic distinction is also rooted in the belief that having the jury find extrinsic facts "would require admission of potentially irrelevant and prejudicial evidence and contaminate the jury's required focus on the specific elements of the offense charged." *Tafoya*, 91 Hawai'i at 271, 982 P.2d at 900; *see also id.* at 273 n. 15, 274 & n. 17, 902 n. 15, 903 & n. 17. After *Cunningham* and *Maugaotega II*, however, the jury is constitutionally required to be the factfinder with respect to extrinsic enhancers, because such facts are indeed elements of the offense for sentencing purposes. Nevertheless, the prosecution contends that, while this court's concern in *Tafoya* was directed at preventing the contamination of a *trial* "jury's required focus," *see* 91 Hawai'i at 271, 982 P.2d at 900, the same concern would arise if a *grand* jury were faced with extrinsically aggravating factual allegations. The prosecution concedes that a grand jury proceeding could potentially be bifurcated to prevent such contamination but, nonetheless, asserts that such a procedure would unnecessarily complicate the proceeding and be at odds with its purposes, which is not " 'an adversary hearing in which guilt or innocence of the accused is adjudicated' " but, rather, " 'an *ex parte* investigation to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person.' " *State v. Bell*, 60 Haw. 241, 243–44, 589 P.2d 517, 519 (1978) (quoting *United States v. Calandra*, 414 U.S. 338, 343–44, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974)).

■ We observe, as a preliminary matter, that the jury contamination issues that the prosecution identifies would not arise in instances, such as the present case, where the defendant is charged by complaint or upon information, both of which are permitted by article I, section 10 of the Hawai'i Constitution. *See supra* note 12. When the prosecution does opt to charge by indictment, article I, section 10 requires that the grand jury find probable cause as to every element of the offense of which the defendant may later be convicted at trial. *See Israel*, 78 Hawai'i at 73, 890 P.2d at 310 ("[J]ust as the State must prove beyond a reasonable doubt all of the essential elements of the offense

charged, the State is also required to sufficiently allege them...." (Quoting *State v. Tuua,* 3 Haw.App. 287, 293, 649 P.2d 1180, 1184–85 (1982).)); *State v. Stan's Contr., Inc.,* 111 Hawai'i 17, 32, 137 P.3d 331, 346 (2006) ("An indictment must enable a grand jury to determine that probable cause exists that the accused committed a violation of the charged offense ... as to the elements of the offense...."); *Apao,* 59 Haw. at 635 & n. 5, 586 P.2d at 257 & n. 5 (observing that the fifth amendment's grand jury clause requires that an indictment " 'make clear the charges so as ... to avoid [the defendant's] conviction on facts not found, or perhaps not even presented to, the grand jury that indicted him' " (quoting *Radetsky,* 535 F.2d at 562)). Because the petit jury must find certain extrinsic elemental facts as a prerequisite to convicting a defendant of the enhanced (*i.e.,* "aggravated") version of an offense, *see Maugaotega II,* 115 Hawai'i at 447, 168 P.3d at 577, it necessarily follows that, during the grand jury proceeding, the jury should likewise be required to find probable cause with respect to such elemental facts. *See Stirone v. United States,* 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (observing that the defendant has a "substantial right to be tried only on charges presented in an indictment returned by a grand jury"). By ensuring that every element of an offense is supported by a finding of probable cause, the grand jury performs its "historical role of being a safeguard to protect citizens against unfounded criminal prosecutions." *See State v. O'Daniel,* 62 Haw. 518, 520, 616 P.2d 1383, 1386 (1980); *see also Bell,* 60 Haw. at 243, 589 P.2d at 519 ("[T]he grand jury's responsibilities include both the determination of whether there is probable cause to believe that a crime has been committed and the protection of citizens against unfounded criminal prosecutions."). To carry out its function, we believe that the grand jury must review the evidence supporting all elements of an offense, including extrinsic enhancers, logistically problematic as the process may be.[16] *United States v. Italiano,* 837 F.2d 1480, 1482 (11th Cir.1988) (" '[A] grand jury can perform its function of determining probable cause and returning a true bill only if all elements of the offense are contained in the indictment.' " (Quoting *United States v. Outler,* 659 F.2d 1306, 1310 (5th Cir.1981), *overruled on other grounds by United States v. Steele,* 147 F.3d 1316, 1317 (11th Cir. 1998).)).

In this connection, we note that the United States Supreme Court declared in *Jones* that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Tafoya,* 91 Hawai'i at 273 n. 15, 982 P.2d at 902 n. 15 (quoting *Jones,* 526 U.S. at 243 n. 6, 119 S.Ct. 1215). Although the indictment rule in *Jones* is grounded in the fifth amendment's grand jury clause, *see Haviland,* 467 F.3d at 533, which has not been applied to state prosecutions, *see Alexander,* 405 U.S. at 633, 92 S.Ct. 1221, article I, section 10 of the Hawai'i Constitution was patterned after its federal counterpart, *see* 1 *Constitutional Convention of Hawaii* 164, 243, 420 (1960) (explaining that article I, section 9, which was ultimately codified as section 8 (the predecessor to article I, section 10), "incorporates the first three clauses of the 5th Amendment of the Federal Constitution"). To be sure, article I, section 10 of the Hawai'i Constitution affords the prosecution more charging mechanisms than its federal analogue, insofar as article I, section 10 permits the prosecution to charge by indictment, complaint, or information, *see supra* note 12, whereas the fifth amendment only allows charging by indictment, *see supra* note 9. Nevertheless, we do not (and very likely *may* not, *cf. State v. Texeira,* 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967) (recognizing that the courts of this state must "afford defendants the minimum protection required by federal interpretations of the Fourteenth Amendment to the Federal Constitution")·interpret the plain language of article I, section 10 to require the inclusion of any less notice in a charging instrument than that which is

16. Of course, as we have noted, consistent with article I, section 10 of the Hawai'i Constitution, the prosecution is free, as in the present matter, to circumvent the grand jury altogether by charging a defendant via complaint. In addition, when the prosecution decides to go forward by way of indictment, a bifurcated grand jury proceeding is possible.

guaranteed by the fifth amendment. Consequently, the fact that the federal courts do not recognize any distinction between intrinsic and extrinsic enhancers under the federal grand jury clause, *see Cotton*, 535 U.S. at 627, 122 S.Ct. 1781 (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348) (quoting *Jones*, 526 U.S. at 243 n. 6, 119 S.Ct. 1215)); *cf. Cunningham*, 549 U.S. at —— n. 14, 127 S.Ct. at 869 n. 14, is "highly persuasive" in shaping our interpretation of article I, section 10 of the Hawai'i Constitution. *See Harada v. Burns*, 50 Haw. 528, 532, 445 P.2d 376, 380 (1968) (holding that, although the seventh amendment's civil jury trial right does not apply to the states, the Hawai'i counterpart in article I, section 10 of the Hawai'i Constitution was patterned after the federal provision and, therefore, "the interpretation of [that] provision[ ] by the federal courts are deemed to be highly persuasive in the reasoning of this court").

Given the *Cunningham* imperative regarding the elemental character of *Apprendi* enhancers, the intrinsic/extrinsic distinction has lost its viability to the extent that it governs charging procedure and, therefore, we de-cline to follow it any further. Because the intrinsic/extrinsic distinction no longer serves to qualify the rule of *Apao* and *Estrada*, it follows that the rule now applies across the board both to intrinsic and extrinsic enhancers. In short, it is now clear that extrinsic enhancers, like intrinsic enhancers, are "essential elements" of the "aggravated" version of the offense. *See Apao*, 59 Haw. at 634, 586 P.2d at 257; *Cunningham*, 549 U.S. at —— n. 14, 127 S.Ct. at 864 n. 14 (quoting *Harris*, 536 U.S. at 556–57, 122 S.Ct. 2406 (plurality opinion)); *Maugaotega II*, 115 Hawai'i at 450, 168 P.3d at 580 (explaining that *Cunningham*, "by rejecting the intrinsic/extrinsic distinction, essentially reinstates the rule asserted in *Estrada* for both intrinsic and *extrinsic* facts" (emphasis in original) (citation omitted)). Accordingly, we hold that a charging instrument, be it an indictment, complaint, or information, must include all "allegations, which if proved, would result in the application of a statute enhancing the penalty of the crime committed." *Apao*, 59 Haw. at 636, 586 P.2d at 258 (footnote and emphasis omitted); *accord Estrada*, 69 Haw. at 230, 738 P.2d at 829.[17]

17. The prosecution and the attorney general do not challenge the validity of the rule of *Apao* and *Estrada* but, instead, cite cases from jurisdictions that have interpreted their respective "grand jury" provisions as not requiring the inclusion of facts giving rise to enhanced sentencing in the charging instrument. These courts reason that the disclosure requirements under their rules of criminal procedure supply sufficient notice to the defendant of the prosecution's intention to rely on those facts. *See, e.g., McKaney v. Foreman*, 209 Ariz. 268, 100 P.3d 18, 22 (2004) ("It thus becomes irrelevant that aggravators are not specified in the indictment or information based on evidence of probable cause presented to a grand jury or magistrate because the defendant will have been given ample notice under the Arizona Rules of Criminal Procedure...."); *Evans v. State*, 389 Md. 456, 886 A.2d 562, 575 (2005) (holding that aggravating factors are not required to be alleged in the indictment under the indictment provision of the Maryland Declaration of Rights, because "[t]he point of that provision is to give fair and adequate notice, and ... that notice may come from statutory [n]otice," which is required thirty days before trial); *State v. Berry*, 141 S.W.3d 549, 561–62 (Tenn.2004) (holding that the defendant is not entitled to notice in the indictment, under the Tennessee indictment clause, because the notice requirements are satisfied by the state's rules of criminal procedure). These courts acknowledge that ag-gravating factors may be the elemental to an offense for purposes of sentencing, but explain that their case law does not require that sentence-enhancing facts be alleged in the indictment, and they consequently decline to impose such a requirement. *See McKaney*, 100 P.3d at 21; *Evans*, 886 A.2d at 575, 575–76; *Joubert v. State*, 235 S.W.3d 729, 733 & n. 21 (Tex.Crim. App.2007). Unlike the foregoing illustrative jurisdictions, we have interpreted the Hawai'i Constitution as requiring that the charging instrument include all "allegations, which if proved, would result in the application of a statute enhancing the penalty of the crime committed." *Apao*, 59 Haw. at 636, 586 P.2d at 258 (footnote and emphasis omitted); *accord Estrada*, 69 Haw. at 230, 738 P.2d at 829. Accordingly, the cases cited by the prosecution and the attorney general are inconsistent with our precedents, and we therefore decline to follow them.

In an HRAP 28(j) citation of supplemental authority, the attorney general cites the Intermediate Court of Appeals' recent decision in *Cutsinger*, 118 Hawai'i at 69, 77–78, 185 P.3d at 817, 825–26, 2008 WL 257175, at *1, *17–*18, in which the ICA concluded, *inter alia*, that enhancing facts need not be alleged in the charging instrument. The ICA reasoned that, "[a]lthough *Apprendi* and its progeny require that sentencing-enhancing facts be treated as the functional equivalent of elements of an offense for purposes

4. *Our decision today does not call the constitutionality of HRS § 706–664(2) or HRPP Rule 7(d) into question.*

■ The attorney general argues that a holding that extrinsic facts foundational to enhanced sentencing must be alleged in the indictment would require us to rule HRS § 706–664, as amended by Act 1, to be unconstitutional. Although we are unable to discern from the attorney general's brief the specific language of HRS § 706–664 to which he is referring, *see Hawaii Ventures, LLC v. Otaka, Inc.*, 114 Hawai'i 438, 478, 164 P.3d 696, 736 (2007) ("[A]n appellate court is not obliged to address matters for which the appellant has failed to present discernible arguments."), we presume that he is alluding to paragraph (2), which provides in relevant part that "[n]otice of intention to seek an extended term of imprisonment under section 706–662 shall be given to the defendant within thirty days of the defendant's arraignment." *See supra* note 5. This provision is not incompatible with our decision today because there is no mutual exclusivity between the necessity of alleging extrinsic elemental enhancers in the charging instrument and the subsequent statutory notice provision set forth in HRS § 706–664(2). Merely charging the "aggravated" offense does not obligate the prosecution to prove it; to the contrary, the prosecution can always opt to prove the lesser included, unenhanced version of the offense. *Cf. Whiting v. State*, 88 Hawai'i 356, 362, 966 P.2d 1082, 1088 (1998) ("Since recklessness will be satisfied by proof that the defendant acted intentionally or knowingly, a charge of manslaughter could be employed where a prosecutor, in the prosecutor's discretion, did not wish to push for a murder conviction." (Quoting commentary to HRS § 707–702.) (Emphasis omitted.)); *State v. Holbron*, 80 Hawai'i 27, 44, 904 P.2d 912, 929 (1995) ("Within constitutional limits, it is *always* the prosecution's prerogative to undercharge any offense for whatever reason it

deems appropriate...." (Emphasis added.)). Moreover, the plain language of HRS § 706–664(2) simply does not say that notice of intention to seek an extended term of imprisonment under HRS § 706–662 "shall not be included in the charging instrument." Indeed, this provision is directed exclusively to *sentencing* procedure; it is completely silent with respect to *charging* procedure.

In the next section of the attorney general's brief, he asserts that a rule requiring that extrinsic enhancers be alleged in the charging instrument would render HRS § 706–664(2), as amended, unconstitutional to the extent that it provides that "[a] defendant previously sentenced to an extended term under a prior version of this chapter shall be deemed to have received notice of an intention to seek an extended term of imprisonment." *See supra* note 5. That provision also requires that the defendant receive notice within thirty days of his arraignment. *See id.* However, notice, constructive or otherwise, of the prosecution's intention to seek an extended term of imprisonment within thirty days of his arraignment is not a substitute for the constitutional requirement that an indictment, complaint, or information allege the elements of the "aggravated crime" justifying the imposition of an extended term of imprisonment. The latter derives from article I, sections 5 and 10; the former simply satisfies the statute. Thus, we do not read the statute's constructive notice provision as undertaking to cure the (as of then unknown) constitutional defects in the charging instruments of defendants who were previously sentenced to extended terms but not charged with the "aggravated crimes" to which the extended terms pertain.

■ In any event, such a reading would contravene the doctrine of "constitutional doubt," which dictates that, " 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitution-

of the Sixth Amendment jury-trial right, ... such facts are not elements for purposes of what must be pled in an indictment or complaint." *Id.* at 76, 185 P.3d at 824, 2008 WL 257175, *16; *see also id.* at 77–78, 185 P.3d at 825–26, 2008 WL 257175, *17–*18 (suggesting that extrinsic enhancers are not elemental). As we have ex-

plained *supra*, however, extrinsic enhancers must be alleged in the charging instrument, because they are indeed elemental for charging purposes under article I, sections 5 and 10 of the Hawai'i Constitution. We therefore overrule *Cutsinger* to the extent that its analysis is inconsistent with our own.

al questions arise and by the other of which such questions are avoided, our duty is adopt the latter,'" *In the Interest of Doe*, 96 Hawai'i 73, 81, 26 P.3d 562, 570 (2001) (quoting *Jones*, 529 U.S. at 857, 120 S.Ct. 1904). Pursuant to article I, sections 5 and 10, all of the elements of an offense must be alleged in the charging instrument, and the prosecution's failure to do so is not cured or otherwise excused by the fact that the accused was actually or constructively aware of the circumstances that might give rise to an omitted element. *See Israel*, 78 Hawai'i at 73, 890 P.2d at 310 (observing that the requirement that the instrument must allege all of the essential elements of the offense "'is not satisfied by the fact that the accused actually knew them and was not misled by the failure to sufficiently allege all of them'" (quoting *Tuua*, 3 Haw.App. at 293, 649 P.2d at 1184–85)). Interpreting HRS § 706–664(2) as purporting to charge an element of an "aggravated crime" by *constructive* notice would cause the statute to run afoul of the guarantee, embedded in article I, sections 5 and 10, of *actual* notice in the charging instrument. We therefore decline to read HRS § 706–664(2) as attempting to charge defendants by constructive notice.

Finally, the attorney general maintains that the elimination of the intrinsic/extrinsic distinction would render HRPP Rule 7(d), entitled "[n]ature and contents [of an indictment, information or complaint]," invalid in many cases because, according to the attorney general, the rule does not require allegations that support an extended term to be pled in the charging instrument. HRPP Rule 7(d) provides in relevant part that "[t]he charge shall be a plain, concise and definite written statement of the essential facts constituting the offense charged," but "need not contain a formal conclusion or any other matter not necessary to such statement." Like HRS § 706–664(2), as amended, the rule is perfectly compatible with the proposition that enhancing elements of an "aggravated crime," giving rise to an extended prison term, must be pled in the charging instrument. Precisely because *Cunningham* decrees that factual enhancers that support an extended term of imprisonment are elements of an "aggravated crime," *see supra*

section III.A.3, we construe HRPP Rule 7(d) to require the allegation of such elements if the prosecution decides to seek a conviction of that offense.

In short, we disagree with the attorney general that our decision calls the constitutionality of HRS § 706–662(2) or HRPP Rule 7(b) into question.

> 5. *Our holding with respect to charging instruments alleging "aggravated crimes" is strictly prospective, and, therefore, does not apply to Jess.*

■■■ The attorney general argues that any decision mandating that *all Apprendi/Cunningham* enhancers—whether intrinsic or extrinsic—be alleged in all charging instruments seeking an extended prison term pursuant to HRS § 706–662, as amended, *see supra* section III.A.3.b, should be limited to purely prospective application.

The question of prospective application arises when this court announces a new rule. *See State v. Ketchum*, 97 Hawai'i 107, 123 n. 26, 34 P.3d 1006, 1022 n. 26 (2001) ("If ... a judicial decision announces a 'new rule,' then this court may, in its discretion, determine that the interests of fairness preclude retroactive application of the new rule."); *James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 534, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) ("It is only when the law changes in some respect that an assertion of nonretroactivity may be entertained, the paradigm case arising when a court expressly overrules a precedent upon which the contest would otherwise be decided differently and by which the parties may previously have regulated their conduct."). In the present matter, the rule of *Apao* and *Estrada* was previously qualified by the intrinsic/extrinsic distinction, which did not require, and indeed counseled against, the inclusion of extrinsic facts in the charging instrument. *See Tafoya*, 91 Hawai'i at 271, 982 P.2d at 900; *see also supra* section III.A.3.b. In light of *Cunningham*, however, we have recognized today that the intrinsic/extrinsic distinction is no longer viable for charging purposes. *See supra* section III.A.3.b. Aside from footnote 19 of our *Mau-*

401

*gaotega II* opinion, *see* 115 Hawai'i at 449 n. 19, 168 P.3d at 579 n. 19, this case represents the first instance in which we have questioned the ongoing viability of the intrinsic/extrinsic distinction in the context of charging procedure. *See supra* section III. A.3.a. Indeed, even the dissenting opinions that previously challenged the validity of the intrinsic/extrinsic distinction attacked the distinction from the standpoint of the sixth amendment right to a jury trial regarding extended term sentencing and not from the standpoint of proper charging procedure sufficient to satisfy article I, sections 5 and 10 of the Hawai'i Constitution. *See State v. Rivera*, 106 Hawai'i 146, 167, 102 P.3d 1044, 1065 (2004) (Acoba, J., dissenting) (asserting that " 'the State's sentencing procedure [in this case] did not comply with the Sixth Amendment,' and, thus, the sentence imposed on [the defendant] 'is invalid' " (quoting *Blakely v. Washington*, 542 U.S. 296, 305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)) (brackets in original)); *Maugaotega I*, 107 Hawai'i at 410–11, 114 P.3d at 916–17 (Acoba, J., dissenting); *State v. White*, 110 Hawai'i 79, 97, 129 P.3d 1107, 1125 (2006) (Acoba, J., dissenting). Accordingly, the rule we announce today, which liberates the rule of *Apao* and *Estrada* from the gloss imposed by *Huelsman*, *Schroeder*, and *Tafoya*, constitutes a new rule.[18]

Because we are announcing a new rule, we must decide whether the rule should be given retroactive effect. "Although judicial decisions are assumed to apply retroactively, such application is not automatic," because " 'the Constitution neither prohibits nor requires retrospective effect.' " *State v. Peralto*, 95 Hawai'i 1, 6, 18 P.3d 203, 208 (2001) (quoting *State v. Santiago*, 53

Haw. 254, 268, 492 P.2d 657, 665 (1971)). We are therefore "[f]ree to apply decisions with or without retroactivity," *Santiago*, 53 Haw. at 268, 492 P.2d at 665, and may give a new rule (1) purely prospective effect, which means that the " 'rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision,' " *State v. Garcia*, 96 Hawai'i 200, 208, 29 P.3d 919, 927 (2001) (quoting *James B. Beam Distilling*, 501 U.S. at 536, 111 S.Ct. 2439); (2) limited or "pipeline" retroactive effect, under which the rule applies to the parties in the decision and all cases that are on direct review or not yet final as of the date of the decision, *see State v. Colbert*, 190 N.J. 14, 918 A.2d 14, 20 (2007); *State v. Fortin*, 178 N.J. 540, 843 A.2d 974, 1036 n. 18, *motion for clarification granted by* 178 N.J. 540, 843 A.2d 974 (2004); *cf. Garcia*, 96 Hawai'i at 214, 29 P.3d at 933 (giving a rule limited prospective application, because the rule had previously been applied in the decision that originally announced the rule); *State v. Hanaoka*, 97 Hawai'i 17, 20, 32 P.3d 663, 666 (2001); or (3) full retroactive effect, under which the rule applies " 'both to the parties before the court and to all others by and against whom claims may be pressed,' " *Garcia*, 96 Hawai'i at 208, 29 P.3d at 927 (quoting *James B. Beam Distilling*, 501 U.S. at 535, 111 S.Ct. 2439).[19] In deciding which option is appropriate, we " 'weigh[ ] the merits and demerits of retroactive application of the particular rule,' " *Peralto*, 95 Hawai'i at 6, 18 P.3d at 208 (quoting *Santiago*, 53 Haw. at 268, 492 P.2d at 665, in light of " '(a) the purpose of the newly announced rule, (b) the extent of reliance by law enforcement authorities on the

**18.** The dissent asserts that "it would be inaccurate to characterize the new rule announced here as being grounded solely in our state law," because the rule was previously articulated in *Jones*. Dissenting opinion at 433, 184 P.3d at 185 n. 25; *cf. id.* at 436–37, 184 P.3d at 188–89. As we explained *supra* in section III.A.1, however, the rule in *Jones* is limited to federal prosecutions. Therefore, the new rule we announce today is based solely on article I, sections 5 and 10 of the Hawai'i Constitution.

**19.** A fourth alternative is to accord a new rule selective retroactive effect, which means that the

court may apply the "rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." *Garcia*, 96 Hawai'i at 208, 29 P.3d at 927 (quoting *James B. Beam Distilling*, 501 U.S. at 537, 111 S.Ct. 2439). We have, however, declined to follow this approach, because " 'selective application of new rules violates the principles of treating similarly situated defendants the same.' " *Id.* at 214, 29 P.3d at 933 (quoting *State v. Jackson*, 81 Hawai'i 39, 51, 912 P.2d 71, 83 (1996)).

old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards,' "[20] *id.* at 7, 18 P.3d at 209 (quoting *Santiago*, 53 Haw. at 268–67, 492 P.2d at 665–66)).

 "Primary consideration is given to the purpose for which the new standards are adopted." *Santiago*, 53 Haw. at 269, 492 P.2d at 666. Retrospective application is generally provided to "[r]ules designed to protect 'the very integrity of the fact-finding process,' " *id.* (quoting *Linkletter v. Walker*, 381 U.S. 618, 639, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), *overruled by Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)), as where the "major purpose" of the rule "is to overcome an aspect of the criminal trial that substantially impairs its truth-finding function and so raises serious questions about the accuracy of guilty verdicts in past trials," *Williams v. United States*, 401 U.S. 646, 653, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971), *cited in Santiago*, 53 Haw. at 268–69, 492 P.2d at 665–66. For present purposes, the intrinsic/extrinsic dichotomy, which was the law in this jurisdiction until *Maugaotega II*, did not require the inclusion of extrinsic enhancing facts in the charging instrument. *See Tafoya*, 91 Hawai'i at 271, 982 P.2d at 900. The defendant was, however, provided by statute with written notice and the right to hear and controvert the evidence against him and to offer evidence on his behalf with respect to the imposition of extended prison terms. *See* HRS § 706–664 (1993), *supra* note 5. The extrinsic enhancers were found by the court, *see id.*, and were subject to the "procedural standards ... applicable to ordinary sentencing," *see Huelsman*, 60 Haw. at 80, 588 P.2d at 400. In light of these provisions, we do not believe that the intrinsic/extrinsic distinction substantially impaired the criminal trial's truth-finding function, so as to raise serious questions about the accuracy of findings made by judges with respect to extrinsic enhancers. *See Williams*, 401 U.S. at 653, 91 S.Ct. 1148; *cf. Schriro v. Summerlin*, 542 U.S. 348, 356, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004) (concluding that the holding in *Ring*, 536 U.S. 584, 122 S.Ct. 2428, that the statutory aggravators were effectively elements for federal constitutional purposes and thus had to be submitted to the jury as the trier of fact and proved beyond a reasonable doubt, did not apply retroactively, because *Ring* did not announce one of the " 'watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding,' " such that the *Schriro* Court could not "confidently say that judicial factfinding seriously diminishes accuracy" (quoting *Saffle v. Parks*, 494 U.S. 484, 495, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)) (emphasis omitted)). Thus, the purpose of the "new rule" announced today is not to remediate an aspect of the criminal process that substantially impairs its truth-finding function. Consequently, the purpose of the new rule does not counsel that we should accord our decision retrospective effect.

Furthermore, the prosecution has long relied on the intrinsic/extrinsic distinction in charging defendants. In this case, for example, the prosecution's failure to allege extrinsic enhancers in its complaint against *Jess* fully comported with *Tafoya*, which coun-

---

**20.** In a HRAP 28(j) citation of supplemental authority, Jess refers us to *Danforth v. Minnesota*, —— U.S. ——, 128 S.Ct. 1029, 1032–33, 1042, 169 L.Ed.2d 859 (2008), in which the United States Supreme Court held that, when a federal court announces a new rule of criminal procedure, although the retroactive effect of that new rule is limited to those cases that are not yet final in the federal courts, *see Teague v. Lane*, 489 U.S. 288, 304–05, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), state courts are nonetheless free to give the new federal rule broader retroactive effect. We do not believe that either *Danforth* or *Teague* is particularly germane to our analysis regarding whether the new charging rule that we announce today should apply retroactively, because the rule is grounded not in the United States Constitution but, rather, in article I, sections 5 and 10 of the Hawai'i Constitution. *See supra* section III.A. Therefore, we are guided by our own independent state law jurisprudence in determining whether the rule applies retroactively. *See State v. Nakata*, 76 Hawai'i 360, 378, 878 P.2d 699, 717 (1994) (acknowledging that the doctrinal basis of this court's retroactivity jurisprudence, *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), has been overruled by the United States Supreme Court but, nevertheless, continuing to follow *Linkletter's* "more flexible test ... when determining whether to retroactively apply decisions of state law made by this court"); *see also Garcia*, 96 Hawai'i at 212, 29 P.3d at 931.

seled that such facts should *not* be included in the complaint, *see* 91 Hawaiʻi at 271, 982 P.2d at 900; *see also supra* section III.A.3.b. Obviously, the same holds true in countless other cases. *E.g., Maugaotega II*, 115 Hawaiʻi at 435 n. 3, 168 P.3d at 565 n. 3 (observing that the indictments against the defendant did not allege "that, if convicted, [the defendant] could be subject to extended sentencing as a multiple offender for whom extended terms of imprisonment were necessary for the protection of the public"). Accordingly, the extent of law enforcement's reliance on the intrinsic/extrinsic distinction counsels in favor of limiting our decision to purely prospective application. *See Fortin,* 843 A.2d at 1037 (concluding that the court's holding, which required that aggravating facts in capital cases be alleged in the indictment, was limited to purely prospective application, in light of the prosecution's reliance on the court's previous ruling that such facts did not have to be alleged).

Finally, the burden on the administration of justice would be significant if our "new rule" applied retrospectively, because our courts would be inundated with HRPP Rule 40 (2006)[21] petitions filed by defendants who were sentenced to extended terms from as long ago as 1978, *see Huelsman,* 60 Haw. 71, 588 P.2d 394, alleging that, because the extrinsic enhancers foundational to their extended term sentences were not alleged in their charging instrument, their extended sentences are therefore invalid. *See State v. Cummings,* 101 Hawaiʻi 139, 143, 63 P.3d 1109, 1113 (2003) (holding that, aside from technical errors, the omission of an essential element in the charging instrument is a defect that is not one of mere form but is instead one of substantive subject matter jurisdiction, which renders any subsequent trial, judgment of conviction, or sentence a nullity, and which is *per se* prejudicial); *Russell v. Blackwell,* 53 Haw. 274, 277–79, 492 P.2d 953, 956–57 (1972) (holding that a rule requiring the court to follow certain proce-

dures in accepting a defendant's guilty plea did not apply retroactively, because such application "would impose an awesome burden on the administration of justice," insofar as it would require that all guilty pleas that were previously accepted in a manner that did not comply with the new procedure be set aside).

In light of these considerations, we believe that the prosecution and the courts would be substantially prejudiced by the retrospective application of the new rule we announce today, and, therefore, we accord it purely prospective application. *See Garcia,* 96 Hawaiʻi at 211, 29 P.3d at 930 (" '[W]here substantial prejudice results from the retrospective application of new legal principles to a given set of facts, the inequity may be avoided by giving the guiding principles prospective application only.' " (Quoting *State v. Ikezawa,* 75 Haw. 210, 220–21, 857 P.2d 593, 598 (1993).)); *Tachibana v. State,* 79 Hawaiʻi 226, 238, 900 P.2d 1293, 1305 (1995) (holding that the new rule, which required that the court conduct a colloquy with a defendant to determine if the defendant is freely and voluntarily waiving his right to testify, only applied "prospectively to cases in which trial is not completed until after the date of [the] decision"); *Fortin,* 843 A.2d at 1037; *see also State v. Haanio,* 94 Hawaiʻi 405, 407, 16 P.3d 246, 248 (2001) (partially overruling *State v. Kupau,* 76 Hawaiʻi 387, 879 P.2d 492 (1994), and holding that, "in jury trials beginning after the filing date of this opinion, the trial courts shall instruct juries as to any included offenses having a rational basis in the evidence without regard to whether the prosecution requests, or the defense objects to, such an instruction"); *State v. Stanley,* 60 Haw. 527, 533, 592 P.2d 422, 426 (1979) (holding that the new rule, which required that "a family court order waiving jurisdiction must be appealed from prior to the commencement of the criminal trial on the offenses charged," would apply "only prospectively," in light of the "absence of clear direction in [this court's] previous cases regarding the proper

---

21. *See* HRPP Rule 40(a)(1) (2006) ("At any time but not prior to final judgment, any person may seek relief under the procedure set forth in this rule from the judgment of conviction, on the following grounds: (i) that the judgment was obtained or sentence imposed in violation of the constitution of the United States or of the State of Hawaiʻi; [or] (ii) that the court which rendered the judgment was without jurisdiction over the person or the subject matter . . . ." (Spacing altered.)).

time for challenging a waiver order"); *State v. Warner*, 58 Haw. 492, 501, 573 P.2d 959, 965 (1977) (holding that a new jury instruction rule was "for prospective application only"), *overruled on other grounds by State v. Sawyer*, 88 Hawai'i 325, 327, 966 P.2d 637, 639 (1998). Accordingly, all charging instruments filed after the date of this decision, in which the prosecution seeks enhanced sentencing, must include "allegations, which if proved, would result in the application of a statute enhancing the penalty of the crime committed." *Apao*, 59 Haw. at 636, 586 P.2d at 258 (footnote and emphasis omitted); *accord Estrada*, 69 Haw. at 230, 738 P.2d at 829.

■ Because the new rule that we announce today is purely prospective, it does not apply in this case. *See Garcia*, 96 Hawai'i at 208, 29 P.3d at 927. Therefore, the remaining question is whether the complaint against Jess is defective under the construction of the intrinsic/extrinsic dichotomy that was the prevailing law when Jess was charged on March 2, 2000.

Jess challenges Count I of the complaint, which charged him with first degree robbery as follows:

> On or about the 23rd day of February, 2000, in the City and County of Honolulu, State of Hawaii, BRIAN JESS, while in the course of committing a theft and while armed with a dangerous instrument, to wit, a knife, did threaten the imminent use of force against Canh Tran, a person who was present with the intent to compel acquiescence to the taking of or escaping with the property, thereby committing the offense of Robbery in the First Degree, in violation of [HRS § ]708–840(1)(b)(ii). . . .

Jess asserts that the prosecution omitted certain intrinsic facts from the complaint that the circuit court found in imposing an extended term prison sentence. That sentence was, however, vacated by the federal district court in the habeas proceeding. *See Jess II*, 2006 WL 1041737. Nevertheless, the prosecution filed a second motion for extended term sentencing on remand. Giving Jess the benefit of the doubt, we construe his argument as attacking the allegations set forth in the declaration of counsel filed in support of the second motion, to the extent that those allegations are identical to the findings that Jess references in his brief.[22]

In the declaration, the prosecution alleged in relevant part:

> 30. [Jess] is a "persistent offender" and a "multiple offender" whose commitment for an extended term is necessary for the protection of the public because of the following facts:
>
> . . . .
>
> d. [Jess] has failed to benefit from the criminal justice system.
>
> e. [Jess] has demonstrated a total disregard for the rights of others and a poor attitude toward the law.
>
> f. [Jess] has demonstrated a pattern of criminality which indicates that he is likely to be a recidivist in that he cannot conform his behavior to the requirements of the law.
>
> g. Due to the quantity and seriousness of [Jess]'s past convictions and the seriousness of the instant offenses, [Jess] poses a serious threat to the community and his long term incarceration is necessary for the protection of the public.

---

22. Jess takes issue with the circuit court's finding that his "behavior has escalated as evidenced by his possession and threat to use a knife during the commission of the instant robbery." Jess asserts that this is an intrinsic allegation that was required to be pled in the complaint. The prosecution did not, however, rely on this allegation in its second motion for extended term sentencing. Furthermore, even assuming that the prosecution did rely on Jess's possession of and threat to use a knife, we believe that the complaint, when read in a commonsensical fashion, sufficiently alleged that fact, because it asserted that Jess, "while in the course of committing a theft and while armed with a dangerous instrument, to wit, a knife, did threaten the imminent use of force against Canh Tran." *See Garringer v. State*, 80 Hawai'i 327, 330, 909 P.2d 1142, 1145 (1996) (explaining that the charging instrument " 'must be read in a common-sensical fashion in order to ascertain whether the material aggravating circumstance has been sufficiently alleged therein to support the imposition of enhanced sentencing' " (quoting Schroeder, 76 Hawai'i at 530, 880 P.2d at 205)).

(Formatting altered.) The allegations of paragraphs (d) through (g) were not " 'enmeshed in' " the underlying elements of Jess's first degree robbery and unauthorized control of a propelled vehicle convictions, *see Tafoya,* 91 Hawai'i at 270, 982 P.2d at 899 (quoting *Schroeder,* 76 Hawai'i at 528, 880 P.2d at 203); to the contrary, they spoke to whether Jess's commitment for an extended term is necessary for the protection of the public based upon Jess's behavior exhibited over time—a subject that this court had (until *Maugaotega II* ) held to be extrinsic to the charged offenses and therefore extraneous to the allegations necessary to the charging instrument, *see Rivera,* 106 Hawai'i at 152–54, 160, 102 P.3d at 1050–52, 1058 (holding that the circuit court properly found, as an extrinsic fact, that the defendant's "commitment for an extended term was necessary for the protection of the public"); *Tafoya,* 91 Hawai'i at .275 n. 19, 982 P.2d at 904 n. 19 ("The finding whether an extended term of imprisonment is necessary for the protection of the public, also necessary for imposition of an extended term of imprisonment pursuant to HRS § 706–662(5), is *not* a factual finding susceptible to jury determination." (Emphasis in original.)). Accordingly, Jess's argument is without merit.

 Jess next claims that his enhanced sentence was sought by the prosecution, and imposed by circuit court, in retaliation for Jess's exercise of his constitutional right to a jury trial. He asks us to adopt a rule imposing a presumption of vindictiveness on the part of the prosecution and the circuit court by analogizing to a number of United States Supreme Court decisions that mandate a presumption of prejudice and vindictiveness when a harsher sentence is imposed following appellate remand or a defendant's exercise of his right to a trial *de novo. See North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989); *Texas v. McCullough,* 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986); *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

The *Pearce* Court explained that ." '[d]ue process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial.' " *Smith,* 490 U.S. at 798, 109 S.Ct. 2201 (quoting *Pearce,* 395 U.S. at 725, 89 S.Ct. 2072); *see also McCullough,* 475 U.S. at 137–38, 106 S.Ct. 976. " 'In order to assure the absence of such a motivation,' " the *Pearce* Court held that, " 'whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for him doing so must affirmatively appear.' " *Smith,* 490 U.S. at 798, 109 S.Ct. 2201 (quoting *Pearce,* 395 U.S. at 726, 89 S.Ct. 2072). " 'Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose....' " *Id.* at 798–99, 109 S.Ct. 2201 (quoting *McCullough,* 475 U.S. at 142, 106 S.Ct. 976 (quoting *United States v. Goodwin,* 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982))). The United States Supreme Court adopted a similar rule in *Blackledge* "to guard against vindictiveness by the prosecutor at the postconviction stage," *Smith,* 490 U.S. at 800 n. 3, 109 S.Ct. 2201, where an inmate who, after being convicted of a misdemeanor charge of assault with a deadly weapon in state district court and exercising his statutory right to a trial *de novo* in the superior court, was charged in the superior court with felony assault with a deadly weapon. *Blackledge,* 417 U.S. at 22–23, 94 S.Ct. 2098.

Nevertheless, the United States Supreme Court has observed that, under the foregoing line of cases, "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule." *Goodwin,* 457 U.S. at 384, 102 S.Ct. 2485. " '[T]he Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." ' " *Smith,* 490 U.S. at 800 n. 3, 109 S.Ct. 2201 (quoting *Blackledge,* 417 U.S. at 27, 94 S.Ct. 2098); *see also id.* at 799, 109 S.Ct. 2201 (quoting *Goodwin,* 457 U.S. at 373, 102 S.Ct. 2485). The *Goodwin* Court held that "[t]he possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public

interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." 457 U.S. at 384, 102 S.Ct. 2485 (emphasis in original). We believe it is equally unlikely, as a universal matter, that a prosecutor would respond to a defendant's exercise of his right to a jury trial by filing a posttrial motion for extended term sentencing that was both contrary to the public interest and explainable only as an exercise in vindictiveness. We therefore decline to create a prophylactic presumption that the prosecution and the circuit court are retaliating against a defendant for exercising his right to a jury trial whenever the prosecution seeks, and the circuit court imposes, an extended term sentence.

B. *The Parties' Arguments Regarding Inherent Power And Ex Post Facto Issues*

1. *The prosecution*

The prosecution argues that empaneling a jury in the present matter would be a proper exercise of the circuit court's inherent power because the state has an interest in deterring crime and the legislature, by enacting the original extended term scheme, evinced its intent to protect the public from particularly dangerous individuals. (Citing, *inter alia,* Commentary to HRS §§ 706–661 and 706–662; *State v. Alvey,* 67 Haw. 49, 57, 678 P.2d 5, 10 (1984).) It asserts that concluding that the trier of fact may, under HRS § 706–662, be a jury rather than the sentencing judge comports with this court's precedent in *Tafoya,* 91 Hawai'i at 271, 982 P.2d at 900, and that this court has, in the past, concluded—despite the plain language of the statute assigning fact-finding responsibility to the court—that a circuit court possesses the inherent power to conduct a bifurcated trial in order to afford a jury the opportunity to find facts necessary for the imposition of an extended term sentence, citing *State v. Janto,* 92 Hawai'i 19, 34–35, 986 P.2d 306, 321–22 (1999). Indeed, the prosecution urges, this court went further in *Peralto* when it concluded that, upon remand, the trial court could empanel a new jury to make extended sentencing findings pursuant to new proce-

dural safeguards announced in *State v. Young,* 93 Hawai'i 224, 999 P.2d 230 (2000). (Citing *Peralto,* 95 Hawai'i at 7–8, 18 P.3d at 209–10.) Similarly, the prosecution maintains, the failure at Jess's first trial to assign to the jury the task of considering the necessity finding was a procedural error, correctable under *Peralto* by the trial court's empanelment of a new jury upon remand.

2. *Jess*

Jess argues that this court should not rewrite the plain language of HRS §§ 706–661 and 706–662 to construe "the court" to mean "the trier of fact" absent "compelling and conclusive justification" which, he contends, is absent in the present matter. He insists that consecutive term sentencing, available pursuant to HRS § 706–668.5 (1993), provides an adequate remedy for particularly dangerous defendants and is free from constitutional infirmities.

Jess also asserts that precedent weighs against assigning the prerogative of making the necessity finding to a jury. He notes that this court has concluded in the past that "extrinsic" facts—such as the necessity finding—must be found by the sentencing judge, not the jury, because extrinsic facts are not, by their nature, part of the elements of the charged offense and, hence, assigning their determination to the jury would contaminate a jury's proper focus. (Citing, *inter alia,* *White,* 110 Hawai'i at 84–85, 129 P.3d at 1112–13; *Maugaotega I,* 107 Hawai'i at 402, 114 P.3d at 908; *Kaua,* 102 Hawai'i at 12–13, 72 P.3d at 484–485; *Tafoya,* 91 Hawai'i at 271, 275 n. 19, 982 P.2d at 900, 904 n. 19.) He argues that rewriting the statute to assign the necessity finding to the jury (1) could "create due process and evidentiary problems for the defendant that only a considered and integrated legislative statutory overhaul may anticipate and solve" and (2) would conflict with the legislative intent expressed through Act 230, *see supra* notes 3 and 4, and the analysis of the Judicial Council upon which Act 230 was grounded—analysis that did not touch upon the jury solution at all. (Citing *Report of the Committee to Conduct a Comprehensive Review of the Hawai'i Penal Code* at 27l–27q (2005); 2006 Haw. Sess.

L. Act 230, *passim* at 1012–13.) Rather, he urges, this court should exercise restraint and await action by the legislature.

Finally, Jess asserts that this court cannot announce a judicial reformation of the extended sentencing laws and then apply that judicial decision to his case without violating his rights to due process and protections against *ex post facto* measures.[23] (Citing, *inter alia*, Haw. Const. art. I, §§ 5 and 14; *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964); *Hicks v. Oklahoma*, 447 U.S. 343, 346, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980); *United States v. Newman*, 203 F.3d 700 (9th Cir.2000); *United States v. Morehead*, 959 F.2d 1489, 1511–12 (10th Cir.1992); *Rubino v. Lynaugh*, 845 F.2d 1266, 1274 (5th Cir.1988).)

C. *The Circuit Court Possesses The Inherent Judicial Authority To Empanel A Jury For Consideration Of The Necessity Finding Pursuant To HRS §§ 706–661 (Supp.1999), 706–662 (Supp.1996), and 706–664 (1993) Without Offending The Right To Due Process Or The Separation Of Powers Doctrine.*

1. *Reform by the circuit court of HRS § 706–662 (Supp.1996) and immediate application of the reformed statute would not offend a defendant's right to due process.*

We begin as a threshold matter with Jess's last argument, to wit, that judicial reformation of HRS § 706–662 (Supp.1996) to allow jury consideration of the necessity finding at his resentencing hearing would violate his right to due process and prohibitions against

*ex post facto* measures. Jess's argument is meritless.

a. *Application of a judicially-reformed statute to a defendant is constrained by the requirements of due process, grounded in ex post facto concerns.*

██ The United States Supreme Court has made it clear that the constitutional prohibition against *ex post facto* measures applies only to legislative enactments. *Rogers v. Tennessee*, 532 U.S. 451, 456, 121 S.Ct. 1693, 149 L.Ed.2d 697 (2001) ("As the text of the Clause makes clear, it 'is a limitation upon the powers of the Legislature, and does not of its own force apply to the Judicial Branch of government.'" (Quoting *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977))). The *Rogers* Court, nonetheless, observed "that limitations on *ex post facto* judicial decisionmaking are inherent in the notion of due process," *id.* at 457, 121 S.Ct. 1693, citing *Bouie* as an instructive example. In *Bouie*, the Court held that a judicial interpretation of a criminal trespassing statute, when applied retroactively to the defendants—African-Americans wishing to patronize a department store restaurant—to expand criminal liability violated "'the basic principle that a criminal statute must give fair warning of the conduct that it makes a crime,'" *id.* (quoting *Bouie*, 378 U.S. at 350, 84 S.Ct. 1697). The *Rogers* Court made it equally clear, however, that, "[t]o the extent that [a] petitioner argues that the Due Process Clause incorporates the specific prohibitions of the *Ex Post Facto* Clause as identified in *Calder [v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798)[24]], [a] peti-

---

**23.** Article I, section 10 of the United States Constitution provides in relevant part that "[n]o State shall ... pass any ... ex post facto Law...." (Underscoring added.) This court has previously noted that the Hawai'i Constitution does not contain a similar section, *see State v. Guidry*, 105 Hawai'i 222, 239, 96 P.3d 242, 256 (2004) (noting that HRS § 1–3, which provides that legislation is presumed to have a prospective effect only, extends similar protection), although article III, section 1 of the Hawai'i Constitution would also arguably bar *ex post facto* measures by virtue of its limitation of "[t]he legislative power of the State ... to all rightful subjects of

legislation not inconsistent with ... the Constitution of the United States."

**24.** In *Calder*, the Court set forth four types of laws to which the *ex post facto* prohibition extends:

1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal

tioner misreads *Bouie.*" *Id.* at 458–59, 121 S.Ct. 1693 (characterizing any language implying that due process analysis must wholly incorporate *ex post facto* precedent as "dicta"). Rather, the *Rogers* Court clarified that the appropriate test for analyzing whether a newly announced judicial doctrine can apply to the instant defendant is grounded in "core due process concepts of notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of *attaching criminal penalties to what previously had been innocent conduct.*" *Id.* at 459, 121 S.Ct. 1693 (citing *Bouie*, 378 U.S. at 351, 352, 354–55, 84 S.Ct. 1697; *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); *Marks*, 430 U.S. at 191–92, 97 S.Ct. 990; *Rose v. Locke*, 423 U.S. 48, 53, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975); *Douglas v. Buder*, 412 U.S. 430, 432, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); *Rabe v. Washington*, 405 U.S. 313, 316, 92 S.Ct. 993, 31 L.Ed.2d 258 (1972)) (emphasis added). The *Rogers* Court refused to import *ex post facto* protections wholesale into judicial decision-making because (1) "[a] court's 'opportunity for discrimination ... is more limited than [a] legislature's, in that [it] can only act in construing laws in actual litigation,'" *id.* at 460–61, 121 S.Ct. 1693 (quoting *James v. United States*, 366 U.S. 213, 247 n. 3, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961) (Harlan, J., concurring in part and dissenting in part)) (some brackets added and some in original), and (2) "incorporation of the *Calder* categories[, *see supra* note 24,] into due process limitations on judicial decisionmaking would place an unworkable and unacceptable restraint on normal judicial processes and would be incompatible with the resolution of uncertainty that marks any evolving legal system," *id.* Instead, the *Rogers* Court concluded that judicial reformation of the law "violates the principle of fair warning, and hence must not be given retroactive effect, only where it is 'unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue,'" *id.* at 462, 121 S.Ct. 1693 (quoting *Bouie*, 378 U.S. at 354, 84 S.Ct.

1697), circumstances that would generate "unfair and arbitrary judicial action against which the Due Process Clause aims to protect," *id.* at 467, 121 S.Ct. 1693.

> b. *For a judicial decision to implicate due process concerns, the change wrought upon the defendant's interests must be substantive, as opposed to procedural, and detrimental, as opposed to remedial.*

In practice, when considering whether application of a judicial decision to a particular defendant is "unexpected and indefensible," *Bouie*, 378 U.S. at 354, 84 S.Ct. 1697, courts have focused on two intertwined distinctions: (1) whether the change wrought by the judicial decision is detrimental or remedial to the defendant's interests; and (2) whether the change is substantive or procedural in nature. Without question, substantive changes to the legal landscape that increase a defendant's criminal liability for acts committed prior to the judicial decision violate the right to due process of law. *See Bouie*, 378 U.S. at 350, 353–55, 84 S.Ct. 1697 ("[A]n unforeseeable judicial enlargement of a criminal statute, applied retroactively, operates precisely like an *ex post facto* law such as Art[icle] I, s[ection] 10, of the Constitution forbids," an action which "violate[s] the requirement of the Due Process Clause that a criminal statute give fair warning of the conduct which it prohibits"); *Rubino*, 845 F.2d at 1274 (relying on *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), to conclude that due process concerns are implicated in the context of judicial statutory reformation only when the judicial modification operates "to the detriment of a criminal defendant" and holding, after analyzing the judicial elimination of a Texas doctrine governing the manner in which crimes composed of overlapping elements were charged, that, "[i]f the ... doctrine would have barred [the defendant]'s second prosecution and conviction, the State deprived him of due process in affirming his conviction in reliance on

---

rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offense, in order to convict the offender.

3 U.S. at 390–91, *quoted in Rogers*, 532 U.S. at 455, 121 S.Ct. 1693.

the abandonment of a protective rule in force at the time of his offenses").

■ On the other hand, procedural changes, *i.e.*, those that alter the process by which guilt is adjudicated or sentence imposed, without modifying the degree of criminal liability or the length of the sentence imposed, do not implicate due process concerns. *See, e.g., Collins v. Youngblood*, 497 U.S. 37, 45, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990) (defining procedural changes as "changes in the procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes" and further defining matters of substance as those that "depriv[e] a defendant of 'substantial protections with which the existing law surrounds the person accused of crime' or arbitrarily infring[e] upon 'substantial personal rights'") (quoting *Malloy v. South Carolina*, 237 U.S. 180, 183, 35 S.Ct. 507, 59 L.Ed. 905 (1915); *Duncan v. Missouri*, 152 U.S. 377, 382–83, 14 S.Ct. 570, 38 L.Ed. 485 (1894)).

*Hankerson v. State*, 723 N.W.2d 232 (Minn.2006), is an apt illustration of the foregoing principle. In *Hankerson*, the Minnesota Supreme Court—albeit in the context of analyzing whether *ex post facto* principles were violated by retroactive application of a *legislative* reform of the state's extended sentencing statutes instigated by *Apprendi*, 530 U.S. 466, 120 S.Ct. 2348, and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)—relied on *Collins*, 497 U.S. at 51, 110 S.Ct. 2715 and *Dobbert v. Florida*, 432 U.S. 282, 287–88, 292–94, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), to conclude that "a change affecting the identity of the fact finder is procedural and thus is not burdened by ex post facto restrictions." *Hankerson*, 723 N.W.2d at 242 (underscoring added). The court distinguished substantive from procedural changes by concisely defining procedural modifications as those that "d[o] not add aggravating factors, eliminate elements of aggravating factors, or increase the duration of the sentence authorized by a finding of aggravating factors." *Id.*

■ Equally clear is the proposition that, if a judicial reformation of a statute works to the defendant's *advantage*, due process is not offended. *See Morehead*, 959 F.2d at 1511–12 (noting that United States Supreme Court and Tenth Circuit precedent distinguished allowable retroactive application where judicially-wrought changes *expanded* the rights of criminal defendants (citing *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)) from judicial decision-making that *constricted* the rights of criminal defendants, which, to be applied retroactively, had to pass additional due process muster as articulated in *Bouie* (citing *Marks*, 430 U.S. 188, 97 S.Ct. 990; *Bouie*, 378 U.S. 347, 84 S.Ct. 1697)); *State v. Sandoval*, 41 Cal.4th 825, 62 Cal.Rptr.3d 588, 161 P.3d 1146, 1167 (2007) (noting that federal courts have unanimously concluded that the "remedial interpretation" of federal sentencing guidelines in *Booker*, 543 U.S. at 268, 125 S.Ct. 738, instigated by the requirements of *Apprendi*, comports with due process).

 c. *The circuit court would not offend the right to due process by reforming HRS § 706–662 (Supp.1996) so as to allow for jury consideration of the necessity finding and applying that reformation to the case at hand.*

■ In the present matter, invocation of a court's inherent power "to provide process where none exists," *Moriwake*, 65 Haw. at 55, 647 P.2d at 711–12, by reforming HRS § 706–662 (Supp.1996) to allow for jury fact-finding would not violate Jess's right to due process of law. Assigning the fact-finding role to the jury would be a procedural, as opposed to a substantive, change that would not expand the scope of criminal liability, increase punishment, or alter any evidentiary burdens to Jess's detriment, *see Rubino*, 845 F.2d at 1274, but, rather, would "simply chang[e] the course to a result," *id.* *See Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 2549, 2553, 165 L.Ed.2d 466 (2006) (wherein the United States Supreme Court ruled that *Apprendi* errors were procedural and subject to harmless error analysis) (abrogating *State v. Hughes*, 154 Wash.2d 118, 110 P.3d 192, 196 (2005) (holding that an error under *Blakely*, 542 U.S. 296, 124 S.Ct. 2531, was structural and could

never be harmless)); *Collins*, 497 U.S. at 51, 110 S.Ct. 2715 ("The right to jury trial provided by the Sixth Amendment is obviously a 'substantial' one, but it is not a right that has anything to do with the definition of crimes, defenses, or punishments, which is the concern of the *Ex Post Facto* Clause."); *Jess II*, 2006 WL 1041737, at *4 (applying harmless error analysis to Jess's habeas petition); *Hankerson*, 723 N.W.2d at 242 (construing *Collins*, 497 U.S. at 51, 110 S.Ct. 2715, and *Dobbert*, 432 U.S. at 287–88, 292–94, 97 S.Ct. 2290, to "make clear that a change affecting the identity of the fact[-]finder is procedural").

Moreover, the judicial reformation of the statute to allow for the empanelment of a jury, by being more protective of Jess's constitutional right to a jury, would work to his advantage and not to his detriment. *See Hankerson*, 723 N.W.2d at 241–43 (the amendments to Minnesota's sentencing scheme, by requiring a higher quantum of proof upon resentencing, "vindicate, not violate, Hankerson's constitutional rights").

> 2. *In light of recent legislative action, the circuit court would not offend the separation of powers doctrine by invoking its inherent judicial authority to empanel a jury to consider the necessity finding under HRS § 706–662 (Supp.1996).*

In *Maugaotega II*, this court held that HRS § 706–662 (Supp.1996) was, in light of *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), unconstitutional on its face, insofar as every subsection "authorize[d] the sentencing court to extend a defendant's sentence beyond the 'standard term' authorized solely by the jury's verdict ... by requiring the sentencing court, rather than the trier of fact, to make an additional necessity finding that ... does not fall under *Apprendi's* prior-or-concurrent-convictions exception...." *Maugaotega II*, 115 Hawai'i at 446, 168 P.3d at 576 (footnote omitted).

We recognized that our courts possess the inherent authority to reform the law to preserve its constitutionality by ordering the empanelment of juries to consider the factual findings requisite to the imposition of an extended term sentence pursuant to HRS §§ 706–661 and 706–662 as they existed at the time. *Maugaotega II*, 115 Hawai'i at 448–49, 168 P.3d at 578–79 (citing, *inter alia, Peralto*, 95 Hawai'i at 6, 18 P.3d at 208; *Aragon v. Wilkinson ex rel. County of Maricopa*, 209 Ariz. 61, 97 P.3d 886, 891 (Ct.App. 2004); *Galindez v. State*, 955 So.2d 517, 527 (Fla.2007); *State v. Schofield*, 895 A.2d 927, 937 (Me.2005)); *see also Maugaotega II*, 115 Hawai'i at 458, 168 P.3d at 588 (Acoba, J., concurring and dissenting, joined by Duffy, J.). Nevertheless, in light of the legislature's expressed intent in Act 230 of the 2006 legislative session, *see supra* notes 3 and 4, and the legislature's then-current failure to reach agreement on the creation of a jury-based system,[25] we concluded that it would

> not ... be appropriate for this court to assert its inherent authority to empanel a jury on remand because, as a rule,
>
> > [p]rudential rules of judicial self-governance properly limit the role of the courts in a democratic society. *Cf. Trustees of OHA v. Yamasaki*, 69 Haw. 154, 171, 737 P.2d 446, 456 (1987); *Life of the Land v. Land Use Commission*, 63 Haw. 166, 172, 623 P.2d 431, 438 (1981) (citing *Warth v. Seldin*, 422 U.S. 490, 498[, 95 S.Ct. 2197, 45 L.Ed.2d 343] ... (1975)).... [One] such rule is that, "even in the absence of constitutional restrictions, [courts] must still carefully weigh the wisdom, efficacy, and timeliness of an exercise of their power before acting, *especially where there may be an intrusion into areas committed to other branches of government.*" *Id.* (emphasis added) (citation omitted)....
>
> > ... Although judicial review serves as a check on the unconstitutional exercise

---

**25.** As noted in *Maugaotega II*, 115 Hawai'i at 450 n. 20, 168 P.3d at 580 n. 20, House Bill No. 1152 was introduced on January 24, 2007 and sought to amend HRS §§ 706–662 and 706–664 to assign to the jury the fact-finding role with respect to extended term sentences. *See* H.B. No. 1152,

24th Leg., Reg. Sess. (2007), *available at* http://capitol.hawaii.gov/session2007/bills/HB1152_SD 2_.htm. The Senate and the House of Representatives were unable to reach agreement on a final draft of the bill, however, and the measure was put over.

of power by the executive and legislative branches of government, "the only check upon [the judicial branch's] exercise of power is [its] own sense of self-restraint." *U.S. v. Butler,* 297 U.S. 1, 78–79[, 56 S.Ct. 312, 80 L.Ed. 477] . . . (1936) (Stone, J., dissenting).

*In re Attorney's Fees of Mohr,* 97 Hawai'i 1, 9–10, 32 P.3d 647, 655–56 (2001) (some brackets added and some in original) (some ellipses added and some in original) (emphasis in original). *See also Ross v. Stouffer Hotel Co.,* 76 Hawai'i 454, 467, 879 P.2d 1037, 1050 (1994) (Klein, J., concurring and dissenting) (" '[T]he [c]ourt's function in the application and interpretation of . . . laws must be carefully limited to avoid encroaching on the power of [the legislature] to determine policies and make laws to carry them out.' ") (quoting *Boys Markets, Inc. v. Retail Clerks Union, Local 770,* 398 U.S. 235, 256–57[, 90 S.Ct. 1583, 26 L.Ed.2d 199] (1970) (Black, J., dissenting)); *Bremner v. City & County of Honolulu,* 96 Hawai'i 134, 139, 28 P.3d 350, 355 (App.2001) (quoting *Life of the Land,* 63 Haw. at 171–72, 623 P.2d at 438).

*Maugaotega II,* 115 Hawai'i at 450, 168 P.3d at 580 (some ellipses added and some in original).

██ Although *Maugaotega II* focused on the inherent power of *this* court to order, on remand, the empanelment of a jury to consider the requisite findings, such inherent judicial authority resides equally in a circuit court, be it in an original proceeding or in a sentencing proceeding on remand. *See* HRS § 603–21.9 (1993);[26] *Richardson v. Sport Shinko (Waikiki Corp.),* 76 Hawai'i 494, 507, 880 P.2d 169, 182 (1994) ("[C]ourts have inherent equity, supervisory, and administrative powers as well as inherent power to control the litigation process before them[,] . . . powers . . . derived from the state Constitution and . . . not confined by or dependent on statute," and "[a]mong courts' inherent powers are the powers to 'create a remedy for a wrong even in the

absence of specific statutory remedies' " and the "inherent power to . . . promote a fair process." (Quoting *Peat, Marwick, Mitchell v. Superior Court,* 200 Cal.App.3d 272, 245 Cal.Rptr. 873, 883 (1988) (citing, *inter alia, Moriwake,* 65 Haw. at 55, 647 P.2d at 711–12).) (Citing *State v. Alvey,* 67 Haw. 49, 57, 678 P.2d 5, 10 (1984) (noting that a trial court, in invoking its inherent powers, must " 'balanc[e] the interests of the [s]tate against fundamental fairness to a defendant with the added ingredient of the orderly functioning of the court system' " (quoting *Moriwake,* 65 Haw. at 56, 647 P.2d at 712).))); *Moriwake,* 65 Haw. at 55, 647 P.2d at 711–12 (defining the inherent power of all courts, including the trial court, as "the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; . . . and the power to provide process where none exists"), *quoted in Farmer v. Admin. Dir. of the Court,* 94 Hawai'i 232, 241, 11 P.3d 457, 466 (2000).

This court has concluded that the extended term sentencing scheme "should be construed in harmony with the requirements of due process," *State v. Kamae,* 56 Haw. 628, 635, 548 P.2d 632, 637 (1976) (speaking specifically of HRS § 706–664 but addressing as a whole the due process requirements of the extended sentencing scheme), which includes the need, in light of *Cunningham,* to address shortcomings in the fact-finding structure of HRS § 706–662. Moreover, the matter of extended term sentencing is of sufficient public concern to justify invocation of a circuit court's inherent power to reform the statute so as to preserve its constitutionality *provided* that, by invoking that authority, the circuit court could "conclude with confidence that (i) it [was] possible to [do so] in a manner that closely effectuate[d] policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred such a reformed version of the statute to invalidation of the statute." *San-*

---

26. HRS § 603–21.9 provides in relevant part:
 The several circuit courts shall have power:
 . . . .
 (6) To make . . . such . . . orders, . . . issue such executions and other processes, and do

such other acts and take such other steps as may be necessary to carry into full effect the powers which are or shall be given to them by law or for the promotion of justice in matters pending before them.

*doval*, 62 Cal.Rptr.3d 588, 161 P.3d at 1159 (some brackets added and some in original). And, as noted in *Maugaotega II*, jury consideration of the necessity finding could be structured so as to avoid "contamination" of the impartiality of the jury by postponing introduction of evidence pertaining to extended term sentencing until after the guilt phase of the trial has concluded. 115 Hawai'i at 449–50 n. 19, 168 P.3d at 579–80 n. 19 (citing *Janto*, 92 Hawai'i at 34–35, 986 P.2d at 321–22). Nor is a properly timed determination of the necessity finding any less suited to a jury than the finding that a murder was carried out in a manner "especially heinous, atrocious, or cruel," as required by HRS § 706–657 and assigned to the jury in *Peralto*, 95 Hawai'i at 7, 18 P.3d at 209, and *Janto*, 92 Hawai'i at 33, 986 P.2d at 320. The United States District Court for the District of Hawai'i, in fact, implicitly concluded that the necessity finding was suitable for jury determination. *See Jess II*, 2006 WL 1041737, at *6 (in articulating its harmless error analysis comparing the likelihood that jury and judge findings would agree on the necessity finding in any given case).

To be sure, the circuit court, in exercising its discretion to invoke its inherent authority "to provide process where none exists," *Moriwake*, 65 Haw. at 55, 647 P.2d at 712, must be similarly aware of the necessity of tempering the exercise of that power in light of the expressed intent of the legislature on the subject under consideration. *See Maugaotega II*, 115 Hawai'i at 450, 168 P.3d at 580 (citing, *inter alia*, *Mohr*, 97 Hawai'i at 9–10, 32 P.3d at 655–56, for the proposition that " 'the only check upon [the judicial branch's] exercise of power is [its] own sense of self restraint' " (quoting *Butler*, 297 U.S. at 78–79, 56 S.Ct. 312)). The Wisconsin Supreme Court, in *Barland v. Eau Claire County*, 216 Wis.2d 560, 575 N.W.2d 691 (1998), in describing the separation of powers amongst the three branches of government, noted that " '[t]he separation of powers doctrine states the principle of shared, rather than completely separated powers,' " which " 'envisions a government of separate branches sharing certain powers.' " *Id.* at 696 (quoting *State v. Holmes*, 106 Wis.2d 31, 315 N.W.2d 703, 709 (1982)). The *Barland* court concluded

that, " '[i]n these areas of "shared power," one branch of government may exercise power conferred on another only to an extent that does not unduly burden or substantially interfere with the other branch's exercise of its power.' " *Id.* (quoting *In re Complaint Against Grady*, 118 Wis.2d 762, 348 N.W.2d 559, 566 (1984)). Similarly, the highest court in Maryland, in *Wynn v. State*, 388 Md. 423, 879 A.2d 1097 (2005), recently commented that "[c]ourts across the country ... have maintained that inherent authority should be recognized and yet employed rarely," *id.* at 1104, noting that "the need for a narrow application of inherent authority is greater when the power claimed as deriving from inherent authority overlaps and conflicts with a power of the legislative or executive branch," *id.* at 1105. Therefore, " '[i]n exercising its power to do what is reasonably necessary for the proper administration of justice ... [,] a court must proceed with a cautious and cooperative spirit into those areas where its constitutional powers overlap with those of other branches.' " *Id.* (quoting *In re Alamance County Court Facilities*, 329 N.C. 84, 405 S.E.2d 125, 133 (1991)). Concerns such as these led us, in *Maugaotega II*, to decline to exercise this court's inherent authority to empanel a jury, in light of, at that time, the most recent and most explicit expressions of legislative intent pertaining to the wisdom of a jury-based necessity finding. 115 Hawai'i at 449–50, 168 P.3d at 579–80.

There has, however, been a recent sea-change in the legislature's clearly expressed intent regarding the wisdom of employing juries in the context of extended term sentencing. The enactment of H.B. No. 2, *see supra* notes 3–6, during the recent special session provides this court with a fresh, conclusive expression of legislative support for the use of juries as the trier of fact with respect to extended term sentencing fact-finding and allows us to "conclude with confidence," *Sandoval*, 62 Cal.Rptr.3d 588, 161 P.3d at 1159, that empaneling a jury would "closely effectuate[ ] policy judgments clearly articulated by the [legislature]," *id.*, and that the legislature "would ... prefer[ ] such a reformed version of the statute to invalida-

tion of the statute," *id.*;[27] *see also State v. Cutsinger*, No. 28203, 118 Hawai'i at 69, 75, 185 P.3d at 817, 823, 2008 WL 257175, at *1, *14 (Haw.Ct.App. Jan. 30, 2008) ("The Legislature's enactment of Act 1 ... eliminates any doubt about the Legislature's intent with respect to extended term sentencing. The Legislature has plainly expressed its desire for a sentencing scheme in which extended terms of imprisonment may continue to be imposed."). In light of the recent legislation, invocation of the court's inherent authority in the instant matter would " 'not unduly burden or substantially interfere with the other branch's exercise of its power.' " *Barland*, 575 N.W.2d at 696 (quoting *Grady*, 348 N.W.2d at 566).

D. *The Circuit Court May, With Respect To A Properly Charged Defendant, Empanel A Jury For Determination Of The Necessary Findings Pursuant To The Newly Amended Versions Of HRS §§ 706–661, 706–662, and 706–664.*

1. *The plain language of the amended statute allows for retroactive application upon resentencing.*

■■■ In the interests of judicial economy, we construe Jess's constitutional arguments broadly to include the question whether the prohibition against *ex post facto* measures prevents the circuit court from applying Act 1 of the 2007 Second Special Session, *see supra* notes 3–6, to his resentencing. The measure provides in relevant part that "[t]his Act shall apply to all sentencing or resentencing proceedings pending on or commenced after the effective date of this Act, whether the offense was committed prior to, on, or after the effective date of this Act." *See supra* note 6. It specifically addresses

defendants in Jess's position by providing that "[a] defendant whose extended term of imprisonment is set aside or invalidated shall be resentenced pursuant to this Act upon request of the prosecutor." *Id.*

2. *Application of Act 1 to Jess's case would not violate the constitutional prohibition against ex post facto measures.*

■■■ *Ex post facto* protections are not implicated unless, without notice, they effect a substantive change to the defendant's interests that operates to his or her detriment. *See Cutsinger*, 118 Hawai'i at 72, 185 P.3d at 820, 2008 WL 257175, at *8 ("Under the Supreme Court's test for determining whether a criminal law falls within the *ex post facto* prohibition, two critical elements must be present: 'first, the law must be retrospective, that is, it must apply to events occurring before its enactment; and second, it must disadvantage the offender affected by it.' " (Quoting *Miller*, 482 U.S. at 430, 107 S.Ct. 2446.)); *Landgraf v. USI Film Prods.*, 511 U.S. 244, 269–70, 275 n. 28, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (noting that "[w]hile we have strictly construed the *Ex Post Facto* Clause to prohibit application of new statutes creating or increasing punishments after the fact, we have upheld intervening procedural changes even if application of the new rule operated to a defendant's disadvantage in the particular case," and concluding that "[a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based on prior law[; r]ather the court must ask whether the new provision attaches new legal consequences to events completed before its enactment"); *Sandoval*, 62 Cal.Rptr.3d 588, 161

---

27. The dissent argues that, "[b]y answering the [r]eserved [q]uestion in the affirmative, and allowing for the application of [Hawaii's extended term sentencing] statute, [HRS § 706–662 (Supp. 1996),] the majority violates precedent," namely *Maugaotega II*. Dissenting opinion at 13. The dissent overlooks the obvious, namely, that the legislature enacted Act 1 *after* we decided *Maugaotega II*. As we have said, our decision in *Maugaotega II* was guided by the latest expression of legislative intent, specifically Act 230, which vested the power to make the necessity

finding not with the jury, but with the court. *See* 115 Hawai'i at 449–50, 168 P.3d at 579–80. Act 1 provides the evidence of conclusive legislative support for the circuit court to empanel a jury pursuant to its inherent authority that was previously lacking, directing that the jury, and not the sentencing court, make the necessity finding. *See supra* notes 4–5. Accordingly, our conclusion that the circuit court may empanel a jury to make the necessity finding under HRS § 706–662 is consistent with principles of *stare decisis*.

P.3d at 1159 ("A retroactive law does not violate the ex post facto clause if it does not alter 'substantial personal rights' but merely changes 'modes of procedure which do not affect matters of substance.'" (Quoting *Miller*, 482 U.S. at 430, 107 S.Ct. 2446.) (Underscoring added.)); *Hankerson*, 723 N.W.2d at 241–42 (concluding (1) that, in order "'[t]o fall within the *ex post facto* prohibition, a law must be [a] retrospective—that is, "it must apply to events occurring before its enactment"—and [b] it "must disadvantage the offender affected by it"'" (quoting *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981))), (2) that *Apprendi*-mandated amendments introducing jury fact-finding "are not prohibited as *ex post facto* laws because they do not work to [the defendant]'s disadvantage" but, rather, "vindicate, not violate, [her] constitutional rights," and (3) that "a change affecting the identity of the fact[-]finder is procedural and thus is not burdened by *ex post facto* restrictions"); *State v. Upton*, 339 Or. 673, 125 P.3d 713, 719–20 (2005) (analyzing Oregon's reformed extended term sentencing statute, instigated in response to *Apprendi* and *Blakely*, wherein the fact-finding function was assigned to the jury and concluding: (1) that assigning facts to the jury "changes only the method for determining the available punishment; it does not ... increase that punishment"; (2) that, to the extent that the new jury fact-finding responsibilities "change[ ] the quantum of proof required under the sentencing guidelines, it inures to the defendant's *advantage* to require the state to prove any enhancing factors beyond a reasonable doubt," a procedural change which "does not prejudice defendant; indeed, it vindicates his constitutional rights"; and (3) that the prohibition against *ex post facto* measures was not, therefore, violated because "[f]or a statute to violate state or federal *ex post facto* clauses, the statute must at least effect some kind of disadvantageous change upon the defendant" (emphasis added) (citing *State v. MacNab*, 334 Or. 469, 51 P.3d 1249, 1252 (2002))); *Washington v. Pillatos*, 159 Wash.2d 459, 150 P.3d 1130, 1135, 1137–38 (2007) (reasoning that "if the changes to the statute do not alter the consequences of the crime[,] then there is likely no relevant lack of notice" and concluding that retroactive application of amendments to Washington's penal code driven by *Blakely* did not violate *ex post facto* prohibitions because "the[ ] defendants had warning of the risk of an exceptional sentence" and "at the time ... the[ ] defendants committed the crimes ..., [the state] had a seemingly valid exceptional sentencing system which gave fair notice of the risk of receiving such a sentence").

As noted *supra* in section III.C.1.c, the United States Supreme Court, in *Recuenco*, ruled that *Apprendi* errors are procedural in nature, 126 S.Ct. at 2553; *see also Cutsinger*, 118 Hawaiʻi at 72, 185 P.3d at 820, 2008 WL 257175, at *8 ("The pivotal change made by Act 1—providing the defendant with the right to have a jury determine the facts necessary to impose an extended term—is a procedural change to Hawaiʻi's extended term sentencing statutes. It therefore falls within the procedural-change exception to the *ex post facto* prohibition."). Moreover, prescribing a jury as the trier of fact during the extended term sentencing phase, pursuant to Act 1, is remedial in nature and "does not prejudice [the] defendant; indeed it vindicates his constitutional rights," *Upton*, 125 P.3d at 719; *see also Cutsinger*, 118 Hawaiʻi at 72, 185 P.3d at 820, 2008 WL 257175, at *8 ("Act 1 provides [the defendant] with additional benefits not contained in the prior law. Act 1 gives [the defendant] the right and option to have a jury (instead of only the sentencing court) determine the facts necessary to impose an extended term of imprisonment. It also requires that such facts be proven beyond a reasonable doubt." (Citation and footnote omitted.)). Applying the *Calder* test, *see supra* note 24, it is clear that the new jury provisions do not (1) increase criminal liability for conduct previously innocent, (2) aggravate the degree of Jess's crimes, (3) increase the punishment available at the time Jess committed his crimes, or (4) alter evidentiary standards to Jess's detriment. *See Calder*, 3 U.S. at 390–91, *quoted in Rogers*, 532 U.S. at 455, 121 S.Ct. 1693; *see also Cutsinger*, 118 Hawaiʻi at 72, 185 P.3d at 820, 2008 WL 257175, at *8 (concluding that "the retroactive application of Act 1

does not disadvantage [the defendant] because it does not subject him to 'increase[d] punishment beyond what was prescribed' when his burglary offense was committed" (quoting *Miller*, 482 U.S. at 430, 107 S.Ct. 2446) (brackets in original)).

We therefore hold that the constitutional prohibition against *ex post facto* measures is not offended by the plain language of the new law. *See Cutsinger*, 118 Hawai'i at 72, 185 P.3d at 820, 2008 WL 257175, at *8 (holding that "Act 1's retroactive application to [the defendant] does not violate the *Ex Post Facto* Clause of Article I, § 10").[28]

### IV. CONCLUSION

For the foregoing reasons, we remand this matter to the circuit court for further proceedings consistent with this opinion.

**Concurring and Dissenting Opinion by NAKAYAMA, J.**

While I agree with the majority that the circuit court may empanel a jury for consideration of the necessity finding, and that the constitutional prohibition against *ex post facto* measures is not violated by Act 1, I write separately to point out that the issue of whether certain allegations must be pled in the indictment was not raised by the parties to this case. Indeed, the defendant does not allege that a lack of certain allegations in the complaint deprived him of his constitutional right to due process. I therefore would decline to address this issue.

Nonetheless, assuming that this issue had been raised by the parties, I respectfully disagree with the majority's conclusion that "a charging instrument, be it an indictment, complaint, or information, must include all 'allegations, which if proved, would result in the application of a statute enhancing the penalty of the crime committed.'" Majority opinion at 398, 184 P.3d at 150 (quoting *State*

*v. Apao*, 59 Haw. 625, 636, 586 P.2d 250, 258 (1978)). In my view, *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and this court's jurisprudence do not require that aggravating factors, as set forth in HRS §§ 706–661 and 706–662, need to be pled in a charging instrument to satisfy due process concerns.

### I. DISCUSSION

**A. *Almendarez–Torres* and Its Clarification In *Jones, Apprendi,* and *Cunningham*.**

#### 1. *Almendarez–Torres*

In *Almendarez–Torres v. United States*, 523 U.S. 224, 227, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), an indictment was returned by the federal grand jury that charged the defendant "with having been 'found in the United States after being deported' without the 'permission and consent of the Attorney General' in 'violation of Section 1326.'" (Ellipses omitted.) The defendant pled guilty to the charge and admitted, *inter alia*, "that the earlier deportation had taken place pursuant to three earlier convictions for aggravated felonies." *Id.* (quotation marks and citation omitted). At the sentencing hearing, the defendant asserted that because the indictment failed to mention his prior convictions, the indictment did not set forth all elements of a crime. *Id.* Consequently, he alleged that he could not be sentenced to more than two years of imprisonment. *Id.* The two year imprisonment term was the maximum authorized by federal statute for an offender without a prior conviction. *Id.* The trial court rejected the defendant's argument and instead imposed a sentence of eighty-five months imprisonment, which was affirmed on appeal to the Fifth Circuit.[1] *Id.*

---

**28.** Although the dissent asserts that Act 1 should not be construed or applied with respect to Jess, *see* dissenting opinion at 419–20, 422–30, 184 P.3d at 171–72, 174–82 it does not take issue with the actual substance of our due process or *ex post facto* analysis.

**1.** I note that on appeal to the Fifth Circuit Court of Appeals, the court affirmed the trial court's

decision because 8 U.S.C. § 1326(b)(2) "is a penalty provision that simply permits a sentencing judge to impose a higher sentence when the unlawfully returning alien also has a record of prior convictions." *Almendarez–Torres*, 523 U.S. at 227, 118 S.Ct. 1219. However, the Supreme

On appeal to the Supreme Court, the Court said that "[a]n indictment must set forth each element of the crime that it charges." *Id.* at 228, 118 S.Ct. 1219. However, the Court pointed out that an indictment "need not set forth factors relevant only to the sentencing of an offender found guilty of the charged crime." *Id.* "Within limits," the Supreme Court said, "the question of which factors are which is normally a matter for Congress." *Id.* Accordingly, the Court framed the issue as whether Congress intended "the factor that the statute mentions, the prior aggravated felony conviction, to help define a separate crime? Or did it intend the presence of an earlier conviction as a sentencing factor, a factor that a sentencing court might use to increase punishment?" *Id.*

Emphasizing in that particular case that the "relevant statutory subject matter is recidivism[,]" *id.* at 230, 118 S.Ct. 1219, the Supreme Court observed that "the sentencing factor at issue here-recidivism-is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." *Id.* at 243, 118 S.Ct. 1219.

> Consistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was "necessary to bring the case within the statute." *Graham v. West Virginia,* 224 U.S. 616, 624, 32 S.Ct. 583, 585–86, 56 L.Ed. 917 (1912). That conclusion followed, the Court said, from "*the distinct nature of the issue,*" and the fact that recidivism "does not relate to the commission of the offense, *but goes to the punishment only,* and therefore may be subsequently decided." *Id.* at 629, 32 S.Ct. at 588 (emphasis added).

*Almendarez–Torres,* 523 U.S. at 243–44, 118 S.Ct. 1219 (emphases in original) (ellipsis omitted); *see Graham,* 224 U.S. at 628, 32 S.Ct. 583 ("An indictment is confined to the question whether an offense has been committed. Here the question was simply

whether the party had been convicted of an offense."). "[T]o hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'going to the punishment only.' " *Id.* at 244, 118 S.Ct. 1219 (quoting *Graham,* 224 U.S. at 629, 32 S.Ct. 583). Accordingly, the Supreme Court affirmed the Fifth Circuit's judgement when it rejected the defendant's "constitutional claim that his recidivism must be treated as an element of his offense." *Id.* at 247–48, 118 S.Ct. 1219. *Almendarez–Torres* has not since been overruled by the Supreme Court, but its holding has been clarified.

2. *The Supreme Court's clarification of Almendarez–Torres in Jones, Apprendi, and Cunningham.*

One year later, in *Jones v. United States,* 526 U.S. 227, 248, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court clarified its holding in *Almendarez–Torres,* as follows: "[*Almendarez–Torres* ], decided last Term, stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged." In this regard, *Almendarez–Torres* "stressed the history of treating recidivism as a sentencing factor, and noted that, with perhaps one exception, Congress had never clearly made prior conviction an offense element where the offense conduct, in the absence of recidivism, was independently unlawful." *Id.* at 235, 118 S.Ct. 1219.

The Court then distinguished *Jones* from *Almendarez–Torres* by observing that (1) *Jones* was "concerned with the Sixth Amendment right to jury trial and not alone the rights to indictment and notice as claimed by" the defendant in *Almendarez–Torres,* and (2) *Almendarez–Torres* "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment." *Jones,* 526 U.S. at 248–49, 119 S.Ct. 1215; *see id.* at 232, 119 S.Ct. 1215 ("Because of

---

Court noted a split among the circuits inasmuch as seven other circuits likewise held accordingly with the Fifth Circuit, while the Ninth Circuit

held that subsection (b)(2) constituted a separate crime. *Id.* at 227–28, 118 S.Ct. 1219.

features arguably distinguishing this case from [*Almendarez–Torres*], we granted certiorari, ... and now reverse.").

One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying fair notice, reasonable doubt, and jury trial guarantees.

*Id.* at 249, 118 S.Ct. 1219.

A little over a year after *Jones* was decided, the Court in *Apprendi* expressly declined to address the issue of whether the indictment in that case was sufficient pursuant to its decision in *Almendarez–Torres*, inasmuch as the Fifth Amendment right to "presentment or indictment of a Grand Jury" was not implicated by the issues raised by the parties in *Apprendi*. *See Apprendi*, 530 U.S. at 477 n. 3, 120 S.Ct. 2348;[2] *but see id.* at 489 n. 15, 120 S.Ct. 2348 ("The indictment must contain an allegation of every fact which is legally essential to the punishment to be inflicted."). In *Cunningham*, the Supreme Court referred to its *Almendarez–Torres* decision in passing when it recited its holding in *Apprendi*. *See Cunningham*, 549 U.S. at ——, 127 S.Ct. at 864. Similar to *Apprendi*, however, *Cunningham* likewise implicated the federal constitution's "jury-trial guarantee," 549 U.S. at ——, 127 S.Ct. at 860, and not the Fifth Amendment's "presentment or indictment of a Grand Jury." *See Apprendi*, 530 U.S. at 477 n. 3, 120 S.Ct. 2348.

### 3. Federal case law applying Almendarez–Torres post-Apprendi

In *United States v. Higgs*, 353 F.3d 281, 296 (4th Cir.2003), *cert. denied*, 543 U.S. 999,

125 S.Ct. 627, 160 L.Ed.2d 456 (2004), the federal court noted that the purpose of the Indictment Clause of the Fifth Amendment to the federal constitution "is to ensure that a defendant's jeopardy is limited 'to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge.'" (Quoting *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).) Moreover,

[i]n conjunction with the notice requirement of the Sixth Amendment,[3] the Indictment Clause provides two additional protections: the right of a defendant to be notified of the charges against him through a recitation of the elements, and the right to a description of the charges that is sufficiently detailed to allow the defendant to argue that future proceedings are precluded by a previous acquittal or conviction. *See Russell v. United States*, 369 U.S. 749, 763–64[, 82 S.Ct. 1038, 8 L.Ed.2d 240] (1962); *see also Hamling v. United States*, 418 U.S. 87, 117[, 94 S.Ct. 2887, 41 L.Ed.2d 590] (1974) ("[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense"); *United State v. Carrington*, 301 F.3d 204, 209–10 (4th Cir.2002) (same).

*Id.* (alterations added and in original).

In *Higgs*, the defendant contended "that his capital convictions and death sentences must be vacated because the indictment failed to charge [him] specifically with ... the aggravating factors required under" federal statute. *Id.* at 295. The prosecution alleged that, among other aggravating fac-

---

**2.** Specifically, the Court said that

Apprendi has not here asserted a constitutional claim based on the omission of any reference to sentence enhancement or racial bias in the indictment. He relies entirely on the fact that the "due process of law" that the Fourteenth Amendment requires the States to provide to persons accused of crime encompasses the right to a trial by jury, ... and the right to have every element of the offense proven beyond a reasonable doubt[.] That Amendment has not, however, been construed to include

the Fifth Amendment right to "presentment or indictment of a Grand Jury" that was implicated in our recent decision in [*Almendarez–Torres*]. We thus do not address the indictment question separately today.

*Apprendi*, 530 U.S. at 477 n. 3, 120 S.Ct. 2348.

**3.** As quoted in *Higgs*, "[t]he Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation.'" 353 F.3d at 296 n. 4 (quoting U.S. Const. amend. VI).

tors, his prior convictions need not be alleged in the indictment. *Id.* at 301–02. Based on *Almendarez–Torres*, the Fourth Circuit agreed with the prosecution and held that "[t]he Fifth Amendment Indictment Clause does not require an indictment to allege prior convictions that expose a defendant to an enhanced penalty." *Id.* at 304.

Other federal courts have held similarly. *See, e.g., United States v. Mercedes,* 287 F.3d 47, 58 (2d Cir.2002) (holding that pursuant to *Almendarez–Torres,* "the district court committed no error by enhancing [the defendant's] sentence based on an uncharged prior conviction"); *United States v. Thomas,* 242 F.3d 1028, 1035 (11th Cir.2001) ("[W]e are bound to follow *Almendarez–Torres* unless and until the Supreme Court itself overrules that decision."); *compare United States v. Rodriguez–Gonzalez,* 358 F.3d 1156, 1158–60 (9th Cir.2004) (holding that because the existence of a prior conviction under a federal statute "substantively transforms a second conviction under the statute from a misdemeanor to a felony[,]" the statute "changes the nature of the crime," and therefore "*Almendarez–Torres* does not apply").

## B. This Court's Jurisprudence Does Not Foreclose Inclusion Of the *Almendarez–Torres* Exception.

As explained by the majority, in *Apao,* this court said that "the better rule is to include in the indictment the allegations, which if proved, would result in application of a statute enhancing the penalty for the crime committed." 59 Haw. at 635, 586 P.2d at 258 (footnote omitted). This conclusion was premised on this court's observation that "[t]he common law required that 'every wrongful act which was to be taken into account in determining the punishment must be alleged in the indictment[,]' and it was necessary to allege particular facts in the indictment which created an aggravation of the crime charged." *Id.* (citation and parentheses omitted).

However, *Apao* was decided in 1978, twenty years before *Almendarez–Torres* was decided. Since *Apao* was decided, in *State v. Schroeder,* 76 Hawai'i 517, 527, 880 P.2d 192, 202 (1994), this court recognized that the

"particular fact-finding process" at trial by the trier of fact "is wholly independent of the allegation of any foundational 'aggravating circumstances' in the indictment or complaint containing the charges against the defendant." *Accord Apprendi,* 530 U.S. at 477 n. 3, 120 S.Ct. 2348. In light of this distinction, the United States Supreme Court has not held that recidivism is either an "element" or a separate "crime" that must be pled in the charging instrument. *Compare Jones,* 526 U.S. at 248–49, 119 S.Ct. 1215 (observing that the holding in *Almendarez–Torres* "cannot, then, be read to resolve the due process and Sixth Amendment questions implicated" in *Jones,* inasmuch as *Almendarez–Torres* "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment"), *with Apao,* 59 Haw. at 634–35, 586 P.2d 250 ("We acknowledge that due process requires that an indictment contain all the essential elements of the offense charged, and 'the omission of an essential element of the crime charged is a defect in substance rather than of form.'" (Citations and parenthesis omitted.)).

Accordingly, in light of the foregoing discussion, I would hold that a prior conviction does not need to be pled in a charging instrument, inasmuch as "a prior conviction must itself have been established through procedures satisfying fair notice, reasonable doubt, and jury trial guarantees." *Jones,* 526 U.S. at 249, 119 S.Ct. 1215; *see Almendarez–Torres,* 523 U.S. at 228, 118 S.Ct. 1219. I would also hold that because the plain language of HRS §§ 706–661 and 706–662 indicates that Hawaii's legislature intended to "set forth factors relevant only to the sentencing of an offender found guilty of the charged crime[,]" *Almendarez–Torres,* 523 U.S. at 228, 118 S.Ct. 1219, and the statutory language does not appear to transform "the nature of the crime," *Rodriguez–Gonzalez,* 358 F.3d at 1160, the aggravating factors enumerated therein need not be pled in a charging instrument.

**Dissenting Opinion by ACOBA, J.**

I respectfully dissent.

First, this proceeding should be dismissed and the case remanded. The order of the United States District Court (district court) has already directed that the court must comply with *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000),[1] that is, that if Plaintiff–Appellant State of Hawai'i (the prosecution) seeks an extended term, then Defendant–Appellee Brian Jess (Jess) must be afforded the option of a jury trial on the sentencing facts. Additionally, that he is entitled to one is already settled in this jurisdiction and need not be redecided, *State v. Maugaotega*, 115 Hawai'i 432, 447, 168 P.3d 562, 577 (2007) [hereinafter "*Maugaotega II*"], if as the majority holds, Jess is not entitled to non-extended term sentencing. Accordingly, with respect to Jess, whose case is before us, the majority decides nothing of consequence inasmuch as the jury requirement has already been imposed in his case irrespective of House Bill 2, Related to Sentencing, signed into law on October 31, 2007 as Act 1 [hereinafter, Act 1]. *See* 2007 Haw. Sess. L. (Second Special Session) Act 1 at ——. Nevertheless, the majority construes and applies Act 1, although it was not raised in this case.

The only consequential matter is the majority's new rule requiring extended sentencing factors to be alleged in charging documents. That is even further removed from Jess' case because under the majority's own holding, that rule does not apply to Jess, but is imposed generally to others whose cases have yet to be even initiated by the prosecution. This foray by the majority into the legislative area lays down a rule for general applicability that was not raised in the instant case and to which it will not apply. In light of the foregoing, the majority's claim of "judicial economy," majority opinion at 413, 184 P.3d at 165, is, with all due respect, nothing more than judicial expediency—Jess' case is merely the vehicle by which the majority proclaims propositions it seeks to advance that are not pertinent to or applied to his situation. Under these circumstances, no decision should be rendered on the Reserved Question.

Second, assuming *arguendo* that the Reserved Question must be answered, I believe that it must be answered in the negative and the case remanded for "non-extended" term sentencing because (1) the majority held in *Maugaotega II*, that Hawai'i Revised Statutes (HRS) § 706–662, the statute in the Reserved Question, was facially unconstitutional, (2) this holding is applicable to Jess because Jess' case was pending on appellate review at the time *Maugaotega II* was decided, (3) *Maugaotega II* did not announce a new rule of criminal procedure, and (4) *Maugaotega II* is precedent binding on this court and therefore entirely dispositive on the Reserved Question in Jess' case.

Third, assuming *arguendo Maugaotega II* does not control, and the case is remanded in due course for resentencing under Act 1, the majority is wrong in deciding *in this case* that Act 1 may be retroactively applied to Jess and that the automatic notice provision in Act 1 does not conflict with the new rule adopted by the majority inasmuch as (a) the matter is not ripe for decision because on resentencing the questions decided by the majority may never arise in Jess' case, (b) the parties have not raised or briefed these issues, (c) there is no controversy, nor are there concrete facts raised with respect to these questions in this case, (d) the application of Act 1 to and its constitutionality in future unknown cases cannot be properly decided in a vacuum.

1. Jess brought a petition for writ of habeas corpus pursuant to 18 U.S.C. § 2254 "present[ing] the question of whether the Hawaii extended sentencing scheme violates the United States Constitution's Sixth Amendment trial-by-jury clause pursuant to the rationale of the United States Supreme Court [ (the Supreme Court) ] decision in [*Apprendi* ] and its progeny." *Jess v. Peyton*, No. Civ. 04–00601 JMS/BMK, 2006 WL 1041737 at *1 (D.Haw. April 18, 2006). In granting Jess' petition for habeas corpus, the district court concluded that this court's "reasoning that the 'extrinsic' nature of the factual findings ... exempt[ed] them from *Apprendi's* reach[,]" *id.* at *4 (quoting *Kaua v. Frank*, 436 F.3d 1057, 1060–61 (9th Cir.2006) (*Kaua II* ) (internal quotation marks omitted)), "violate[d] the Sixth Amendment[ ]" to the United States Constitution as interpreted by *Apprendi* and its progeny, *id.* Thus, the district court ordered that Jess be resentenced in accordance with its opinion, *id.* at *6, *i.e.*, that a jury make the requisite finding to impose an extended term sentence, *id.* at *4.

Fourth, assuming *arguendo* adoption of the new rule is necessary, the majority's holding that extended sentencing factors must be included in the charging document should be applied to Jess inasmuch as unlike a legislature, we do not promulgate broad rules outside of specific cases and as a matter of fundamental fairness we must apply any new rule benefitting defendants to those who are similarly situated.[2]

## I.

### A.

With respect to the Reserved Question,[3] the prosecution and amici curiae[4] would answer the Reserved Question in the affirmative. The prosecution notes that on February 20, 2007, the Supreme Court vacated this court's judgment in *State v. Maugaotega,* 107 Hawai'i 399, 114 P.3d 905 (2005) [hereinafter *Maugaotega I* ], *vacated and remanded, Maugaotega v. Hawaii,* —— U.S. ——, 127 S.Ct. 1210, 167 L.Ed.2d 37 (2007) (memorandum opinion), the latest in a series of cases in which the majority mistakenly reaffirmed this court's "extrinsic-intrinsic" dichotomy of sentencing factors and upheld the constitutionality of Hawaii's extended sentencing scheme. On remand, the Supreme Court

instructed this court to reconsider Hawaii's extended sentencing scheme in light of its decision in *Cunningham. Maugaotega v. Hawaii,* 549 U.S. at ——, 127 S.Ct. at 1210.

The prosecution contended that if this court determined that the Supreme Court's ruling in *Cunningham* requires "that the trier of fact is to make the finding that the imposition of an extended term or [sic] imprisonment is necessary for the protection of the public[,]" that the court is authorized to empanel a jury to make that determination. The prosecution concluded that if this court holds "that the trier of fact is constitutionally required to make the 'necessary for the protection of the public' finding[,]" we should also hold that the court "has the inherent power to empanel a jury to make that determination as part of a sentencing proceeding on remand where a defendant's sentence has been vacated due to an *Apprendi* procedural error."

### B.

On October 1, 2007, while the Reserved Question was pending, this court issued its decision in *Maugaotega II,* pursuant to the Supreme Court's mandate that we reconsider the validity of HRS §§ 706–661 and –662 in light of the Court's decision in *Cunningham.*[5]

---

**2.** The majority's decision asserts that (1) under *Cunningham v. California,* 549 U.S. 270, ——, 127 S.Ct. 856, 864, 166 L.Ed.2d 856 (2007), "extrinsic enhancers, like intrinsic enhancers, are 'essential elements' of the 'aggravated' version of the offense[,]" majority opinion at 398, 184 P.3d at 150 (citations omitted), (2) therefore the majority adopts a new rule requiring that the charging instrument must include these enhancers, *id.* (citations omitted) (3) this holding applies purely prospectively to all criminal defendants, *id.* at 400, 184 P.3d at 152, and (4) therefore this holding shall not apply retroactively to Jess, *id.* at 403–04, 184 P.3d at 155–56, (5) rather, with respect to Jess, the court may empanel a jury for consideration of the necessity finding pursuant to HRS §§ 706–661, 706–662, and 706–664 under its inherent judicial authority and Act 1, *id.* at 412–13, 184 P.3d at 164–65, (6) such practice, does not violate "the requirements of due process[ ] grounded in *ex post facto* concerns[,]" *id.* at 407, 184 P.3d at 159, (7) also, the court may empanel a jury for consideration of the necessity finding under HRS §§ 706–661, 706–662, and 706–664 pursuant to Act 1, insofar as (8) Act 1's retroactive provisions do not violate *ex post facto* objections, and the notice requirements do not violate the majority's newly adopted rule, *id.* at

400, 184 P.3d at 152, (9) thus this case is remanded to the court (presumably for application of Act 1), *id.* at 414, 184 P.3d at 166.

**3.** To reiterate, the question reserved stated:

> May the trial court, as part of a sentencing proceeding brought pursuant to [HRS §§ 706–662(1) & (4),] empanel a jury to make a factual finding to determine whether the prosecution has proven beyond a reasonable doubt that the defendant's commitment for an extended term of incarceration is necessary for the protection of the public?

(Emphasis added.) On April 26, 2007, this court issued its "Order Accepting Reserved Question."

**4.** Amici curiae are the Attorney General of the State of Hawai'i (Attorney General); Benjamin M. Acob, in his capacity as Prosecuting Attorney, County of Maui (Amicus Acob); and Craig A. De Costa, in his capacity as Prosecuting Attorney, County of Kauai (Amicus De Costa) [collectively, Amici].

**5.** This section addresses the majority's fifth point. *See supra* at 386, 184 P.3d at 138 n. 2.

In remanding the case, the majority of this court acknowledged that its position in *Maugaotega I* and prior cases was wrong under *Apprendi.*

> [T]he reasoning of the *Cunningham* majority leaves no doubt that ... a majority of [the Supreme Court] would consider the necessity finding set forth in HRS § 706–662(4) as separate and distinct from traditional sentencing consideration and, instead, as a predicate to imposing an extended prison term on a defendant that, under *Apprendi* and its progeny, must either be admitted by the defendant or proved beyond a reasonable doubt to the trier of fact[.]

*Maugaotega II*, 115 Hawai'i at 446, 168 P.3d at 576 (citing *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348).

Much of what is argued by the prosecution as to the Reserved Question was set forth in the dissent in *Maugaotega II*. The dissent opined that extended term sentences could be properly remanded for a jury trial because "(1) [HRS] §§ 706–661 and –662 .... are not rendered unconstitutional in their entirety under *Cunningham*, (2) the legislature expressly intended to preserve extended term sentencing, [and] (3) such a disposition is approved by *Cunningham*[.]" *Maugaotega II*, 115 Hawai'i at 451, 168 P.3d at 582 (Acoba, J., concurring and dissenting, joined by Duffy, J.) (footnote omitted). The dissent in *Maugaotega II* noted that other separate opinions considering Hawaii's extended term sentencing statutes' compliance with *Apprendi* and its progeny had previously asserted

that jury determinations were required to impose such sentences. *Id.* at 454, 168 P.3d at 584 (citing *State v. White*, 110 Hawai'i 79, 97, 129 P.3d 1107, 1125 (2006) (Acoba, J., dissenting, joined by Duffy, J.) (stating that "a determination that the defendant's 'criminal actions were so extensive' that an extended sentence *for the protection of the public is warranted is a fact that must be determined by a jury* ") (emphasis added)) (other citations omitted).

Second, the dissent posited that the majority's disposition in *Maugaotega II* was inconsistent with *State v. Janto*, 92 Hawai'i 19, 986 P.2d 306 (1999), *State v. Young*, 93 Hawai'i 224, 999 P.2d 230 (2000), and *State v. Peralto*, 95 Hawai'i 1, 18 P.3d 203 (2001), inasmuch as in those cases "this court concluded that in order to apply HRS § 706–657 constitutionally, a jury, instead of the court as the statute dictated, had to make the necessary findings for enhanced sentencing and so ordered." 115 Hawai'i at 456, 168 P.3d at 586.[6]

Third, the dissent declared that the majority position in *Maugaotega II* "ignore[d] the legislature's overarching concern that led to the aborted amendment of the extended term sentencing structure: that extended term sentencing continue to be available." *Id.* at 457, 168 P.3d at 587. Fourth, the dissent relied on the inherent power of the court as encompassed in (1) article VI, section 1 of the Hawai'i constitution, (2) HRS § 603–21.9(6) (1993), and (3) this court's precedent[7] as an appropriate basis for authorizing juries to make findings pursuant to HRS §§ 706–661 and –662. *Id.* at 457, 168 P.3d at 587.[8] The

---

**6.** The dissent observed that other jurisdictions had already determined that their extended sentencing statutes could be applied constitutionally by allowing a jury to make the underlying findings. *Maugaotega II*, 115 Hawai'i at 456, 168 P.3d at 586 (citing *Smylie v. State*, 823 N.E.2d 679, 685 (Ind.2005) (citation omitted); *State v. Shattuck*, 704 N.W.2d 131, 143 n. 11 (Minn. 2005) (citing *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)); *State v. Dilts*, 337 Or. 645, 103 P.3d 95, 99–100 (2004)).

**7.** *See, e.g., State v. Harrison*, 95 Hawai'i 28, 32, 18 P.3d 890, 894 (2001) (per curiam) (noting that the circuit courts have "inherent power to control the litigation process before them" and "to create a remedy for a wrong even in the absence

of specific statutory remedies") (citations omitted); *State v. Moriwake*, 65 Haw. 47, 55, 647 P.2d 705, 712 (1982) (stating that "the inherent power of the court is the power to protect itself; the power to administer justice whether any previous form of remedy has been granted or not; the power to promulgate rules for its practice; and the power to provide process where none exists") (footnote, citation and internal quotation marks omitted).

**8.** Similar to the prosecution, the dissent noted that (1) in *Janto* this court held that the trier of fact, *i.e.* the jury, must make findings necessary to impose an extended term sentence pursuant to HRS § 706–567, *Maugaotega II*, 115 Hawai'i at 458, 168 P.3d at 588 (Acoba, J., dissenting, joined by Duffy, J.) (citing *Janto*, 92 Hawai'i at

dissent indicated that, as in *Peralto*, a new jury could be empaneled for sentencing purposes because the failure to comply with *Apprendi* and its progeny in the original sentencing proceeding amounted to a procedural error. *Id.* at 459, 168 P.3d at 589 (citing *Peralto*, 95 Hawai'i at 6 n. 4, 18 P.3d at 208 n. 4).[9]

Based on the foregoing, the dissent concluded that "to best conform our current extended term sentencing scheme with the expressed intent of the legislature, a jury should be empaneled on remand to decide on the findings necessary under a motion for extended term sentencing unless [Maugaotega] waives his right to [a] jury and such waiver is agreed to by the court." *Id.* at 461, 168 P.3d at 591 (footnote omitted).

### C.

Nevertheless, the majority held that "HRS § 706–662, in all of its manifestations, ... is *unconstitutional on its face*[,]" *Maugaotega II*, 115 Hawai'i at 446–47, 168 P.3d at 576–77 (footnote omitted) (emphasis added), and therefore could not be applied to Maugaotega. Further, the majority declined to exercise the judiciary's inherent power to empanel juries for extended term fact finding because it claimed that, "in Act 230, the legislature expressed its intent ... regarding how best to conform our extended term sentencing regime ... and, in so doing, did not vest in the jury the power to find the requisite aggravating facts but, rather, directed that the sentencing court should retain that responsibility[,]" *id.* at 449, 168 P.3d at 579 (citing 2006 Haw. Sess. L. Act

32–33, 986 P.2d at 319–20), and (2) in *Peralto*, "this court exercised its inherent power to order a jury empaneled on resentencing" pursuant to § 706–567 because the original jury had not been instructed according to *Young*, which required the prosecution to prove and the jury to unanimously find the requisite sentencing factor, *id.* (citing *Peralto*, 95 Hawai'i at 5, 18 P.3d at 207 (citing *Young*, 93 Hawai'i at 236, 999 P.2d at 241)).

9. The dissent further noted that other jurisdictions had chosen to exercise the inherent power of the courts to empanel juries to preserve the legislative intent that certain criminal defendants would be subject to extended terms of incarceration. *Id.* at 459–61, 168 P.3d at 589–91 (citing *Aragon v. Wilkinson ex rel County of Maricopa,*

230 §§ 23 & 24 at 1012–13) (other citations and footnote omitted), despite the fact that Act 230 was not involved in Maugaotega's case. Hence, the majority "*vacate[d] Maugaotega's original extended term sentences and remand[ed] to the circuit court for non-extended term sentencing.*" *Id.* at 434, 168 P.3d at 564 (emphasis added).

### II.

The Reserved Question concerns the same statute that was applied to Maugaoatega. Consequently, the Reserved Question involves the same version of HRS § 706–662 held unconstitutional in *Maugaotega II*. Jess' case was pending before this court during the pendency and decision in *Maugaotega II*.[10] It follows that as a consequence of the foregoing proceedings, *Maugaotega II* is entirely dispositive on the Reserved Question. Based on (1) the majority's holding in *Maugaotega II* that Hawaii's extended sentencing scheme in HRS § 706–662 was unconstitutional on its face, and (2) the majority's perception of the supposed legislative intent in Act 230 (a statute not involved in *Maugaotega II*) that a jury could *not be* empaneled for the purpose of making the requisite findings to impose an extended sentence, the Reserved Question can only be answered in the negative as it applies to Jess' case. The majority in *Maugaotega II* established without question that under the statute involved in the Reserved Question, the circuit court could not empanel a jury to make the "necessary for the protection of the public" finding.[11] Hence, the same holding in *Mau-*

209 Ariz. 61, 97 P.3d 886, 891 (Ariz.App.2004); *Smylie*, 823 N.E.2d at 685–86; *State v. Schofield*, 895 A.2d 927, 935 (Me.2005); *State v. Chauvin*, 723 N.W.2d 20, 24 (Minn.2006)).

10. The version of HRS § 706–662 applicable to Maugaotega was an amended version of the statute that applied to Jess. However, the amendment dealt only with the definition of gender identity and thus was irrelevant to the issues raised in both cases.

11. Jess advances essentially the same argument. He posits that we

are bound by the doctrine of *stare decisis* to follow [our] recent decision in [*Maugaotega II*], by concluding that the answer to the Re-

*gaotega II* must, in principle, apply to Jess in the instant case.

This is because *Maugaotega II* is precedent. "Precedent is '[a]n adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising *or a similar question of law.*'" *State v. Garcia*, 96 Hawai'i 200, 205, 29 P.3d 919, 924 (2001) (quoting *Black's Law Dictionary* 1176 (6th ed.1990)) (emphasis added) (brackets in original). The purpose of precedent is to "furnish a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; . . . eliminat[e] the need to relitigate every relevant proposition in every case; and . . . maintain[ ] public faith in the judiciary as a source of impersonal and reasoned judgments." *Id.* at 205–06, 29 P.3d at 924–25 (quoting *Robinson v. Ariyoshi*, 65 Haw. 641, 653 n. 10, 658 P.2d 287, 297 n. 10 (1982) (citation omitted)) (internal quotation marks and brackets omitted).

The practice of abiding by precedent, *i.e.*, applying the same legal precepts to similar factual situations, is referred to as the doctrine of *stare decisis*. *See State v. Brantley*, 99 Hawai'i 463, 479, 56 P.3d 1252, 1268 (2002) (Acoba, J., dissenting) ("[S]tare decisis ensures that the law will not merely change erratically and permits society to presume that bedrock principles are founded in the law rather than in the proclivities of individuals." (Quoting *Patterson v. McLean Credit Union*, 491 U.S. 164, 172, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (citations and quotation marks omitted).)). The import of creating precedent is that we do not "'depart from the doctrine of stare decisis without some compelling justification.'" *Id.* at 480, 56 P.3d at 1269 (quoting *Garcia*, 96 Hawai'i at

206, 29 P.3d at 925 (citation omitted)). Once a decision of this court has become precedent, it establishes the "framework [in which subsequent cases] must be evaluated." *Id.* (arguing that *Brantley* should have been decided under the "framework" of *State v. Jumila*, 87 Hawai'i 1, 950 P.2d 1201 (1998)).

The proper application of the foregoing principles compels a negative answer to the Reserved Question. First, it is clear that *Maugaotega II*, a published opinion, constitutes precedent. *Cf. Brantley*, 99 Hawai'i at 479, 56 P.3d at 1268 (Acoba, J., dissenting) ("Upon its publication in 1998, *Jumila* became precedent.") Second, the majority does not purport to overrule *Maugaotega II*, much less present any "compelling justification" for doing so. *See id.* at 480, 56 P.3d at 1269 (citations omitted). Thus it follows that *Maugaotega II* must provide the "framework" for analyzing the Reserved Question. *See id.*

In refusing to follow its own precedent, the majority ignores the "clear guide[,]" *Garcia*, 96 Hawai'i at 205, 29 P.3d at 924 (citation omitted), that existed with regard to the proper sentencing procedures in this jurisdiction following *Maugaotega II*. *Maugaotega II* established a clear rule—Hawaii's extended sentencing statute involved in this case was "unconstitutional on its face." 115 Hawai'i at 446–47, 168 P.3d at 576–77 (footnote omitted). By answering the Reserved Question in the affirmative, and allowing for the application of that same statute, the majority violates precedent. The majority's reliance on "judicial economy," majority opinion at 413, 184 P.3d at 165, will do nothing to inspire public confidence in the judiciary "as a source of impersonal and reasoned judgments." *Garcia*, 96 Hawai'i at 205–06, 29

served Question is no. Two members of this [c]ourt, based upon the 'law of the case' doctrine, have already recognized that fact. Order Denying Motion For An Order Of Immediate Remand To The Circuit Court For Non–Extended Term Sentencing, entered November 8, 2007 (Dissent by Acoba, J., with whom Duffy, J., joins).

Jess is correct in noting that two members of this court concluded that under *Maugaotega II*, the reserved question must be answered in the negative. Order Denying Motion For An Order Of Immediate Remand To The Circuit Court For

Non–Extended Term Sentencing, entered November 8, 2007 (Dissent by Acoba, J., with whom Duffy, J., joins) (Dissent to the November 8, 2007 Order). However, the basis for that conclusion did not lie in the "law of the case" doctrine, but rather was necessitated by the majority holdings in *Maugaotega II* that Hawaii's extended term sentencing scheme was wholly unconstitutional and that the derivative legislative intent of Act 230 prohibited empanelment of a jury for the purpose of making the requisite findings for an extended sentence. Dissent to the November 8, 2007 Order.

424

P.3d at 924–25 (citations omitted). Inasmuch as *Maugaotega II* should apply, Jess' case must be remanded for "non-extended term sentencing." *See Maugaotega II,* 115 Hawai'i at 434, 168 P.3d at 564 (vacating appellant Maugaotega's "original extended term sentences and remand[ing] ... for non-extended term sentencing").

### III.

Even if Jess' case was considered final prior to its remand to the court by the district court, the general prohibition in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), against retroactive application of new rules to final cases is not applicable here. *Teague* articulated the rule that "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. 1060. *Maugaotega II* did not pronounce a new rule because its holding that Hawaii's extended term sentencing statutes were unconstitutional, 115 Hawai'i at 446–47, 168 P.3d at 576–77, was *"dictated by precedent existing at the time the defendant's conviction became final."* *Teague,* 489 U.S. at 301, 109 S.Ct. 1060 (emphasis added).

*Maugaotega II's* conclusion regarding the unconstitutionality of the sentencing statutes was ultimately based upon the Supreme Court's decision in *Apprendi* which *Cunningham* merely reiterated. The *Apprendi* decision was issued in 2000, well before Jess' sentence was affirmed upon this court's issuance of its Summary Disposition Order in September 2003, as argued by the Attorney General. In determining that HRS § 706–662 was "unconstitutional on its face" and "violated [the defendant's] sixth amendment right to a jury trial," *Maugaotega II,* 115 Hawai'i at 446–47, 168 P.3d at 576–77, this court relied on *Cunningham* and *Maugaotega v. Hawaii,* 549 U.S. ——, 127 S.Ct. 1210, *see Maugaotega II,* 115 Hawai'i at 447, 168 P.3d at 577.

The *Maugaotega II* majority acknowledged that "*Cunningham* rejected our long-held belief" that the method of making the necessity finding under HRS § 706–662 "was not dissonant with *Apprendi* and its progeny." *Id.* at 445, 168 P.3d at 575 (citations omitted). In turn, *Cunningham* concluded that a court "engaging in fact-finding that increased the defendant's sentence beyond that authorized by the jury verdict" was "offending the *Apprendi* rule." *Id.* (citation omitted); *see also id.* at 453, 168 P.3d at 583 (Acoba, J., dissenting, joined by Duffy, J.) (explaining that " 'Hawaii's extended term proceeding ... would be a proceeding subject to the right to jury trial under the Sixth Amendment' " and noting that any dispute on this issue "has been put to rest by the majority opinion in *Cunningham* " (quoting *State v. Rivera,* 106 Hawai'i, 146, 172, 102 P.3d 1044, 1070 (2004) (Acoba, J., dissenting, joined by Duffy, J.) (ellipsis in original)).

Indeed, other cases preceding *Jess* held that Hawaii's extended term sentencing statutes were unconstitutional under *Apprendi. Kaua v. Frank,* 350 F.Supp.2d 848, 856 (D.Haw.2004) [hereinafter *Kaua I* ], agreed that the imposition of an extended sentence under HRS § 706–662 "was contrary to clearly established federal law, as determined by [the Supreme Court], and that it was an unreasonable application of clearly established federal law, as determined by [the Supreme Court]." The district court there held that this court's earlier decision upholding the application of the extended sentence to the defendant was based on a "reading of *Apprendi* [that] flies in the face of the actual language of *Apprendi,* especially as that language has been construed in *Ring v. Arizona,* 536 U.S. 584[, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ]." *Kaua I,* 350 F.Supp.2d at 859.

Thus, *Maugaotega II's* holding was based upon precedent initially set forth by *Apprendi* in 2000 and therefore in existence well before Jess' sentence arguably became final in 2003. Therefore, even if Jess' conviction is viewed as final under *Teague, Maugaotega II's* holding is applicable to Jess insofar as its holding was supported and in fact required by the precedent set forth in *Apprendi* and its progeny. Hence, *Maugaotega II's* holding does not represent a new rule so much as it represents a correction of the *Maugaotega*

*I* holding pursuant to the rules articulated in *Apprendi* and related cases that were established prior to this court's affirmation of Jess' conviction and sentence in 2003.

## IV.

Assuming *arguendo*, however, that *Maugaotega II* does not apply, in the alternative, the Reserved Question proceeding should be deemed improvidently granted, as Jess argues, and the case simply remanded for re-sentencing. In that regard, while the disposition of the Reserved Question was pending, the legislature met in special session and passed Act 1. In oral argument the Attorney General indicated that on remand of Jess' case by this court, the prosecution would move for resentencing under the newly enacted Act 1, if, assumably, this court did not apply the precedent of *Maugaotega II*.

However, the majority ignores its own holding on the *Maugaotega II* remand and contends that, *based on Act 1*, the Reserved Question can be answered in the affirmative because (1) "[the court] possesses the inherent judicial authority 'to provide process where none exists,' [*Moriwake*], 65 Haw. [at] 55, 647 P.2d [at] 711–12 . . . , [12] *and [because] the legislature, by amending Hawaii's extended sentencing laws to include jury fact-finding [in Act 1], has clearly expressed its approval of a jury system for making the required [extended sentencing] findings*", majority opinion at 388, 184 P.3d at 140 (emphasis added) (formatting altered), and (2) the court may "empanel a jury for determination of the necessary findings pursuant to the newly amended versions of HRS §§ 706–661, 706–662, and 706–664[,]" *that were amended by Act 1, id.* at 413, 184 P.3d at 165 (formatting altered).[13] As it did in *Maugaotega II* with respect to Act 230, the *Maugaotega II* must be applied to conform with precedent.

Act 1 was enacted *after Maugaotega II* and *after* Jess' offense, conviction and original sentence and therefore the reference to jury empanelment therein and the application thereof cannot serve as precedent consistent with *stare decisis* as far as Jess is concerned. *See Garcia*, 96 Hawai'i at 205, 29 P.3d at 924 (defining precedent as "an adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law" (quoting *Black's Law Dictionary* 1176 (6th ed. 1990)) (brackets and internal quotation marks omitted)).

Similarly, Act 230 was enacted after Maugaotega's offense, conviction, and original sentence. Although in *Maugaotega II* the majority and the dissent, in response to the majority, referred to Act 230, *see Maugaotega II*, 115 Hawai'i at 449, 168 P.3d at 579 ("in Act 230, the legislature expressed its intent regarding how best to conform our extended term sentencing regime to the requirements of *Apprendi* and its progeny"); *id.* at 457, 168 P.3d at 587 (Acoba, J., dissenting, joined by Duffy, J.) (arguing that "the legislature's overarching concern . . . [was] that extended term sentencing continue to be available"), Act 230 could not apply to *Maugaotega II* inasmuch as the amendments contained in that Act expired on June 30, 2007, and were therefore inapplicable to that case. *See id.* at 436 n. 1, 168 P.3d at 566 n. 1 (majority opinion). The present case is markedly different in that the majority approves the application of Act 1, which was not in effect at any time relevant to Jess' case.

**12.** The dissent in *Maugaotega II* cited *Moriwake* to support the conclusion that the "extended term sentencing procedure [could] be enforced . . . [by] calling upon the jury to find necessary facts[.]" *Maugaotega II*, 115 Hawai'i at 457, 168 P.3d at 587 (citing *Moriwake*, 65 Haw. at 55, 647 P.2d at 712). Despite its insistence in the *Maugaotega II* majority opinion that a jury could not be empaneled to make these findings (based on the majority's perception of the legislature's purported intent of an act (Act 230) not involved in *Maugaotega II* ), *see Maugaotega II*, 115 Hawai'i at 449, 168 P.3d at 579, today, the majority completely reverses its position, even citing *Moriwake* to argue that "allow[ing] for jury fact-finding would not violate Jess' right to due process of law." Majority opinion at 409, 184 P.3d at 161.

**13.** The majority maintains that because the "decision in *Maugaotega II* was guided by the latest expression of legislative intent, which vested the power to make the necessity finding not with the jury but with the court[,]" and since that time, the legislature has provided new evidence of its "conclusive . . . support for [the court] to empanel a jury pursuant to its inherent authority that was previously lacking," majority opinion at 413, 184 P.3d at 165 n. 27, Act 1 permits this court to answer the Reserved Question in the affirmative without violating *stare decisis*. However, inasmuch as the issue has not been raised or briefed by the parties nor is ripe for decision in Jess' case, whether HRS § 706–662, *as amended by Act 1*, should be applied in Jess' case is not before us. Moreover, it is indisputable that HRS § 706–662 (*Supp.1996* ), the statute in the Reserved Question and declared unconstitutional in *Maugaotega II*, cannot be applied to Jess and the ruling as to nonextended term sentencing in

majority relies on a statute—Act 1—that has not been applied in the case before us. For the reasons delineated below, this approach is incorrect.[14]

### A.

First, the Reserved Question asks only whether under the particular statute involved in the Reserved Question, HRS § 706–662 (1993 & Supp.1996) can be constitutionally applied to resentence Jess to an extended term sentence by empaneling a jury, notwithstanding the express language of the statute. Unlike in *Maugaotega II*, this is not an appeal from an extended term sentence that has been imposed, but simply a request for legal advice as to the applicability of a specific statute *before any sentence is imposed*. In that connection, the issues pertaining to the construction of Act 1 were not raised or briefed by the parties. Accordingly, the question before the court does not pose as a matter of controversy any question of the construction of Act 1 to Jess so as to invoke our jurisdiction on the applicability of the Act to Jess.

The Reserved Question does not ask whether there are alternative avenues, such as through Act 1, for constitutionally imposing an extended term of imprisonment. As stated by Jess, "[the prosecution] ... has not sought to amend the contents of the Reserved Question ... to include any issue beyond empanelling [sic] a jury for sentencing purposes [under the statute noted. Further, t]he Reserved Question does not include any issue on the subject of the constitutional validity of [Act 1]...."

### B.

Second, the issue of whether Act 1 should be applied to Jess such that he may be subject to an extended sentence is not ripe on the present state of the record because the outcome of his case is yet to be decided on remand for resentencing. Whether Act 1 is constitutional as it would apply *to Jess* is not before this court. Any constitutional questions that *could* arise with respect to the application of Act 1 to him for the ultimate determination by this court may be foreclosed by events that occur on remand for resentencing, even if the prosecution requests that Act 1 be applied.

Questions of construction concerning Act 1 as it affects this case could be foreclosed by Jess' entry into a plea agreement with the prosecution, by a stipulation as to an appropriate sentence, by Jess' waiver of a jury trial, by the jury's finding (if one is empaneled) that Jess does not meet the HRS § 706–662 criteria for extended sentencing, or by the jury's finding that an extended sentence is not necessary for the protection of the public. Indeed, Judge Seabright, who presided over Jess' federal habeas corpus petition that resulted in vacation of the previous court-imposed extended sentence, noted that he "ha[d] grave doubt as to whether the jury would have made the same public protection determination as the trial judge" and that "a jury could have just as easily found that an extended sentence was not necessary in this case." *Jess*, No. Civ. 04–00601 JMS/BMK, 2006 WL 1041737 at *6. In light of the foregoing, Act 1 should not be construed in this particular case.[15]

---

**14.** This section pertains to the majority's points five through eight. *See supra* note 2.

**15.** With all due respect, the majority commits a similar error when it unilaterally overrules *State v. Cutsinger*, No. 28203, 118 Hawai'i 68, 185 P.3d 816, 2008 WL 257175 (Haw.App. Jan. 30, 2008) to the extent that the Intermediate Court of Appeals (ICA) held that sentence enhancing factors need not be included in charging documents. *See* majority opinion at 398, 184 P.3d at 150 n. 17 ("We therefore overrule *Cutsinger* to the extent that its analysis is inconsistent with our own.") Although *Cutsinger* was cited to this court in a Hawai'i Rule of Appellate Procedure (HRAP) Rule 28(j) citation to supplemental au-

thority, it was not thoroughly briefed or argued before this court. This error is compounded by the fact that the ICA's decision is not yet final inasmuch as HRAP Rule 36(c) provides that

> [t]he [ICA's] judgment is effective upon the ninety-first day after entry, or, if an application for a writ of certiorari is filed, upon entry of [this] court's order dismissing or rejecting the application or, upon entry of [this] court's order affirming in whole the judgment of the [ICA].

Accordingly, as the ICA's judgment in *Cutsinger* was filed on January 30, 2008, the judgment is not effective until May 1, 2008. Furthermore, the defendant in *Cutsinger* has indicated that he

## V.

Nevertheless, the majority contends that Act 1 "addresses defendants in [Jess'] position[,]" and unilaterally construes Jess' "constitutional arguments broadly to include" the constitutionality of Act 1 "[i]n the interests of judicial economy[.]" Majority opinion at 413, 184 P.3d at 165. The majority goes on to decide that "the plain language of the amended statute allows for retroactive application upon resentencing[,]" *id.* (formatting altered), the "[a]pplication of Act 1 ... would not violate the constitutional prohibition against *ex post facto* measures," *id.* (formatting altered),[16] and the automatic notice provision in Act 1 does not conflict with the majority's requirement that extended term factors be pleaded in the charging document, *id.* at 400, 184 P.3d at 152.

It would appear manifest that we should not construe Act 1 in the absence of any controversy presented in this appellate proceeding with respect to Act 1. The parties have not had the opportunity to raise and brief arguments related to Act 1 because obviously there is no reason at this point for doing so. The majority has made its declarations in a vacuum, without the benefit of specific facts on which to ground its holding. Therefore, the majority can only speculate *in general* on what challenges Jess and, *other*

defendants could or would raise concerning Act 1 in the future.

With all due respect, it is folly to imagine that we can or should attempt to determine arguments that potentially could be raised against the applicability or legality of Act 1 in future unknown cases such that we can issue an unsolicited, blanket endorsement of the new extended term sentencing statute.[17] It is not reasonable to say that the application of Act 1 to particular defendants in cases not yet before this court will be constitutional without fail. Yet the majority proceeds to address questions that are not before this court under the guise of serving "the interests of judicial economy" and at the expense of the doctrine of judicial review. Majority opinion at 400, 184 P.3d at 152.

## VI.

The extent to which the majority will go to decide questions not presented to us in an effort to uphold Act 1 without regard to the fact that the statute has yet to be raised in controversy in any case before us is exemplified in the majority's defense of the amended language in HRS § 706–664(2). In this case the Attorney General himself correctly argues that a holding such as the majority's requiring all aggravating factors relevant to enhanced sentencing be included in the indictment would render HRS § 706–664(2) as

---

will file an application for writ of certiorari. In the event such application is filed, the ICA's judgment will be further stayed until this court decides to accept or reject said application. *See* HRAP Rule 41 ("The timely filing of an application for writ of certiorari stays finality of the [ICA's] judgment on appeal unless otherwise ordered by [this] court."). Thus, the appropriate time to address the correctness of the ICA's decision is when the issue is before us on certiorari, not in a preemptive strike in this case.

Because the decision in *Cutsinger* is not yet final, it is also inappropriate for the majority to cite to the ICA's opinion as controlling authority. *See* majority opinion at 412, 184 P.3d at 164 (relating to the legislative intent behind Act 1), 413, 184 P.3d at 165 (relating to the *ex post facto* clause), and 414–15, 184 P.3d at 166–67 (same). Understandably, Westlaw's internet service warns users against reliance on the opinion, cautioning that "this opinion has not been released for publication in the permanent law reports. A petition for reconsideration in the court of ap-

peals or a petition for certiorari in the [s]upreme [c]ourt may be pending."

16. The majority states that inasmuch as this dissent "asserts that Act 1 should not be construed or applied with respect to Jess, it does not take issue with the actual substance of [the majority's] due process or *ex post facto* analysis." Majority opinion at 415, 184 P.3d at 167 n. 28. The point is that because Act 1 should not be considered or applied, it follows that we should not reach such questions. Rather we should wait until a case in which Act 1 is actually applied is before us. Hence, it is error for the majority to issue an opinion that is, for all intents and purposes, advisory and thus I do not address the majority's position on the foregoing matters because any response would be similarly flawed.

17. Additionally, Jess argues that in cases like his, "where the initial extended term was based on intrinsic/enmeshed factual allegations, a legislative attempt at a retroactive [sentencing reform] ... [is] an issue not before this [c]ourt."

amended by Act 1 unconstitutional.[18] (Arguing that the new charging rule would render Act 1 "essentially unconstitutional[ ] to the extent that" it purports to allow resentencing of defendants who received extended sentences under the previous statute). The amended HRS § 706–664(2) provides in relevant part:

> (2) Notice of intention to seek an extended term of imprisonment under 706–662 shall be given to the defendant within thirty days of the defendant's arraignment. However, the thirty-day period may be waived by the defendant, modified by stipulation of the parties, or extended upon a showing of good cause by the prosecutor. *A defendant previously sentenced to an extended term under a prior version of this chapter shall be deemed to have received notice of an intention to seek an extended term of imprisonment.*

(Emphasis added.)

The provision in HRS § 706–664, as amended by Act 1, that "[a] defendant previously sentenced to an extended term ... shall be deemed to have received notice of an intention to seek an extended term of imprisonment[,]" is directly at odds with the new rule pronounced by the majority that "a charging instrument, be it an indictment, complaint, or information, must include all allegations, which if proved, would result in the application of a statute enhancing the penalty of the crime committed." Majority opinion at 398, 184 P.3d at 150 (citations and internal quotation marks omitted).

The majority's new rule requiring all aggravating factors to be alleged in the charging document is based on the requirement that "the prosecution must allege all essential elements of an offense in the charging instrument" which is in turn, derived from "the due process and 'grand jury' clauses of the Hawai'i Constitution, ... resid[ing] respectively in article I, sections 5 and 10." *Id.* at 393–94, 184 P.3d at 144–145 (footnotes and citation omitted). The provision in HRS § 706–664(2) stating that a defendant receives suffi-

cient notice of being subject to an extended term sentence merely by virtue of being previously sentenced to an extended term conflicts with the majority's holding that due process requirements, including the provision of sufficient notice to a defendant, necessitate that the charging document include all factors relevant to the determination of eligibility for an extended term sentence.

The majority attempts to circumvent the conflict between its holding and the express language of § 706–664 by contending that it "do[es] not read the statute's constructive notice provision as undertaking to cure the ... constitutional defects in the charging instruments" lacking allegations of aggravating factors and "therefore decline[s] to read HRS § 706–662(2)[sic] as attempting to charge defendants by *constructive* notice." *Id.* at 399–400, 184 P.3d at 151–52 (emphasis added). The majority rationalizes its avoidance of this obvious incongruity by resorting to the contention that "such a reading would contravene the doctrine of 'constitutional doubt,' which dictates that, 'where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is [to] adopt the latter.'" *Id.* at 399–400, 184 P.3d at 151–52 (quoting *In the Interest of Doe*, 96 Hawai'i 73, 81, 26 P.3d 562, 570 (2001) (quoting *Jones v. United States*, 529 U.S. 848, 857, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000))).

However, this is not a case in which this court is tasked with deciding between two valid interpretations of a statute. Rather, this is a case where in plain and unambiguous language the statute clearly directs that, in the context of extended term sentencing, the notice requirements of due process are automatically satisfied by a particular event while this court's holding states that the notice requirements of due process are met only upon the fulfillment of a different event. *See State v. Klie*, 116 Hawai'i 519, 525, 174 P.3d 358, 364 (2007) (stating that "where the

18. Presumably the Attorney General has intimate knowledge of the intent behind Act 1. The Attorney General participated in the legislative enactment of Act 1, submitting testimony in support of the Act to the House Judiciary Committee and the Senate Committee on Judiciary and Labor. *See* Hse. Stand. Comm. Rep. No. 1, in 2007 House Journal (Second Special Session), at 71; Sen. Stand. Comm. Rep. No. 7, in 2007 Senate Journal (Second Special Session), at ——.

statute is clear and unambiguous" this court "cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts" and "[e]ven when the court is convinced in its own mind that the legislature really meant and intended something not expressed by the phraseology of the act" this court "has no authority to depart from the plain meaning of the language used" (internal quotation marks and citation omitted) (original brackets omitted)); *State v. Smith*, 103 Hawai'i 228, 234, 81 P.3d 408, 414 (2003) (explaining that "it is a cardinal rule of statutory interpretation that, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning" (citation, internal quotation marks, brackets and emphasis omitted)); *State v. Kalama*, 94 Hawai'i 60, 64, 8 P.3d 1224, 1228 (2000) (stating "where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning" (citation and internal quotation marks omitted)).

It cannot be reasonably questioned that it was the legislative intent to deem a prior sentencing proceeding as a substitute for notice of a new extended term proceeding. The legislature explained that Act 1 "amend[s] Hawaii's extended sentencing statutes" to conform them to "the requirements set forth by [the Supreme Court] and [this court]." Sen. Stand. Comm. Rep. No. 7, in 2007 Senate Journal (Second Special Session), at ——. Thus, the legislative intent behind Act 1 was to ensure the viability of Hawaii's extended sentencing statute. Given the legislature's expressly stated intent to maintain the validity of the extended sentencing statute, it reasonably follows that the legislature also sought to facilitate its application.

A provision like the one in HRS § 706-664(2) that provides notice to a defendant that an extended sentence will be sought is deemed satisfied where the defendant was previously sentenced to an extended term would facilitate the imposition of extended sentences by causing a requirement of due process to be fulfilled without any further action. Manifestly, and contrary to the majority's assertion, 706-664(2) does indeed enact a "constructive notice" provision, majority opinion at 399–400, 184 P.3d at 151–52, that the majority simply chooses to ignore. Turning a blind eye to the express language of the statute, however, does not hide the fact that the legislature's expressed intent conflicts with the majority's holding today.

Thus, the statement in HRS § 706-664(2) that notice requirements are satisfied if the defendant has been sentenced to an extended term in the past directly *contravenes the majority's holding* that notice requirements are satisfied only upon the inclusion of all aggravating factors in the charging document. At best, the majority's reliance on the doctrine of constitutional doubt is simply inapposite, but beyond this case, such rationalization adversely impacts the integrity of our decision making process.

## VII.

In construing Act 1, the majority at bottom issues an advisory opinion,[19] an unwise prac-

---

19. The majority's reliance on HRAP Rule 15 as justification for this court to construe Act 1 as it applies to Jess is incorrect. *See* majority opinion at 391, 184 P.3d at 143 n. 8 ("The plain language of [HRAP Rule 15] authorized [the court] to seek advice from us as to a question of law. In order adequately to give [the court] that advice, we must address all relevant issues."). The existence of such a procedure does not permit this court to decide questions in the abstract and on an insufficient record without regard to the specific facts of Jess' case.

First, and obviously, the Reserved Question did not ask for advice on the application of Act 1 in Jess' case. Faced with an order from the district court that Jess be resentenced in accordance with *Apprendi*, *i.e.*, with a jury making the requi-

site findings, *see supra* at 386, 184 P.3d at 138 n. 1, and the conflicting precedent of this court upholding the constitutionality of judge-made findings, *see supra* at 387–88, 184 P.3d at 139–40, the court inquired whether it could empanel a jury to make findings pursuant to HRS § 706-662 (Supp.1996), *see supra* at 386, 184 P.3d at 138 n. 3 (quoting Reserved Question). Thus, the Reserved Question did not seek advice on the application of Act 1.

Second, this court should decline to provide advice on Act 1 because of the insufficient facts in Jess' case and the parties' lack of opportunity to address Act 1. *See Territory of Hawai'i v. Comacho*, 33 Haw. 628, 630, 1935 WL 3398 at *2 (1935) (returning the reserved question unanswered because in order to answer it, "it would

tice in which this court should not engage. It is

> "one of the prudential rules of judicial self-governance" that "*courts are to avoid advisory opinions on abstract propositions of law.*" *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (internal quotation marks, citation, and original brackets omitted). As this court has stated:
>
>> *The duty of this court,* as of every other judicial tribunal, *is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.* Courts will not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so.
>
> *Wong v. Bd. of Regents, Univ. of Haw.,* 62 Haw. 391, 394–95, 616 P.2d 201, 204 (1980) (citations omitted) (emphases added).

be necessary for this court to ... make its own findings of fact and then determine the questions of law applicable thereto which would be a clear invasion by this court of the province of the jury"). In order to resolve the issues related to Act 1, the majority determined on its own the applicable questions of law, which may not be relevant at all, *see supra* at 393, 184 P.3d at 145 n. 13, in the course of litigation in Jess' case.

Third, the Reserved Question rule upon which the majority relies provides for avoiding improvident or advisory opinions. HRAP Rule 15(c) provides that *"[this] court may, in its discretion, return any reserved question* for decision in the first instance by the court reserving it." (Emphasis added). This course of action should have been followed because it would allow the parties to develop a record upon which actual and not abstract questions would be determined.

Finally, I reiterate that the majority's reliance on *Cutsinger* is also misplaced inasmuch as the ICA's judgment has not been made final through (1) lapse of the period for filing an application for writ of certiorari, (2) rejection of such application, or (3) affirmance of the ICA by this court on certiorari. *See supra* at 395, 184 P.3d at 147 n. 15.

**20.** To repeat, the parties were ordered to submit supplemental briefs to address the following question:

> In light of [*Cunningham,* 549 U.S. at ——, 127 S.Ct. at 864], and [*Merino,* 81 Hawai'i at 212, 915 P.2d at 686], what is the significance, if any, of the fact that the March 2, 2000 complaint fails to allege that [Jess], in commit-

*State v. Matavale,* 115 Hawai'i 149, 169 n. 15, 166 P.3d 322, 342 n. 15 (2007) (first emphasis added) (some emphasis omitted). Not surprisingly, Jess maintains that we do not have "jurisdiction to issue an advisory opinion seeking to constitutionally apply Act [1] to this case in the future to excuse the prior and present constitutional defects in notice to [Jess] ... where no case or controversy exists on that point of law." The majority's approach can only create legal harm and may unfairly affect future litigants.

### VIII.

As noted before, supplemental briefing[20] was ordered to consider the impact of *Cunningham's* supposed reaffirmation of the precept that "any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have to be considered an element of the aggravated crime[,]" 549 U.S. at ——, 127 S.Ct. at 864 (citation omitted), thus requiring a jury determination on this particular issue.[21] In answering the

ting the offenses of robbery in the first degree and unauthorized control of a propelled vehicle, was a persistent and/or multiple offender such that imposing upon him an extended term of imprisonment, pursuant to HRS §§ 706–661 and 706–662, was necessary for the protection of the public?

**21.** In fact, of course, *Cunningham* merely reiterated *Apprendi* principles. As noted in the dissent in *Rivera,* 106 Hawai'i at 172, 102 P.3d at 1070 (Acoba J., dissenting, joined by Duffy, J.),

> "whether the judge's authority to impose an enhanced sentence depends on finding a specified fact ..., one of several specified facts ..., or ... aggravating fact" does not alter the "case that the jury's verdict alone [did] not authorize the sentence." [*Blakely v. Washington,* 542 U.S. 296, 305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)]. "Labels ... [such] as ... 'elements' and 'sentencing factor,' " then, are not the "answer." *Apprendi,* [530 U.S. at 494, 120 S.Ct. at 2365]. To reiterate, the "relevant inquiry is ... [the] effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" *Id.*.... Therefore, whether the required finding of "necessary for the protection of the public," HRS § 706–662, is viewed as an "elemental" fact or a "sentencing factor," [*id.* at 467, 120 S.Ct. 2348], or that the supporting subsidiary facts found by the court constitute part of such facts or factors, "it remains the case" that the effect of the

question posed in the supplemental briefing order, the majority expressly states that its holding regarding a new charging procedure "constitutes a new rule." Majority opinion at 401, 184 P.3d at 153 (footnote omitted). However, the majority is incorrect in its assertion that because this court is "[f]ree to apply decisions with or without retroactiv[ity,]" *id.* at 401, 184 P.3d at 153 (quoting *Peralto*, 95 Hawai'i at 6, 18 P.3d at 208

> court's pronouncement subjects the defendant to greater punishment than that which could be imposed on the basis of the guilty verdict only.
>
> (Emphases omitted) (some brackets and ellipses in original).

**22.** This pertains to the majority's points one through four and nine. *See supra* 386, 184 P.3d at 138 n. 2.

**23.** The majority misleadingly argues that the dissent has not previously raised the issue that aggravating factors must be included in the charging document. Majority opinion at 400–01, 184 P.3d at 152–53. The inclusion of the enhanced sentencing factors in a charging document is not a new concept.

It should be noted that the majority recently reiterated that aggravating factors increasing punishments must be included in the charging document. *See State v. Domingues*, 106 Hawai'i 480, 487–88, 107 P.3d 409, 416–17 (2005) (reiterating the rule of *State v. Estrada*, 69 Haw. 204, 738 P.2d 812 (1987), that "if the 'aggravating circumstances' justifying the imposition of an enhanced sentence are 'enmeshed in,' or, put differently, intrinsic to the 'commission of the crime charged,'" then the aggravating circumstances must be included in the charging instrument "in order to give the defendant notice that they will be relied on to prove the defendant's guilt and support the sentence to be imposed" (emphasis omitted)). It is notable that the majority's adoption of the charging rule in *Domingues* was, like the charging ruling in this case, advisory. *See Domingues*, 106 Hawai'i at 498, 499, 107 P.3d at 427, 428 (Acoba, J., dissenting, joined by Nakayama, J.) (observing that the majority advanced a due process rule—"that a charge ... under HRS § 291E–61 rests on aggravating circumstances that must be alleged in the charging instrument in order to give the defendant notice" even though "[t]here [was] no violation of due process" regarding the indictment as the defendant was "plainly informed of the specific statute ... and the basis on which he is charged" and thus "[t]he majority's holding ... constitute[d] an advisory opinion to one side on how future cases under the new [operating a vehicle under the influence of an intoxicant (OVUII)] statute may be saved from motions for

(quoting *State v. Santiago*, 53 Haw. 254, 268, 492 P.2d 657, 665 (1971))) (internal quotation marks omitted) (first brackets in original), its "holding with respect to charging instruments alleging 'aggravated crimes' [should be] strictly prospective, and therefore, does not apply to Jess." *Id.* at 400, 184 P.3d at 152 (formatting altered).[22] For the reasons following, the new charging rule must be applied to Jess.[23]

dismissal") (internal quotation marks and citation omitted) (brackets omitted).

However, and with all due respect, the majority has not applied the charging proposition in a consistent manner. Although the majority reiterated in *State v. Kekuewa*, 114 Hawai'i 411, 163 P.3d 1148 (2007), that aggravating circumstances raising the punishment for the offense of OVUII must be included in the complaint, it held that "the prosecution's oral charge [of a 'second offense'] sufficiently alleged a violation of HRS §§ 291E–61(a)(1) and (b)(1)" for which the defendant was charged. *Id.* at 426, 163 P.3d at 1163. The *Kekuewa* dissent responded, however that the mere reference to a "second offense" committed by the defendant "fail[ed] under HRS § 291E–61 to designate ... the essential element ... that the offense occurred within five years of a prior conviction for [OVUII.]" *Id.* at 435, 163 P.3d at 1172 (Acoba, J., concurring and dissenting) (internal quotation marks, citations, and brackets omitted).

The dissent also contended that the *majority was providing an "inconsistent response" by holding that "'prior convictions are generally a fact or circumstance extrinsic to the charged offense,' but 'prior convictions were intrinsic to, or enmeshed in, the habitual OVUII offenses.'"* *Id.* at 433, 163 P.3d at 1170 (emphasis added) (brackets omitted) (quoting *Kekuewa*, 114 Hawai'i at 423, 163 P.3d at 1160 (majority opinion)). In light of the majority's holding, the *Kekuewa* dissent pointed out that *"[t]he conflict between denominating a prior conviction as an 'extrinsic' factor in this court's precedents but on the other hand as an 'intrinsic' factor, in this case"* demonstrates *"the inherent limitations of an analysis based on an extrinsic/intrinsic formula."* *Id.* at 434, 163 P.3d at 1171 (Acoba, J., concurring and dissenting) (emphasis added).

The plurality again stated in *State v. Ruggiero*, 114 Hawai'i 227, 160 P.3d 703 (2007), that "considerations of due process continue to require that the aggravating factors set forth in [the OVUII statute] all of which remain attendant circumstances that are intrinsic to ... the ... offenses ... be alleged in the charging instrument and proven beyond a reasonable doubt at trial." *Id.* at 238, 160 P.3d at 714 (internal quotation marks, citations, and footnote omitted). However, the plurality held that the "the complaint [in *Ruggiero*] can reasonably be construed to charge the crime of [driving under the influence of intoxicating liquor (DUI)] as a first

Assuming *arguendo* that Jess' conviction is viewed as final, this court has said that "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions." *Garcia*, 96 Hawai'i at 211, 29 P.3d at 930 (citations and internal quotation marks omitted) (brackets in original).[24] *Garcia* in fact recognized, as the Supreme Court reiterated this year, that states may "give broader retroactive effect to [the Supreme Court's] new rules of criminal procedure" and doing so does not "miscontru[e] the federal *Teague* standard." *Danforth v. Minnesota*, —— U.S. ——, ——, 128 S.Ct. 1029, 1046, 169 L.Ed.2d 859 (2008). The majority concludes that *Danforth*, which held that state courts may give new federal rules of criminal procedure broader retroactive effect than the federal courts do, is not "particularly germane" to *Jess* because *Jess* is decided on state constitutional grounds, not based on the federal

offense, in violation of HRS § 291E–61(a) and (b)(1)" and "given the unique nature of the element—... that is, the absence of any prior convictions—... *the import of HRS § 291E–61[] is implicit in the charge.*" *Id.* at 240, 160 P.3d at 716 (emphasis added) (footnotes omitted).

In response, my concurring and dissenting opinion maintained that "[a]s in *Kekuewa*, because the complaint [against Ruggiero] 'failed to state a material element of a violation of HRS § 291E–61(b)(1) that the prosecution was required to prove, [*i.e.*, that it was Ruggiero's "first offense"] it failed to state an offense and, therefore, was fatally defective.'" *Id.* at 258, 160 P.3d at 734 (Acoba, J., concurring in part and dissenting in part) (quoting *State v. Cummings*, 101 Hawai'i 139, 145, 63 P.3d 1109, 1115 (2003)) (brackets omitted). Furthermore, that concurring and dissenting opinion asserted, with respect to the plurality's argument that the import of HRS § 291E–61 was implicit in the charge, that "*dispensing with an element on the purported ground that it is 'unique in nature' or 'implicit in the charge,' ... is arbitrary because [it is] supported only by the desired result.*" *Id.* at 259, 160 P.3d at 735 (quoting *Ruggiero*, 114 Hawai'i at 240, 160 P.3d at 716 (plurality opinion)) (emphases added) (brackets omitted).

In *Kekuewa* and *Ruggiero* the majority and plurality, respectively, indicated that certain aggravating factors *need not be pled*. Understandably, and in view of the majority's different positions, the Attorney General maintains in the instant case in response to the supplemental question posed by this court that all aggravating circumstances need *not* be included in the complaint because "this Court['s majority] *just this past summer* [in *Kekuewa*] *repeated its earlier principles that '[e]xtrinsic' or 'historical' facts need not be alleged in the charging instrument.'*" (Quoting *Kekuewa*, 114 Hawai'i at 411, 421–22, 163 P.3d at 1148, 1158–59) (ellipses omitted) (emphasis added). Similarly, the prosecution argued in its supplemental brief that under the plurality opinion of *Ruggiero*, the fact of whether Jess was a persistent or multiple offender who required an extended term sentence for the protection of the public, "was not an elemental attendant circumstance intrinsic to the offenses" with which he was charged and "*did not have to be alleged in the charging instrument[.]*"

(Emphasis added.) (Internal quotation marks, citation, and brackets omitted.)

In light of what the majority and plurality respectively have said in *Domingues*, *Kekuewa*, and *Ruggiero*, the Attorney General in the instant case predictably declared, "extrinsic factors need not be alleged in the charging instrument." Given the fluctuation in the majority's application of the intrinsic/extrinsic formula among other precedent, the drunk driving cases, and the extended term sentencing cases, it was not incumbent upon the dissent to address again in extended term sentence cases the question of whether aggravating factors were required to be set forth in a charging document, as had been done in the drunk driving cases. In the extended term sentencing cases the predicate question as framed by the majority was whether sentencing factors were to be decided by a jury, and the charging question raised in the drunk driving cases was thus subsumed in the predicate issue by the majority.

24. *Garcia* is apposite to the instant case as it addressed the question of whether to apply the holding of *State v. Wilson*, 92 Hawai'i 45, 987 P.2d 268 (1999), which established a new evidence suppression rule based on a violation of HRS § 286–261(b), retroactively to Garcia because Garcia was awaiting trial when *Wilson* was decided. *Garcia*, 96 Hawai'i at 214, 29 P.3d at 933. In *Wilson*, this court held that the defendant, after being arrested for driving under the influence of intoxicating liquor, was not accurately informed of the consequences of taking a blood alcohol concentration (BAC) test because the officer informed the defendant that his driving privileges would be revoked for three months if he took the test and failed when in fact he would be subject to revocation of three months to one year if he failed the test. 92 Hawai'i at 46–47, 987 P.2d at 269–70.

This court therefore held that the defendant did not make a knowing and intelligent decision whether to exercise his statutory right of consent or refusal and the defendant's motion to suppress the BAC results was properly granted by the district court. *Id.* at 54, 987 P.2d at 277. *Garcia* held that *Wilson* must be given retroactive effect because "the newly announced rule was extended to Wilson, [and] we can perceive of no justification for withholding its application to those

constitution. See majority opinion at 402, 184 P.3d at 154 n. 20. Given this court's reference to federal precedent in this area and the majority's reliance on it in formulating the new rule, *Danforth* cannot be dismissed so hastily.[25] As indicated previously, in *Garcia* we noted that new rules are applied retroactively only to cases which were "not yet final" when the new rule was announced. 96 Hawai'i at 214, 29 P.3d at 933 (quoting *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)). As the Supreme Court reiterated in *Teague,* "[u]nless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." 489 U.S. at 310, 109 S.Ct. 1060. The rationale behind *Teague's* rule against retroactive application of new rules to final cases, including those pending on collateral review, was that "[a]pplication of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system." *Id.* at 309, 109 S.Ct. 1060.

However, on the question of "whether *Teague* constrains the authority of state

courts to give broader effect to new rules of criminal procedure than is required by that opinion," the Supreme Court said it has "never suggested that it does" and in fact, "hold[s] that it does not." *Danforth,* —— U.S. at ——, 128 S.Ct. at 1033. Hence, states may "give broader retroactive effect to [the Supreme Court's] new rules of criminal procedure" and doing so does not "miscontru[e] the federal *Teague* standard." *Id.* at ——, 128 S.Ct. at 1046. *Danforth* noted that the rule announced in *Escobedo v. Illinois,* 378 U.S. 478, 490–91, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), that prohibited admission of statements elicited by police during interrogations in certain circumstances, should not be given retroactive effect beyond *Escobedo* himself. *Danforth,* —— U.S. at ——, 128 S.Ct. at 1038–39. However, *Danforth* held that it was proper for the Oregon Supreme Court in *State v. Fair,* 263 Or. 383, 502 P.2d 1150 (Or.1972), to "give retroactive effect to *Escobedo* despite [the Supreme Court's] holding" that *Escobedo* not apply retroactively. *Id.* at ——, 128 S.Ct. at 1039.

In light of the fact that "[n]either *Linkletter [v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) ] nor *Teague* explicitly or implicitly constrained the authority of the States to provide remedies for a broader

defendants who are similarly situated." *Garcia,* 96 Hawai'i at 214, 29 P.3d at 933.

25. It is noteworthy that although the majority maintains that the new rule announced in this case is grounded on article I, sections 5 and 10 of the Hawai'i Constitution, the majority declares the latter section is *"patterned after its federal counterpart[.]"* Majority opinion at 397, 184 P.3d at 149 (citing 1 *Constitutional Convention of Hawaii* 164, 243, 420 (1960)) (emphasis added). For that reason, this court has relied on federal precedent in shaping this jurisdiction's retroactivity rules. *See Garcia,* 96 Hawai'i at 208, 29 P.3d at 927 (citing, *inter alia, James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), *Am. Trucking Ass'ns, Inc. v. Smith,* 496 U.S. 167, 110 S.Ct. 2323, 110 L.Ed.2d 148 (1990), *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975), and *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), in discussion of retroactivity principles). The majority itself utilizes federal cases in its retroactivity analysis. *See, e.g.,* majority opinion at 402, 184 P.3d at 154 (quoting *James B. Beam Distilling Co.,* 501 U.S. at 534); *id.* at 39–40 (quoting *Williams v. United States,* 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971)); *id.* at 40 (citing *Schriro v. Summer-*

*lin,* 542 U.S. 348, 124 S.Ct. 2519, 159 L.Ed.2d 442 (2004)).

Indeed, the "new" rule referred to by the majority that facts justifying the imposition of an extended term sentence must be pled in the indictment was previously announced in a federal case, namely *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (declaring that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt"). Thus, inasmuch as the rule announced here reflects the federal rule with the inclusion of prior convictions, it would be inaccurate to characterize the new rule announced here as being grounded solely in our state law.

It appears that the Supreme Court has not addressed the issue of retroactivity as it applies to the indictment rule expressed in *Jones.* Therefore, inasmuch as the holding in *Danforth* clarifies that we are free to allow more extensive retroactive application than that which is allowed in the federal courts, *Danforth* buttresses the conclusion that we may follow Hawai'i precedent to determine the scope of retroactivity appropriate in this case.

range of constitutional violations than are redressable on federal habeas[,]" *id.* at ——, 128 S.Ct. at 1038, this court is free to extend the retroactive application of the majority's new charging rule that is analogous to federal precedents to defendants whose cases are pending on direct review and those defendants like Jess whose extended term sentences have been vacated and who await resentencing at the time that the majority issues its opinion in this case.

## IX.

In keeping with principles underlying our own precedent, the new charging rules should apply to Jess. The cases relied upon by the majority do not support its decision to make the new rule announced in this case purely prospective.[26] As noted before, in *Garcia* the question posed was whether new rules articulated in *Wilson* should be applied retroactively to Garcia, who was awaiting trial at the time that the new rules were established. In explaining the rationale behind its holding in *Garcia*, this court observed that the retroactivity issue had been resolved in three ways: (1) by making a decision fully retroactive, "applying both to the parties before the court and to all others by and against whom claims may be

---

**26.** Unlike in this case, the defendants in the cases cited by the majority that related to retroactive application of new rules were benefitted by the outcome of those cases. First, in *State v. Ikezawa*, 75 Haw. 210, 222, 857 P.2d 593, 598–99 (1993), upon which the majority principally relies, this court considered the prejudice *to the defendant* as well as the "effect … on the administration of justice in the instant case" if the pertinent new rule were applied retroactively. *Ikezawa* stated that the "effect … on the administration on justice" is grounded in the "concept of fairness[,]" *id.* at 220, 857 P.2d at 598, and is not merely a question of procedural efficiency or convenience. *Ikezawa's* analysis of the "administration of justice" factor indicates that it must be balanced against prejudice to the defendant. *See id.* at 222, 857 P.2d at 598 (weighing the defendant's reliance on the old rule and the prejudice to him that would result from retroactive application against the "burden [placed] on the judicial system" by prospective application). Additionally, *Ikezawa's* discussion of this factor equates it with "the integrity of the judicial process[,]" *id.* at 220, 857 P.2d at 598 (citation and internal quotation marks omitted), which is in turn commensurate with avoidance of inequitable results, *id.* at 220–21, 857 P.2d at 598 (footnote omitted). Here, the administration of justice factor is undermined by the unequal treatment visited on Jess.

Second, in some cases cited by the majority, prospective application of the new rule *benefitted* the defendant whereas retroactive application would have prejudiced the defendant. *See, e.g., Ikezawa*, 75 Haw. at 212, 857 P.2d at 594–95 (remanding with instructions to dismiss the charges against the defendant with or without prejudice); *State v. Stanley*, 60 Haw. 527, 592 P.2d 422 (1979) (prospective application of the new rule regarding timing of appeals from family court orders waiving jurisdiction benefitted the defendant because this court accepted and reviewed his appeal although he did not appeal the family court's waiver of jurisdiction until after he was convicted). It is manifest that prospective application of the new rule does not benefit Jess

and that retroactive application of the rule would benefit him.

Third, in cases relied upon by the majority where the new rule was not applied to the defendant, the disposition of the case nevertheless benefitted the defendant. *See, e.g., Tachibana*, 79 Hawai'i 226, 240, 900 P.2d 1293, 1307 (1995) (announcing a new rule requiring courts to engage defendant in an on-record colloquy before accepting guilty pleas but granting Tachibana's petition for post-conviction relief on the ground that his right to testify was violated by counsel's refusal to call Tachibana as a witness); *State v. Warner*, 58 Haw. 492, 494–96, 573 P.2d 959, 961–62 (1977) (announcing a new rule for prospective application regarding when the jury instruction on manslaughter as a lesser included offense was mandated, but reversing defendant's conviction and remanding for a new trial because under the traditional approach, "there was sufficient evidence to require the giving of" the instruction in defendant's case); *State v. Fortin*, 178 N.J. 540, 843 A.2d 974, 997 (N.J.2004) (announcing new rule for prospective application requiring aggravating factors to be submitted to grand jury and charged in indictment but vacating defendant's conviction and remanding for new trial because defendant was denied "his right to a fair trial" as a result of too-limited *voir dire* ). Here, Jess is substantially prejudiced by the majority's refusal to apply its new rule retroactively.

Fourth, in other cases relied upon by the majority, the new rule was not applied to the defendant because the putative violation of that rule was harmless. *See, e.g., State v. Haanio*, 94 Hawai'i 405, 413, 16 P.3d 246, 254 (2001) (it was unnecessary for this court to apply the new rule mandating jury instruction on included offenses where there was a rational basis in the evidence for such an instruction to the defendant because the court did in fact give an included offense instruction at defendant's trial). Plainly, exposing Jess to an extended sentence despite the supposed deficiency of the complaint against him cannot be deemed harmless error.

pressed[,]" (2) by making a decision purely prospective where "a new rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision[,]" or (3) by making a decision selectively prospective whereby "a court may apply a new rule in the case in which it is pronounced, then return to the old one with respect to all others arising on facts predating the pronouncement." 96 Hawai'i at 208, 29 P.3d at 927 (citation and internal quotation marks omitted).

This court proceeded to explain that the rationale for applying a decision in a selectively prospective fashion cited by other courts was "to avoid disruptions of the administration of criminal law, while at the same time fostering review by applying the new rule to the case in which the rule was announced." *Id.* at 209, 29 P.3d at 928 (citation omitted). However, it was noted that selective prospective application "breaches the principle that litigants in similar situations should be treated the same, a fundamental component of stare decisis and the rule of law generally." *Id.* (citation and internal quotation marks omitted).

*Garcia* also observed that in *Linkletter*, 381 U.S. at 629, 85 S.Ct. 1731, the Supreme Court cited three factors, later clarified by *Stovall*, considered at that time to apply in deciding whether a new court-determined rule applied retroactively or prospectively: (1) "the purpose to be served by the new standards," (2) "the extent of the reliance by law enforcement authorities on the old standards," and (3) "the effect on the administration of justice of a retroactive application of the new standards[.]" *Garcia*, 96 Hawai'i at 209–10, 29 P.3d at 928–29 (footnote, internal quotation marks and citation omitted). However, the Supreme Court concluded that the problem in relying on these factors in retroactivity analysis was that

"where [a c]ourt ... expressly declared a rule of criminal procedure to be a clear break with the past, it almost invariably went on to find such a newly minted principle nonretroactive" ... because once "[a c]ourt ... found that the new rule was

unanticipated, *the second and third Stovall favors—reliance by law enforcement authorities on the old standards and effect on the administration of justice of a retroactive application of the new rule—virtually compelled a finding of nonretroactivity.*"

*Id.* at 210, 29 P.3d at 929 (quoting *Griffith*, 479 U.S. at 324–25, 107 S.Ct. 708) (brackets omitted) (emphasis added).

In relying on the three *Stovall* factors, the majority argues that these factors weigh in favor of making the majority's new rule regarding the required elements of a charging document "purely prospective" in application. Majority opinion at 401–03, 184 P.3d at 153–55. However, as the Supreme Court explained in *Griffith*, and as this court recognized in *Garcia*, the second and third *Stovall* factors have the natural tendency to automatically weigh against retroactive application and "virtually compell[ ] a finding of nonretroactivity." 96 Hawai'i at 210, 29 P.3d at 929 (citation and internal quotation marks omitted). Consequently the *Stovall* factors do not strike a true balance of interests. The factors render the decision of whether to apply a new rule prospectively or not, not only a foregone conclusion but a faulty one as well. In that light, the majority's arguments relying on the second and third *Stovall* factors, majority opinion at 402–03, 184 P.3d at 154–55, are not a valid or cogent basis for opting for a prospective only approach.

Rather, in *Garcia*, this court chose to follow the approach adopted by the Court in *Griffith*. Relying on *Griffith*, we said that "selective application of new rules violates the principles of treating similarly situated defendants the same." *Garcia*, 96 Hawai'i at 214, 29 P.3d at 933 (citation and internal quotation marks omitted). Therefore, as *Garcia* noted, the fairer approach involved retroactive application of newly announced rules "to those defendants who are similarly situated." *Id.* Defendants "similarly situated" were described as "those defendants in all cases ... pending on direct review or not yet final" at the time that the case in question was decided. *Id.* (internal quotation marks, citation and emphasis omitted) (ellipses in original). However, under *Danforth*,

the limits of retroactivity may be defined by the state court and are not constrained by federal court precedent.

### A.

If ever there were compelling reasons for this court to exercise its right recognized in *Danforth* to retroactively apply a new rule without federal restriction, such reasons exist here. The court's original extended term sentence was vacated by the district court because the sentence violated *Apprendi*. *Jess,* No. Civ. 04–00601 JMS/BMK, 2006 WL 1041737 at *4, *6. Hence, there is no valid sentence binding upon Jess. If an extended term sentence is again sought by the prosecution, any sentence imposed against Jess by the court after the 2006 vacation of the sentence can still be appealed by Jess if not in keeping with the order of the district court to resentence Jess in light of *Apprendi*.

Jess stands before this court today with a sentence that has been vacated by the district court and therefore, is in the same shoes as a defendant who has yet to be sentenced or a defendant on direct appeal of his sentence. *Cf. United States v. Martin,* 363 F.3d 25, 46 n. 35 (1st Cir.2004) (explaining that if a "sentence is still subject to appeal, it is not 'final' for retroactivity purposes[ ]" (citation omitted)). In effect, vacation by the district court in 2006, leaves Jess in the same position he was in prior to the court's initial imposition of an extended sentence.

### B.

In these circumstances, the interest of fairness can only be served by retroactively applying the new charging rules announced by the majority. The direct review of Jess' case was arguably terminated by this court's issuance of a Summary Disposition Order (SDO) in 2003. However, Jess is in that position simply because the SDO was decided under a misapprehension of *Apprendi*. Indeed, other cases decided after that SDO held that Hawaii's extended term sentencing statutes were unconstitutional under *Apprendi*.

As noted previously, *Kaua I* declared that the imposition of an extended sentence under HRS § 706–662 "was contrary to clearly es-tablished federal law, as determined by [the Supreme Court], and that it was an unreasonable application of clearly established federal law, as determined by the Supreme Court[.]" 350 F.Supp.2d at 856. The district court there held that this court's earlier decision upholding the application of the extended sentence to Kaua was based on a "reading of *Apprendi* [that] flies in the face of the actual language of *Apprendi*, especially as that language has been construed in *Ring v. Arizona,* 536 U.S. 584[, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) ]." *Id.* at 859.

On appeal from the district court, the Ninth Circuit Court of Appeals agreed that a jury was required to make the finding of whether an extended sentence was necessary for the protection of the public "[b]ecause *Apprendi* held that any fact other than the fact of a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt[.]" *Kaua II,* 436 F.3d at 1060 (footnote omitted). As the dissent in *White* noted, *Kaua II* "has in large part undercut the *Rivera* 'intrinsic-extrinsic fact' distinction and the two-step sentencing process of *State v. Okumura,* 78 Hawai'i 383, 894 P.2d 80 (1995), and *State v. Schroeder,* 76 Hawai'i 517, 880 P.2d 192 (1994)." 110 Hawai'i at 91, 129 P.3d at 1119 (Acoba, J., dissenting, joined by Duffy, J.).

Thus, that Jess' case, like Kaua's case and many others, *see, e.g., Kaua II,* 436 F.3d at 1058 (affirming the district court's grant of Kaua's petition for a writ of habeas corpus that vacated his extended term sentence); *Rivera v. Propotnick,* Civ. No. 06–00390 SOM–LEK, 2007 WL 1857474 at *1 (D.Haw. June 25, 2007) (finding that "Petitioner's extended term sentencing" violated *Apprendi* and recommend[ing] that habeas corpus be granted and Petitioner resentenced) (formatting altered); *Laysa v. White,* No. CV 07–00088 JMS BMK, 2007 WL 1832028 at *1 (D.Haw. June 22, 2007) (granting Petitioner's habeas corpus petition and remanding for resentencing as the extended term sentence violated *Apprendi* ), traveled a circular route between the state courts and the federal district courts was due to a misconstruction

of *Apprendi*, not error on the part of Jess. As noted in the *White* dissent, "the availability of federal habeas proceedings and the resulting impact on the parties and both state and federal courts makes a reexamination of our extended-term sentencing decisions even more imperative." *White*, 110 Hawai'i at 91, 129 P.3d at 1119 (Acoba, J., dissenting, joined by Duffy, J.).

### C.

The holdings reached by the majority today regarding Jess are in a sense not "new" in that they are grounded upon principles set forth by *Apprendi* and its progeny while Jess' case was still on direct review. Hence, the majority's holdings represent a correction of prior holdings pursuant to the rules articulated in *Apprendi* and related cases that were established prior to this court's affirmance of Jess' conviction and sentence in 2003.

Furthermore, the procedural difficulties engendered by the misconstruction of *Apprendi* have not resulted in undue delay in the resolution of Jess' sentencing. The habeas corpus petition was submitted approximately nine months after the deadline for appealing this court's SDO expired. During that period of time between the issuance of the SDO in 2003 and the instant case, a stream of cases have issued, that interpreted *Apprendi* and *Ring* as requiring all aggravating factors to be included in the charging instrument and rejecting the differentiation between extrinsic and intrinsic factors as a basis for excluding extrinsic factors from the charging instrument. *See Cunningham*, —— U.S. at ——, 127 S.Ct. at 864 (explaining that "*Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime" (quoting *Harris v. United States*, 536 U.S. 545, 557–566, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion))).

Thus, to deny Jess the benefit of the charging rule would be inequitable in light of the case law in place while Jess' case was on direct appeal and while Jess' case was under habeas review. Indeed, the arguments that were advanced by Jess on direct appeal to this court and rejected were ultimately vindicated by the Supreme Court. *See State v. Jess*, No. 24339, 2003 WL 22221386 at *1 (Hawai'i Sept. 26, 2003) (Summary Disposition Order) (reciting Jess' contention on appeal, including *inter alia*, that "HRS § 706–662 (Supp.2000) ... is unconstitutional in light of [the Supreme Court's] decision in [*Apprendi* ]"). The charging document requirements should be applied to Jess in order to prevent further compounding of error and to prevent yet another defendant from being deprived of constitutional rights.

### X.

Two important principles support extension of the new rule to Jess. To reiterate, the first is that "the nature of judicial review precludes us from simply fishing one case from the stream of appellate review, using it as a vehicle for pronouncing new rules, and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule." *Garcia*, 96 Hawai'i at 213, 29 P.3d at 932 (internal quotation marks, citation, and brackets omitted). The principle that precludes us from "fishing" for cases in this manner rests in the doctrine of separation of powers. It bears repeating that "*[u]nlike a legislature*, [and like the Supreme Court, we] do not promulgate new rules of constitutional criminal procedure on a broad basis. Rather the nature of judicial review requires that *we adjudicate specific cases*, and each case usually becomes the vehicle for announcement of a new rule." *Griffith*, 479 U.S. at 322, 107 S.Ct. 708 (emphases added); *see also Williams v. United States*, 401 U.S. 667, 679, 91 S.Ct. 1171, 28 L.Ed.2d 404 (1971) (Harlan, J., concurring in part and dissenting in part) ("In truth, the Court's assertion of power to disregard current law in adjudicating cases before us that have not already run the full course of appellate review, is quite simply an assertion that our constitutional function is not one of adjudication but in effect of legislation").

The second principle is that "selective application of new rules violates the principle of treating similarly situated defendants the same." *Griffith*, 479 U.S. at 322–23, 107 S.Ct. 708 (citation omitted). *Garcia* noted

that we "cannot grant the benefit of the *Wilson* rule to Wilson and choose not to apply it to other similarly situated defendants because such selective application of new rules violates the principles of treating similarly situated defendants the same." *Garcia,* 96 Hawai'i at 214, 29 P.3d at 933 (citation and internal quotation marks omitted). As the U.S. Supreme Court said, "after we have decided a new rule in the case selected, the integrity of judicial review requires that we apply that rule to all similar cases pending on direct review." *Griffith,* 479 U.S. at 323, 107 S.Ct. 708. The majority's refusal to apply the new charging rules to Jess is even more egregious than if *Garcia* had refused to apply *Wilson* to the *Garcia* defendant. In this instance, the majority denies Jess the benefit of a rule *announced in his own case.*

### XI.

Retroactive application of the new charging requirements to Jess is in keeping with the aforementioned principles we have adopted. Even if Jess' case is deemed to be on collateral review, the new charging rules should apply to those defendants like Jess insofar as the sentences of such defendants have been vacated by the district court and their cases are pending resentencing at the time this opinion is issued only because of the prior misapplication of the *Apprendi* precepts. As held in *Danforth,* "[n]either *Linkletter* nor *Teague* explicitly or implicitly constrained the authority of States to provide remedies for a broader range of constitutional violations than are redressable on federal habeas." *Danforth,* —— U.S. at ——, 128 S.Ct. at 1038.

Not only is this court at liberty to grant Jess relief by retroactively applying the new charging rules announced by the majority but, it is imperative that this court apply the rules retroactively to Jess in order to comport with the twin principles of *Garcia* re-

ferred to above. Failure to retroactively apply the majority's new rules in this manner would controvert the principles identified in *Garcia* as this court would be "using [Jess' case] as a vehicle for pronouncing new [rules], and then permitting a stream of similar cases subsequently to flow by unaffected by that new rule" and would be "violat[ing] the principle of treating similarly situated defendants the same." *Garcia,* 96 Hawai'i at 213, 29 P.3d at 919 (citation and internal quotation marks omitted) (second brackets in original).

### XII.

The prosecution argues that applying the new rule would have detrimental public policy effects. The prosecution contends that under such a retroactive application "[a]ny defendant who *has ever been sentenced* [to an extended term of imprisonment] could argue that his or her conviction was void because a material or essential element of the offense was not included in the [charging instrument]." (Quoting *Poole v. State,* 846 So.2d 370, 387 (Ala.Crim.App.2002) (emphasis added) (internal quotation marks omitted) (brackets supplied in original).)[27] However, the prosecution's argument is incorrect. Retroactive application of the new charging rules, following the principles engendered by *Garcia,* would only allow those defendants whose cases are pending on direct review or, those who like Jess, are subject to resentencing as of the date of the decision in this case to benefit from the new rule. As in prior cases involving enhanced sentences, this court can afford the prosecution the option of proceeding on a non-extended term sentencing basis with such defendants or of initiating a new trial.

In *Brantley,* 84 Hawai'i at 114, 929 P.2d at 1364, the ICA held that the court erred "in sentencing Defendant to a mandatory minimum term of imprisonment under [HRS]

---

27. The prosecution's second argument asserts that "requiring the charging instrument to include the allegation … that an imposition of an extended term is necessary for the protection of the public 'would contaminate the [grand] jury's required focus on the factual circumstances surrounding the offense and potentially require the introduction of inadmissible bad act [sic] or overly prejudicial evidence to require the [grand jury] to make such [a probable cause determination].'" This argument is not germane to the question of whether the new rule should apply to Jess and therefore is not discussed here.

§ 706–660.1(3)(a) (1993) for use of a semi-automatic firearm in the commission of a felony, because there was no trial finding that Defendant actually or constructively possessed such a firearm at the time of the murder." The ICA explained that such a finding constituted "aggravating circumstances ... intrinsic to the commission of the crime charged and therefore must be determined by the trier of fact." *Id.* at 125, 929 P.2d at 1375 (internal quotation marks, citation, and brackets omitted) (ellipsis in original).

Upon determining that the mandatory minimum sentence had been erroneously imposed upon the defendant the ICA followed the procedure adopted by the supreme court in *Garringer v. State,* 80 Hawai'i 327, 335, 909 P.2d 1142, 1150 (1996) opting to:

> withhold judgment on [Defendant's] conviction of [second degree murder] for thirty days. *If the prosecution within that time consents to resentencing without a mandatory minimum under HRS § 706–660.1, we will affirm the conviction on that count and remand for resentencing. If on the other hand, the government does not consent, we will vacate [Defendant's] conviction on [the second degree murder count] and remand for a new trial.*

*Brantley,* 84 Hawai'i at 125, 929 P.2d at 1375 (emphases added) (some brackets in original). Thus, if the prosecution seeks to impose a non-extended term sentence, Jess' conviction would be affirmed and the case could be remanded for such sentencing. Similarly, adjusting the defendant's sentence appears to be the preferred alternative in the federal courts when an indictment is ruled defective for failure to charge aggravating circumstances. *See, e.g., United States v. Davis,* 184 F.3d 366, 367 (4th Cir.1999) (vacating defendant's sentence and remanding "for resentencing" because the indictment did not allege that the victim suffered "great bodily injury," which was an "offense element," not merely a sentencing factor); *see*

*also United States v. Hathaway,* 318 F.3d 1001, 1009–10 (10th Cir.2003) (ordering that defendant's criminal records be altered to reflect that he was convicted of misdemeanor assault, not felony assault because "[t]he indictment ... failed to allege a required and essential element of the felony crime for which [the defendant] was convicted"); *cf. United States v. Wilkes,* 130 F.Supp.2d 222, 226 (D.Mass.2001) (concluding that because the indictment did not specify the amount of marijuana, "the indictment [was] deficient under *Apprendi* " such that defendant could not be subjected to an extended sentence based on the amount of drugs). If the prosecution seeks an extended sentence, Jess' conviction should be vacated and he would be entitled to a new trial based on a charging document filed within a specified period of time alleging the enhancement factors.[28]

## XIII.

For the foregoing reasons, I must respectfully disagree with the majority opinion.

---

**28.** Allowing the prosecution to refile charges against Jess in compliance with the new rule announced by the majority would not violate Jess' protection against double jeopardy inasmuch as "the double jeopardy guarantee 'imposes no limitations whatever upon the power to retry a defendant who has succeeded in getting his first conviction set aside[.]' " *United States v. DiFrancesco,* 449 U.S. 117, 131, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 720, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)) (emphasis omitted).